*In The*

# United States Court of Appeals

*for the*

# Third
# Circuit

---

### Case No. 17-1329

Richard Katz

*Pro se Plaintiff - Appellant,*

v.

National Board of Medical Examiners
(NBME)
AND
Federation of State Medical Boards
(FSMB)
*Defendants - Appellees.*

---

*Appeal from an Order entered from the
United States District Court for the Middle District of
Pennsylvania*
### Case No. 3-15-cv-01187

## BRIEF AND APPENDIX FOR APPELLANT

Richard Katz
3364 Parker Lane
East Stroudsburg, Pennsylvania 18301
(570) 517-9314
*Pro se*

i

## **TABLE OF CONTENTS**

|        |                                                       | **Page No.:** |
|--------|-------------------------------------------------------|---------------|
| I.     | TABLE OF CONTENTS                                     | ii            |
| II.    | TABLE OF CITATIONS/AUTHORITIES                        | iii, iv       |
| III.   | INTRODUCTION                                          | 1-6           |
| IV.    | STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION | 6            |
| V.     | STATEMENT OF ISSUES                                  | 7             |
| VI.    | STATEMENT OF RELATED CASES AND PROCEEDINGS           | 8-9           |
| VII.   | STATEMENT OF THE CASE                               | 10-13         |
| VIII.  | STATEMENT OF THE FACTS                             | 13-20         |
| IX.    | STATEMENT OF THE STANDARD OF REVIEW               | 21-22         |
| X.     | SUMMARY OF ARGUMENT                               | 23-27         |
| XI.    | ARGUMENT                                          | 28-36         |
| XII.   | CONCLUSION                                       | 36-38         |
| XII.   | COMBINED CERTIFICATIONS                          | 39            |
| XIII.  | NOTICE OF APPEAL, LOWER COURT DOCKET AND ORDER    | 40           |

# TABLE OF CITATIONS/AUTHORITIES

## Cases

Bartlett v. N.Y. State Bd. of Law Exam'rs, No. 93 Civ. 4986, 2001 ............... 6,13

Carrion v. Coca-Cola Bottling Co., 2006 WL 3526748 at *3 ............................ 22

Cerbone v. International Ladies Garment Workers Union, 768 F.2d. 45, 49-50
   (2nd Cir. 1985) ...................................................................................................... 31

Chardon v. Fernandez ...................................................................................... 20

City of Los Angeles v. Manhart, 435 U.S. 702 (1978) ...................................... 21

Delaware State College v. Ricks, 449 U.S. 250 (1980) ...................... 11, 20,28,31

Disabled in Action of Pa. v. Southeastern Pa. Transp. Auth., 539 F.3d 199 (3rd
   Cir. 2008) ............................................................................................................ 15

Doe v. Samuel Merritt University, 921 F. Supp. 2d. 958 (N.D. Cal. 2013)..... 6,13

Donahue v. Barnhart ........................................................................................... 7

Falgiatore v. Falgiatore, 378 Pa. 586, 107 A.2d 864 ......................................... 34

Ficken v. Alvarez, 146 F.3d 978 (D.C. Cir.1988) ................................................10

Fishbein, Sedran & Berman, 38 F.3d 1380, 1385-1386 (3rd Cir. 1994)............. 30

Heins v. Potter, 271 F. Supp.2d 545 (SDNY 2003) ......................................... 22

Irwin v. Department of Veterans Affairs, 498 US 89 (1990)............................... 31

Jenkins v. NBME................................................................................................. 12

Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2nd Cir. 1996)..................................... 32

KACH v. HOSE. 589 F. 3d 626, 645 (3d CIR. 2009) ............................. 11,18, 33

Kennedy v. Saint Francis Hospital, 225 F. Supp.2d. 128, 134-135 (D. Conn.
   2002)..................................................................................................................... 32

Kronisch v. United States, 150 F.3d. 112, 121 (2nd Cir. 1998)......................... 31

Ledbetter v. Goodyear Tire & Rubber Co .......................................................... 20

Lovelace v. Keohane, 1992 OK 24, 831 P.2d 624,630.............................19

Menominee Indian Tribe of Wisc. v. United States, 136 S. Ct. 750, 756 (2016)
   ........................................................................................................... 18, 33

Miller v. Int'l Tel. & Tel. Corp., 755 F.2d 20, 24 (2d Cir.1985)........................ 32

National Railroad Passenger Corporation v. Morgan, 536 U.S. 101, at fn 7 (2002)
   .............................................................................................................. 31

Ormiston v. Nelson, 117 F.3d. 69, 71 (2nd Cir. 1997)........................................ 22

Ortt v. Schwartz, 62 Pa. Super. 70.................................................................... 34

Oshiver v. Levin .................................................................................................. 30

Paneccasio v. Unisource Worldwide, Inc., 2003 WL 1714085 (D. Conn. 2003) 32

Pell v. E.I. DuPont de Nemours & Co., 539 F.3d 292, 305 (3d Cir. 2008). ..... 23

Poindexter v. Fed. Bureau of Investigation,
737 F.2d 1173 (D.C. Cir.1984)…………………………………………10
Rotella v. Wood, 528 US 549, 555 (2000) ........................................ 22
Rush v. NBME............................................................................... 12
Walters v. Ditzler, 227 A.2d 833 (Pa. 1967) ....................................... 30
Singleton v. City of New York, 632 F.2d 185, 191 (2nd Cir. 1980).................. 22
Sutton v. United Air Lines, Inc ...................................................... 16
Urie v. Thompson, 337 US 163 (1949) ............................................. 22
Warner v. Asplundh Tree Expert Co., 2003 WL 22937718 (D. Conn. 2003) ..... 32
Young v. United States, 535 US 43 49-50 (2002) ............................... 31
Zenobi v. Exxon Corp, 577 F. Supp. 514, 517 (D. Conn. 1983) ........................ 32
Zerilli-Edelglass v. New York City Transit Authority, 333 F.3d 74, 80-81 (2nd
   Cir. 2003)................................................................................. 32

## Statutes

§ 1983 .......................................................................... 18, 20
§ 504 OF THE REHABILITATION ACT OF 1973, [AS AMENDED, 29 U.S.C.
   § 794]. .......................................................................... 5
28 C.F.R. § 36.309................................................................ 6
28 U.S.C. § 1331 ................................................................. 9
28 U.S.C. §§ 158 (d) and 1291 .................................................. 9
42 U.S.C. § 12101(a)(7) ........................................................ 21
42 U.S.C. § 12181................................................................ 5
42 U.S.C. § 12189 ............................................................... 13
42 U.S.C. § 1981 ................................................................ 20
42 U.S.C. §12189................................................................. 6

## Regulations

H.R. Rep. No. 485 (III), 101st Cong., 2d Sess. 49-50 (1990)......................... 8, 35

# **INTRODUCTION**

People with disabilities are not only confronted by physical barriers, sometimes they encounter accessibility problems because of faulty policies. The National Board of Medical Examiners (hereinafter NBME) and the Federation of State Medical Boards (hereinafter FSMB) own and sponsor the United States Medical Licensing Exam (hereinafter USMLE). Richard Katz is a medical graduate with mental disabilities. This faulty policy barrier denies full and equal access to in violation of title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 and § 504 OF THE REHABILITATION ACT OF 1973, [AS AMENDED, 29 U.S.C. § 794]. Section 504 of the Rehabilitation Act specifically prohibits discrimination against individuals with disabilities in programs receiving federal funds.[1] *The NBME and FSMB are recipients of Federal Financial Assistance, yet they discriminate against people with mental disabilities.*

In 2012, the USMLE Organization announced on their website that they will place an exam limit to the number of times examinees can take to pass a USMLE Step Exam. The previous policy allowed examinees to take the exam as many times as they needed until passing. In creating this so-called *"Six Attempt Limit Rule"* the USMLE Organization made NO concession in their policy development for people with documented mental disabilities. This is an access violation that does not comply with

---

[1] See 29 U.S.C. § 794 (2006) Section 504 of the Rehabilitation Act of 1973 going beyond physical access to provide that "[n]o otherwise qualified individual with a disability in the United States . . . shall . . . be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or . . . conducted by any Executive agency."

1

Title III of the ADA as promulgated by the Department of Justice (the "DOJ Standards") Civil Rights Division who currently have an open investigation into the defendants' questionable disability evaluation practices.[2],[3],[4]

The USMLE Organization is subject to the requirements of Section 309 of the ADA of 1990, 42 U.S.C. §12189, and the implementing regulations, 28 C.F.R. § 36.309.

**Private entities that administer examinations related to professional licensing must offer examinations in a place and manner accessible to persons with**

---

[2] Nabina Sinha Trial Attorney for Disability Rights Section U.S. Department of Justice 1425 New York Avenue, NW – 4th Floor Washington, DC 20005 tel. 202-616-2730 is heading this investigation.  Katz is not the only complainant, there are several others.  The defendants have denied that such an investigation exists in their previous trial motions, yet Attorney Sinha has communicated to Katz during a recent telephone discussion that "NBME is aware that they are under investigation."

[3] *See* Department of Justice DJ# 202-16-181 SETTLEMENT AGREEMENT BETWEEN UNITED STATES OF AMERICA AND NATIONAL BOARD OF MEDICAL EXAMINERS  https://www.ada.gov/nbme.htm   A Yale School of Medicine student with dyslexia, will receive special testing accommodations for the USMLE after being denied twice.  Frederick Romberg will receive double the standard testing time and a separate testing area to take the examination as a result of a settlement reached by the U.S. Department of Justice and the National Board of Medical Examiners Feb. 22, 2011. In accordance with the provisions of the ADA. The settlement requires the NBME to provide reasonable testing accommodations to persons with disabilities who seek to take the test, a press release issued by the DOJ on February 22, 2011 stated. Romberg's case, which was initially filed in January 2008 when the board refused Romberg's request, has national implications for medical students with disabilities because it has introduced new guidelines for the administration of standardized exams.

[4] *See also* United States Government Accountability Office (GAO) Report to Congressional Requesters 'HIGHER EDUCATION AND DISABILITY *Improved Federal Enforcement Needed to Better Protect Students' Rights to Testing Accommodations.*' Nov. 2011.  GAO recommends that the Department of Justice take steps to develop a strategic approach to enforcement such as by analyzing its data and updating its technical assistance manual. Justice agreed with GAO's recommendation. The NBME was one of the participant organizations in this study. http://www.gao.gov/assets/590/587367.pdf

**disabilities.** Katz sent an appeal to NBME Disability Services on April 1st, 2014, requesting that they modify their faulty *"Six Attempt Limit Rule"* as a reasonable accommodation under the ADA (*see* Doe v. Samuel Merritt University, 921 F. Supp. 2d. 958 (N.D. Cal. 2013). Preliminary Injunction granted allowing student with a disability to take a podiatric licensing examination unlimited times as an accommodation to University's policy providing for a three-exam limit. *See also* Bartlett v. N.Y. State Bd. of Law Exam'rs, No. 93 Civ. 4986, 2001). **The defendants denied this request and ignored Katz's disclosure regarding recent changes to his psychiatric diagnosis.**

A second dispute exists in this case, Katz was discriminated by NBME Disability Services in March of 2006. Katz has a long history of neurological and psychiatric problems and has received formal and informal accommodations throughout his education. He requested extended exam time for his USMLE Exams during this period. **UNLICENSED** reviewers that were passed off by NBME as "EXPERTS", never meeting or evaluating Katz in person, found that the supporting documentation submitted by his **LICENSED** practicing caregivers did not demonstrate that he was substantially limited in a *major life activity* as compared to most people, so-as-to be disabled within the meaning of the ADA. On March 13, 2006 Katz received a denial letter from NBME that made the following false statement (plural emphasis added in bold):

*"We consulted 'EXPERT**S**' in the field**S** of Learning Disability and Mental Disorder**S** to assist us in reviewing the documentation."*

Katz was misled by NBME, as there were never any "EXPERT(**S**)" who evaluated his disability application in 2006.  NBME knew that Katz would never get to see the so-called "EXPERT(**S**)" review denying his accommodation as the review is never made available to the disability applicant, even if requested.[5]   The NBME leveraged themselves with an internally affiliated reviewer to get around ADA compliance issues and to control for incoming accommodation requests.

> An expert who—either due to lack of experience, education, or simply because the sources are inadequate—manipulates either the data or the process to reach a desired outcome should not be relied on because his extrapolations are mere ipse dixit. As the Court held in Donahue v. Barnhart, "[e]vidence is not 'substantial' if vital testimony has been conjured out of whole cloth."[6]

Katz had submitted sufficient documentation to demonstrate that he is a person with disabilities within the meaning of the ADA, and that he was entitled to reasonable testing accommodations to take his USMLE exams in 2006.  Pursuant to the ADAAA and its regulatory guidance, the defendants are now mandated to give deference to Katz's LICENSED evaluating psychiatrists and psychologists and their recommendations to provide accommodations. The guidelines to the regulations by the ADAAA, provide that testing entities should accept without further inquiry,

---

[5] On January 17th, 2014 Katz requested his 2005-2006 disability file from NBME Disability Services.  NBME responded on February 4th, 2014 stating that the "NBME does not copy or return the contents of an examinee's disability file or send copies to examinee's or third parties." See (DKT # 1-5 filed 06/17/2015).

[6] Donahue v. Barnhart, 279 F.3d 441, 446 (7th Cir. 2002) (citing Peabody Coal Co. v. McCandless, 255 F.3d 465 (7th Cir. 2001); Elliott v. CFTC, 202 F.3d 926 (7th Cir. 2000)).

4

*"documentation provided by a qualified professional who has made an individualized assessment of an applicant, that supports the need for modifications, accommodations or aid requested."*[7]   The guidance further explains that, "[r]eports from experts who have personal familiarity with the candidates should take precedence over those from, for example, reviewers for testing agencies, *who have never personally met the candidate or conducted the requisite assessments for diagnosis and treatment."* 28 C.F.R. pt. 36, app. A, at 796 (emphasis added). **Accordingly, NBME is precluded from second-guessing and rejecting Plaintiffs' evaluator recommendations.**

Due to the defendants' negligence Katz was subjected to repeated studying, and inevitable failures, having to take his USMLE Exams under regular exam conditions multiple times without accommodations, *much like a swimmer attempting to swim against the effects of a riptide*, this wasted his time, derailed his career, eroded his self-esteem and took a toll on his mental and overall health. With the implementation of the 'make or break' nature of the faulty 'Six Attempt Limit Rule' policy Katz had a mental breakdown in March of 2013 and had to be hospitalized for one week in the Behavioral Health Unit at Pocono Medical Center in Stroudsburg, PA. **The attending psychiatrist at Pocono Medical stated in her March 9, 2013 note; Richard Katz "has thoughts of worthlessness, hopelessness, judgment is impaired." "Insight is poor!" (EXHIBIT 59)**

Because of the lower Court's decision, what was to be a remedial legislation to "break down barriers to the integrated participation of people with disabilities in

---

[7] (28 C.F.R. pg 36, App A, at 795).

community life." (H.R. Rep. No. 485 (III), 101st Cong., 2d Sess. 49-50 (1990)) as Congress intended, are now high stakes testing agencies like the defendants, calling-the-shots, determining and severely limiting who is covered by the ADA. The NBME has disregarded the spirit and intent of the ADA and the scientific evidence that points to the absolute need for accommodations for people with mental disabilities like Richard Katz. The lower Court seemingly has done the same thing.

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This is an appeal from a decision of the United States District Court for the Middle District of Pennsylvania Amended Summary Judgment in a Civil Rights action whereby the District Judge adopted the Magistrates' Report & Recommendation (R&R) (Doc #199). The said Decision is a Final Judgment Order and is dated February 7th, 2017.

The District Courts' jurisdiction was pursuant to 28 U.S.C. § 1331, as a federal question. The Court of Appeals has jurisdiction of this appeal pursuant to 28 U.S.C. §§ 158 (d) and 1291, as it is an appeal of a Final Order of a District Court that disposed of the issues presented to it.

Richard Katz's Notice of Appeal of the District Court's Order of February 7, 2017, was filed on February 9, 2017. This appeal is timely. F.R.A.P. 4(a)(1)(A).

6

## <u>STATEMENT OF ISSUES</u>

**WHETHER APPELLEES' DENIAL OF APPELLANT'S REQUEST FOR A WAIVER FROM THE SIX-ATTEMPT LIMIT WAS AN INDEPENDENT ACT OF DISCRIMINATION THAT COULD TRIGGER THE COMMENCEMENT OF A NEW LIMITATIONS PERIOD, SEE DEL. STATE COLL. v. RICKS, 449 U.S. 250, 260-61 (1980)?**

Suggested Answer: Yes.

**WHETHER THE DISTRICT COURT WAS CORRECT TO CONCLUDE THAT APPELLANT'S MENTAL HEALTH STATUS COULD NOT EQUITABLY TOLL THE LIMITATIONS PERIOD, SEE KACH v. HOSE. 589 F. 3d 626, 645 (3d CIR. 2009)?**

Suggested Answer: No.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

The following cases arise from substantially similar transactions, incidents, or events requiring the determination of the same or substantially similar questions of law or fact:

**1.** In Rush v. NBME, a second-year medical student with reading and visual processing skills impairments requested and was denied extended time on USMLE Step 1 by NBME. THE COURT, CRITICAL OF THE BOARD'S (NBME) "EXPERTS", granted an injunction requiring the NBME to provide Rush with the accommodations of double time for the exam, stating that without such accommodations the exam would test his disability and not his mastery of the subject matter. The court found that the student was substantially limited in his ability to read and process information compared to most people. The court also ruled that the student would suffer an irreparable injury if the requested injunction for additional time was denied.[8]

**2.** In Jenkins v. NBME, the court applied the ADA Amendments Act ("ADAAA") retroactively to reverse the district court's finding that the student did not have a disability. The plaintiff had a reading disorder and sought an accommodation of additional time on a medical licensing examination. Relying on Supreme Court precedent that took a narrow view of the definition of disability, the trial court found that the plaintiff did not have an ADA disability. On an appeal taken after the ADAAA was enacted, the Sixth Circuit Court of Appeals reversed and held that the ADAAA should be applied retroactively. [9]

---

[8] Rush, 268 F.Supp.2d 673, 678 (N.D. TX 2003).
[9] Jenkins v. Nat'l Bd. of Med. Exam'rs, No. 08-5731, 2009 WL 331638 (6th Cir. Feb. 11, 2009

**3.** A district court in Bartlett v. NYSBLE, on remand from the Second Circuit Court of Appeals, ruled in favor of a bar exam applicant by holding that she was entitled to extended time, the use of a computer, large print, and permission to circle her multiple-choice answers in the exam booklet.95 The court held that the NYSBLE illegally discriminated against Bartlett when it failed to accommodate her dyslexia on five separate and unsuccessful exam attempts. The court found that the plaintiff was substantially limited in the major life activities of reading and working, even though she had employed coping strategies to overcome some of her reading and processing problems (finding test-taking to be a major life activity).[10]

**4.** Doe v. Samuel Merritt University. Preliminary Injunction granted allowing student with a disability to take a podiatric licensing examination unlimited times as an accommodation to University's policy providing for a three-exam limit.  Parties disagreed about whether test-taking was a "major life activity" Held: "Given the state of the case law, the recent directives of Congress, and the importance of test-taking in our society, the Court finds that Plaintiff has, at a minimum, raised "serious questions" as to whether test-taking is a major life activity under the ADA"[11]

---

[10] Bartlett v. N.Y. State Bd. of Law Exam'rs, No. 93 Civ. 4986, 2001 WL 930792, at *46 (S.D. N.Y. Aug. 15, 2001).
[11] Doe v. Samuel Merritt Unvi., 921 F. Supp. 2d 958 (N.D. Cal. 2013)

## **STATEMENT OF THE CASE**

This action was commenced on June 17, 2015 by the pro se plaintiff Richard Katz

submitting a complaint (Dkt#1) and communications from Senator Pat Toomey's

Office who forwarded his complaint to Department of Justice - Civil Rights Division

in July of 2014 (EXHIBIT 29).[12]    On June 17, 2015 Katz submitted a MOTION for

leave to proceed in forma pauperis (DKT#3) and MOTION to Appoint Counsel

(DKT#2). On September 16th, 2015, the District Court (DKT#43) denied Katz's

Motion to Appoint Counsel stating he had *"not undertaken a diligent enough effort to*

*obtain counsel."* Katz consulted seven attorneys between December 2013 and

December 2014.[13] ***The Court was under the <u>mistaken</u> impression that he had only***

***consulted <u>one</u> attorney.***

> 'Katz has satisfied the first factor, the Court having previously found
> him to be indigent, and having granted him leave to proceed in *forma*
> *pauperis*, *See Pointdexter,* 737 F.2d at 1186. He also appears to have
> satisfied the second factor, articulating an arguably colorable claim
> under Title III of the ADA.  See id. at 1187.  But he has clearly failed
> to demonstrate diligence in searching for counsel.'[14]

On December 1ST  2015, a second MOTION (DKT#66) to appoint counsel was

---

[12] All Docket Entries and Exhibits refer to Case No. 3-15-cv-01187 in the United
States District Court for the Middle District of PA.

[13] The Tabulated Chart Plaintiff provided the Court with his Second Motion to
Appoint Counsel on 12/01/2015 listed five attorneys contacted between Dec. 2013
and Dec. 2014, two were not listed, (1) Attorney Stephen G. Rhoads of Gawthrop
Greenwood PC., West Chester, PA. - Attorney Rhoads was contacted by Plaintiff on
12/18/2013. (2) Welch, Gold, Siegel & Fiffik, P.C., Pittsburgh, PA was contacted
01//2014.

[14] See Magistrate Judges' Order dated Sept 16, 2015   DKT # 43 Pg. 4

submitted.  Katz contacted disability advocacy groups, special interest groups, and private attorneys locally and nationally. He consulted a total of 29 advocacy groups and private attorneys (EXHIBIT 40) with no success on a pro bono or contingency basis. He tabulated this data and submitted to the Court with his Second Motion to Appoint Counsel. ***The chart also contained all attorneys and advocacy groups contacted prior to his First MOTION to Appoint Counsel.*** The Court responded (DKT#118) on May 12, 2016 denying Katz's second motion to appoint counsel, stating under Ficken and Poindexter that he now met all criteria, except criteria two which pertains to the 'merits of the plaintiff's case.'  Such contradictory premises employed by the lower Court hardly seems fair and equitable considering the legal complexity of this case.  By denying Katz counsel, this case was rendered a "David versus Goliath" contest. Denoting an underdog contest where a smaller, opponent faces a much bigger, stronger adversary.  Katz has not had an opportunity to take a deposition in this matter due to financial constraints. Yet depositions are 'widely thought to be the most important step of the formal discovery process' (Subrin et al., Civil Procedure: Doctrine, Practice, and Content 350 (2000)), and the testimony of qualified deponents can be an efficient and effective means of resolving differing interpretations of written documents.

The defendants submitted their Amended Motion for Summary Judgment (DKT#105) on May 2, 2016. The Court took defendants claims *prima facie* based on a statute of limitations argument (countered and disproved shortly).

11

Limitations are said to reduce the number of meritless cases filed, but the assumed connection between merit and timeliness requires further empirical analysis.[15]

The Court cited the defendants' *flawed* precedent generally: Disabled in Action (DIA) of Se Pa. v. Pa. Transp. Auth (SEPTA):

> Here the parties filed cross motions for summary judgment on April 5, 2006. The U.S. District Court of the Eastern District of Pennsylvania held that DIA's claims were barred by the two-year statute of limitations, as claims accrued when DIA knew, or had reason to know, SEPTA's renovations would not include elevators. Taking prima facie that DIA filed its claims more than two years after those dates. DIA appealed. On March 27[th,] 2007, an amicus curiae brief was filed by the United States of America in support of DIA, urging a REVERSAL of the Court's summary judgment in favor of SEPTA. On August 19, 2008, the U.S. Court of Appeals for Third Circuit REVERSED the District Court and remanded the case. Disabled in Action of Pa. v. Southeastern Pa. Transp. Auth., 539 F.3d 199 (3rd Cir. 2008). **THE THIRD CIRCUIT HELD THAT THE ACCRUAL DATE OF A DISCRIMINATION CLAIM DEPENDS ON WHEN THE DISCRIMINATION OCCURRED.** DIA's claims were NOT barred by statute of limitations. On September 11, 2009, the U.S. District Court Eastern District of Pennsylvania. granted DIA's motion for summary Judgment.

Individuals requesting accommodations on professional licensing exams often have a history of academic success, which has caused courts to question whether such individuals could possibly have an impairment that substantially limits a major life activity.   Sutton v. United Air Lines, Inc. has become the most commonly cited case. *Mitigating measures* are corrective actions that ameliorate the effects of an impairment without eliminating the impairment itself.   Much like a tired swimmer carried away by a riptide, may latch onto a tree branch or buoyant piece of debris in

---

[15] Ochoa & Wistrich, supra note 43, at 497-499

12

the ocean to stay afloat. *The situation does not change the fact that the swimmer is still submerged in the ocean and has been carried away from the shoreline.*

In Bartlett v. NYSBLE, (970 F. Supp. At 1117) Judge Sotomayor held that Bartlett's real world achievements were "not inconsistent with" the court finding her to be substantially limited in the major life activity of reading. The court held that Bartlett's success was the result of her "creativity in finding methods around reading . . . and [is] further evidence that she is substantially limited in reading when compared to 'most people.'" The House Committee on Education and Labor expressed its belief that someone should not be penalized simply because they have "managed their own adaptive strategies or received informal or undocumented accommodations that have the effect of lessening the deleterious impacts of their disability."

## <u>STATEMENT OF THE FACTS</u>

A swimmer caught in a riptide may notice that he is moving away from the shore quite rapidly. Riptides are not capable of pulling a swimmer under the water; instead they carry the swimmer away from the shore in a narrow channel of water.  The swimmer may drown if he/she becomes exhausted.

The riptide is like a treadmill which the swimmer needs to "step off" but can't.  The riptide became a reality for Richard Katz. The defendants misled Katz and lulled him into a repetitive mentally grueling cycle of study/fail, study/fail, etc., etc. etc. By concealing and misrepresenting their UNLICENSED so-called "EXPERT(S)" and "external evaluation" procedures in 2006, the defendants disregarded Katz's due

13

process rights and ignored scientific evidence by Katz's LICENSED caregivers, that pointed to the absolute need for accommodations on his USMLE. The defendants would repeat this pattern of disregard ignoring Katz's 2013 diagnosis of bipolar disorder as described and substantiated in depth in his April 1st, 2014 APPEAL. The defendants' negligence carried Katz further away from the shoreline and from achieving his career objectives. *Eventually he would be carried away from reality.* The inability to "step-off" and move forward with his career had ramifications on his familial, economic, mental, and overall well-being. Without a life preserver ring, exhaustion would inevitably set in and he would go under. By defendants implementing a faulty 'make or break' 'Six Attempt Limit Rule' Katz suffered a mental breakdown in March of 2013, requiring a week-long hospitalization in the Behavioral Health Unit at Pocono Medical Center where he was diagnosed for the first time with bipolar disorder (EXHIBIT 59).   The attending psychiatrist at Pocono Medical stated in her March 9, 2013 note; **Richard Katz "has thoughts of worthlessness, hopelessness, judgment is impaired." "Insight is poor!" (EXHIBIT 59)**


**I. NO DISTINCTION BETWEEN MENTAL ILLNESS AND DURESS WAS MADE BY THE DISTRICT COURT IN EMPLOYING KACH v. HOSE AS A LEGAL PRECEDENT.**

**Kach's Equitable Tolling Argument Fails Because There Were No *"Extraordinary Circumstances."* Mental Illness justifies Equitable Tolling based on the Regional Circuits and the Supreme Court."**

14

To show an extraordinary circumstance, a litigant must "show an 'external obstacl[e]' to timely filing, i.e., that 'the circumstances that caused a litigant's delay must have been beyond its control.'" Menominee Indian Tribe of Wisc. v. United States, 136 S. Ct. 750, 756 (2016).

The District Judge erred by adopting the Magistrate's R&R and concluding that:

> "Plaintiff's mental illness does not rise to the level of extraordinary as
> required to toll the statute of limitations on the basis of mental illness
> (see KACH v. HOSE. 589 F. 3d 626, 645 (3d CIR. 2009)."

In Kach, the plaintiff alleged she was held captive by a security guard from her middle school for ten years, from February 1996, when she was fourteen, to March 2006 (589 F.3d at 630-32). Kach brought a § 1983 suit against city officials, school district officials, and others in September 2006, contending her claims should not be barred by Pennsylvania's two-year statute of limitations because, among other reasons, she was ***under duress*** from her captor until she was removed from his house in March 2006. Id. at 639-40. The District Court granted summary judgment for Hose based on its conclusion that Hose had not acted under color of state law, an essential element of a § 1983 claim. The Third Circuit affirmed the district courts' granting of summary judgment for defendants, finding Kach's § 1983 claims untimely. Id. at 651. The third circuit explained;

"that while "[t]he circumstances of **Kach's case certainly may be described as, extraordinary"** in the vernacular sense of that word [,] [w]e nevertheless conclude that Kach has not met her burden of showing that this is one of those extraordinary cases warranting the application of any federal equitable tolling provision." Id. at 645 (citation omitted)."

15

The Third Circuit stated:

> "Kach would have to show that she was **mentally incompetent** and that her mental incompetence predated the government conduct that is alleged to have caused her injuries. She has failed to make such a showing. The only evidence on which Kach relies to demonstrate her mental condition is the declaration of Dr. Lawson Bernstein, a psychiatrist who did not examine Kach in person but reviewed certain materials produced in the course of this litigation and forwarded to him by Kach's lawyer.[16]
>
> **"Without so much as an intimation from the Pennsylvania courts that duress is a cognizable tolling device under Pennsylvania law, we decline Kach's invitation to manufacture such a device on our own initiative."**

**II. The lower Court erred by NOT acknowledging that the defendants' refusal to grant plaintiff a waiver from the 'Six-Attempt Limit' was an independent act of discrimination that triggered the commencement of a new limitation period, as it was a new act that inflicted a new and accumulating injury.**

In some situations, continuing misconduct by a defendant will justify the aggregation or parsing of its misbehavior, with the effect of rescuing a plaintiff's claims from the statute of limitations. Yet this seemingly straightforward principle has frustrated judges and litigants for many years,[17] for it has proven exceedingly difficult

---

[16] Specifically, Bernstein reviewed the amended complaint, Kach's responses to interrogatories propounded by the defendants, and Kach's deposition. (App. 225.)

[17] More than fifty years ago, a seminal Harvard Law Review article on statutes of limitations discussed the problems associated with "[c]ontinuing or [r]epeated wrongs." Note, Developments in the Law – Statutes of Limitations, 63 Harv. L. Rev. 1177, 1205-09 (1949-1950) [hereinafter Developments in the Law]. Other courts of yesteryear lamented how hard it was to identify certain types of continuing claims. See, e.g., Rockwell v. Day, 172 P. 754, 755 (Wash. 1918) (noting a "very marked conflict of authority" over whether the tort of seduction is continuing in nature); Bd. of Directors of St. Francis Levee Dist. v. Barton, 123 S.W. 382, 383 (Ark. 1909) (stating, with regard to differentiating between continuing and permanent nuisances and trespasses, "[t]here is perhaps no subject of the law about which there is a greater

to determine which claims are "continuing" in nature, and which are not.

The Supreme Court has provided guidance as to specific causes of action, as it did in a Title VII case, Ledbetter v. Goodyear Tire & Rubber Co.[18] No such help exists as to other claims, and in these contexts courts have embraced several different, and often conflicting, tests for discerning when wrongs "continue" over time.[19]

In Delaware State College v. Ricks, 449 U.S. 250 (1980), the plaintiff a black teacher charged that the College's denial of Tenure was the product of discrimination on the basis of national origin, forbidden by 42 U.S.C. § 1981 and Title VII. The Supreme Court determined that his claims accrued when he was informed of the denial of his tenure, not when his employment was terminated at the end of the one-year terminal contract he was given after the denial of tenure. The alleged discriminatory act occurred "at the time the tenure decision was made and communicated, not when the effects of the decision were felt."[20] Thus the "limitations period normally commences when the employer's decision is made."[21]

---

conflict of judicial opinion than the one concerning the application of the statute of limitations to injuries of this character, and scarcely any class of cases presents such difficulties for the application of settled principles").

[18] 127 S. Ct. 2162 (2007).

[19] See infra notes 66-136 and accompanying text.

[20] Delaware State College v. Ricks, 449 U.S. 250, 258 (1980),

[21] Delaware State College v. Ricks, 449 U.S. 250, 261 (1980), In a 4th Circuit Case the plaintiff probationary teacher claimed that he was retaliated against for bringing Title IX grievances. The alleged retaliation consisted of negative teacher evaluations and denial of tenure. The Circuit Court held that the plaintiff's claims accrued when negative evaluations were given and when tenure was denied. '{The} two 'not effective' evaluations and the denial of tenure are more properly considered two separate retaliatory acts than cause and effect." Lendo v. Garret County Bd. Of Educ., 820 F.2d 1365, 1367, (4th Cir. 1987).

The Supreme Court in Chardon v. Fernandez[22] established that the accrual rule set forth in Ricks is applicable to a claim for relief under § 1983. In Chardon, the plaintiff public employee alleged that the termination of his employment was politically motivated in violation of the First Amendment. The Supreme Court relying on Ricks held that plaintiffs' § 1983.claim for relief arising from the termination of their employment accrued when the plaintiffs were notified of the termination rather than the date of termination.[23]

Katz received no formal warning or notification regarding the consequence of the 'six attempt limit rule' from defendants. The only correspondence that was received from defendants was an April 17, 2014 response to his April 1st, 2014 Appeal. The Appeal was in response to plaintiff being blocked from registering for the USMLE Step I Exam on the defendants' affiliate website and to inform defendants of changes to his psychiatric diagnosis.

The ADA was intended to combat generalizations based on a person's class--- in this case, a person's status based on disability. This congressional intent is reflected in the findings supporting the ADA, where Congress found that,

> individuals with disabilities are a discrete and insular minority who have been ... subjected to a history of purposeful unequal treatment... resulting from stereotypic assumptions not truly indicative of the individual ability of such individuals to participate in, and contribute to, society. 42 U.S.C. § 12101(a)(7).

---

[22] 454 U.S. 6 (1981)

[23] In employment termination cases, the limitations accrues when the plaintiff learns that he has been fired rather than when he receives "official notice". Bates v. Board of Regents 699 F. Supp. 1489 (D. N.M. 1988).

18

The legislative history also reveals that Congress recognized the need to combat the "false presumptions, generalizations, misperceptions, patronizing attitudes, ignorance, irrational fears, and pernicious mythologies" surrounding disability and the need for a more enlightened view towards persons with disabilities. Gradually public policy affecting persons with disabilities recognized that many of the problems faced by disabled people are not inevitable, but instead are the result of discriminatory policies based on unfounded, outmoded stereotypes and perceptions, and deeply imbedded prejudices towards people with disabilities. These discriminatory policies and practices affect people with disabilities in every aspect of their lives, from securing employment (Judiciary Report at 25), to taking standardized tests like the USMLE, enjoying all the rights that Americans take for granted.

### III. __THE DISCOVERY RULE:__ "Under the discovery rule, an essential prerequisite to its application is the plaintiff's lack of awareness in recognizing the cause and extent of [the] harm (Lovelace v. Keohane, 1992 OK 24, 831 P.2d 624, 630).

Under federal common law, a claim generally does not accrue until such time as the plaintiff **"knows or has reason to know of the injury which is the basis for his action".**    Ormiston v. Nelson, 117 F.3d. 69, 71 (2nd Cir. 1997), quoting Singleton v. City of New York, 632 F.2d. 185, 191 (2nd Cir. 1980), cert. denied,. 450 US 920 (1981).    This principle, referred to as the *"discovery rule"* was recognized by the Supreme Court prior to the enactment of Title VII, in the 1949 case of Urie v. Thompson, 337 US 163 (1949).

**The discovery rule is concerned with the date of awareness of injury- and not the date plaintiff became aware that the injury was the result of a legal wrong** (See Heins v. Potter, 271 F. Supp.2d 545 (SDNY 2003); Carrion v. Coca-Cola Bottling Co., 2006 WL 3526748 at *3 (D. Conn. 2006), and citations therein). Under the discovery rule, once the plaintiff discovers or should have discovered the fact of the injury and its cause, the cause of action accrues, even if it would have been impossible for the plaintiff to know that the injury was the result of discrimination. Heins, 271 F. Supp.2d at 545; Carrion, 2006 WL 3526748 at *3. **"[D]iscovery of the injury, not discovery of the other elements of a claim, is what starts the clock". Rotella v. Wood, 528 US 549, 555 (2000).**

## STATEMENT OF THE STANDARD OF REVIEW

District Judge Robert D. Mariani, the Supreme Court and the high-stakes testing agencies (USMLE Org.) all have something in common, they have chosen to interpret the ADA in a way other than Congress intended. In the case of mental disorder, they have interpreted it to severely limit who is covered by the ADA— seeming to totally disregard the spirit and intent of the ADA and scientific evidence pointing to the absolute need for the accommodation of extra time for people with mental disabilities. The ADA was enacted twenty-seven years ago and was meant to level the playing field for people with disabilities. Congress intended a broad range of people, including those like the plaintiff, to be protected by the law. The

ADA was passed with virtually unanimous support in both houses of Congress, with the strong support of a Republican President as well as broad public support.[24]

Since then, a near unanimous Supreme Court has rewritten the ADA in a restrictive fashion without any subsequent efforts to overturn those decisions. That sequence of events is not easy to explain, the Court's decisions cannot be rationalized against any principled means of statutory interpretation.[25]

Statutory interpretation presents a question of law over which this Court exercises a de novo review. *Pell v. E.I. DuPont de Nemours & Co.,* 539 F.3d 292, 305 (3d Cir. 2008). Under the de novo standard of review, this Court owes no deference to the District Court's statutory interpretation analysis. *Id.* at 305.

---

[24] See supra note 3. Public opinion polls show extremely high support for the ADA and the rights of the disabled. In 1991, 95% of those surveyed supported a prohibition on discrimination based on disability, and 83% supported requiring employers to provide accommodations. See Humphrey Taylor, Overwhelming Majority of Americans Continue to Support the Americans with Disabilities Act, The Harris Poll, May 12, 1999, http://www.harrisinteractive.com/harris_poll/index.asp?PID=63. The support has been consistent over time. See Elaine B. Sharp, The Dynamics of Issue Expansion: Cases from Disability Rights and Fetal Research Controversy, 56 J. POL. 919, 933 (1994) (discussing early polls and strong support for affirmative action measures).

[25] See infra Part III

# SUMMARY OF ARGUMENT

If you break your arm and your arm is in a cast, there is visible evidence of a disability.  If a person is in a wheelchair it is apparent that he/she is disabled.  In contrast, a mental disorder is a hidden disability; there's no external sign posted on your forehead saying that you have a mental disability.  For example, new scientific findings have shown that Bipolar disorder (BD) is associated with various cognitive impairments, of which deficits in verbal learning, attention, and executive functions are the most frequently reported.[26]  The records reflect that Richard Katz has a long history of speech problems, executive functioning and processing speed problems that substantially impairs major life activities like reading, thinking and concentrating.  He has experienced difficulties throughout his education and particularly on standardized exams.

In an article entitled *"Putting Science before Mythology and Misunderstandings."* Dr. Sally Shaywitz[27] discussed the need for revising and updating the Americans With Disabilities Act in a November 2008 interview at Yale's Center for Dyslexia and Creativity.[28]  The following passage has many

---

[26] Quraishi S, Frangou S. Neuropsychology of bipolar disorder: a review. J Affect Disord. 2002;72(3):209–226.

[27] Sally E. Shaywitz, M.D., the Audrey G. Ratner Professor in Learning Development at the Yale University School of Medicine, is Co-Director of the Yale Center for Dyslexia & Creativity. Dr. Shaywitz is the author of over 200 scientific articles, chapters and books.

[28] Dyslexia and the Americans With Disabilities Act Amendment Act: A Q&A with

parallels to Katz v. NBME et al.  and interestingly the 'young man' that Dr.

Shaywitz refers to below is Frederick Romberg.[29]

> "A young man I know attends medical school.  Diagnosed with
> dyslexia in the early grades, he received good instruction, worked
> very hard and received accommodations through high school, college,
> and now medical school.  He also requested and was granted extra
> time for his SATs.  Now, in the third year of medical school, he is
> required to take a very high stakes examination, the United States
> Medical Licensing Exam (USMLE), in order to continue on in
> medicine.  As for his previous tests, he requested accommodations,
> but in this instance was denied, seemingly based on his good
> performance in college (where he had received testing
> accommodations).  Recognizing that he cannot demonstrate his
> knowledge and pass the test if he does not have enough time even to
> read the questions, his family sought the assistance of the court to
> enforce the application of the ADA.  Here, based on older
> interpretations of the ADA, the judge said, in effect, "You can read
> menus, road signs, you can read as well as the average person," ruling
> that the student was therefore not disabled and denied him
> accommodations.  This ruling totally disregarded the medical
> student's **neurobiologically** based inability to read rapidly and his
> consequent requirement for extra time if he was to demonstrate his

---

Dr. Sally Shaywitz. 2008 http://dyslexia.yale.edu/Policy_QA.html

[29] See Footnote #3.  Department of Justice SETTLEMENT AGREEMENT
BETWEEN UNITED STATES OF AMERICA AND NATIONAL BOARD OF
MEDICAL EXAMINERS On February 23, 2011, NBME entered into a settlement
agreement DJ# 20216-181 with Justice (EXHIBIT 17) resolving a complaint by
Frederick Romberg a Yale Medical Student with dyslexia. Romberg was twice
refused accommodations by NBME. The Board agreed to provide reasonable testing
accommodations to people with disabilities when taking the USMLE and agreed to
grant the accommodations he needed -- double the standard testing time and a
separate testing area. Under the agreement, NBME was only to request
documentation about (a) the existence of a physical or mental impairment; (b)
whether the impairment substantially limits one or more major life activities within
the meaning of the ADA; and (c) whether and how the impairment limits the
applicant's ability to take the USMLE under standard conditions. The NBME –
Justice settlement agreement DJ# 20216-181 was signed February 2011 and was over
February 2013. Katz sent an appeal to the defendants in April of 2014 and was
denied accommodations by the USMLE Secretariat's Office (EXHIBIT 30)

knowledge. Ironically, his medical school has allowed him additional time on tests in each of his courses and, with the provision of such time, the student ranks in the top quarter of his class. Without such extra time, he would no doubt fail his courses and will most likely fail the USMLE. Here, sadly, not only would the student have to leave medical school but society would be deprived of what it currently needs most: a compassionate, caring, and knowledgeable physician who knows what it is like to struggle and to experience hardship."

**For the reasons discussed above and those addressed below – The 'Six Attempt Limit Rule' is faulty in its constructed logic for those with Mental Disabilities because it doesn't factor in decrements that are neurobiologically based.**

 

**A.**                                              **B.**

**Disabilities - Faulty Policy and Perception:** If a person is in a wheelchair it is apparent he is disabled. In contrast, mental disabilities like bipolar disorder or dyslexia are hidden disabilities; with no external signs. **A.** Would it be a level playing field to give the disabled individual on the left in the wheelchair 'six attempts' to ascend the long stairway without assistance? Can he compete with the non-disabled gentleman on the right who is also given six attempts to ascend the long stairway without assistance? **B.** A likely outcome of the disabled individual is depicted. This is no different than the defendants faulty 'Six Attempt Limit' Policy! **The above scenario would never be tolerated by today's society, so why should it be tolerated for individuals with mental disabilities?**

Richard Katz did not find out his diagnosis of bipolar disorder until March of 2013, he contacted the defendants on April 1, 2014 notifying them of changes to his diagnosis via an APPEAL. The defendants responded on April 17, 2014 never acknowledging the changes to his diagnosis and denying his request for accommodations. This tolls the statute of limitations period to April 17, 2016. Katz's filing was timely as he initiated this lawsuit on June 17, 2015. The ADA does not contain a specific statute of limitations.

Here the actions of the defendants April 17, 2014 denial of the faulty 'Six Attempt Limit Rule' constitutes a NEW discriminatory act separate from the discrimination that took place in Katz's 2006 accommodation request. This is actionable under the ADA.

Katz sent a notarized request to NBME Disability Services on January 27, 2014 requesting his documentation from 2005-2006 per attorney recommendation. On February 4, 2014 Catherine Farmer[30] current NBME Director of Disability Services and ADA Compliance Officer for Testing Programs and the same NBME external evaluator "EXPERT" who reviewed Katz's disability application in 2005-2006 replied by mail stating; "The NBME does not copy or return the comments of an examinees' disability file or send copies to examinees or third parties (EXHIBIT 33)."

---

[30] Catherine Farmer the "External Consultant" and so-called "EXPERT" for NBME in 2006 was the ONLY "external" evaluator of Katz's 2006 disability file (EXHIBIT 24). Based on Farmer's Resume she was employed by NBME in various capacities from 1993 to 2016 and due to her internal affiliation was NOT an objective "external consultant." Prior to receiving a Psy.D. in 2004 Farmer held an LPN in nursing (EXHIBIT 14). LPN's work under the direction of Registered Nurses (RN's). Farmer's Resume states she graduated as Psy.D. the same year Katz graduated medical school, in 2004 (EXHIBIT 13). Farmer did not have adequate experience to constitute an "EXPERT" designation. She also had/has NO LICENSE to practice (EXHIBIT 14) in the Commonwealth or any other US State or territory. The NBME leveraged themselves with an internally affiliated evaluator to get around ADA compliance issues and to control for incoming accommodation requests (EXHIBIT 36). A search of Pubmed accessing Medline database of references and abstracts in the life sciences reveals NO publication history in peered reviewed medical journals for Farmer to date (EXHIBIT 45). A material fact that she is NO "EXPERT" in her respective field.

**Katz did receive the documents he requested during the discovery phase of this lawsuit, to find that the sole reviewer of his documentation in 2005-2006 was no other than Catherine Farmer.**

J. Abram Doane Compliance Officer for NBME Disability services in 2006 fraudulently concealed the fact that there was only ONE internally affiliated UNLICENSED reviewer.

*"We consulted 'EXPERTS' in the fieldS of Learning Disability and Mental DisorderS to assist us in reviewing the documentation." (EXHIBIT 16)*

The defendants 2006 denial of Katz's NBME Disability Application should now be rendered invalid because NO evaluator from NBME had/has any type of credentials or professional LICENSE and do not meet the criteria of "EXPERT" designation (EXHIBIT 14 & EXHIBIT 48).   Moreover, Katz's LICENSED caregivers should now be given deference under the ADAAA of 2008.

The fraudulent concealment doctrine "does not require fraud in the strictest sense encompassing an intent to deceive, but rather, fraud in the broadest sense, which includes an unintentional deception."[31] **The Pennsylvanian Supreme court held that, "the discovery rule applies to toll the statute of limitations in any case where a party neither knows nor reasonably should have known of his injury and its cause at the time his right to institute suit arises."[32]**

---

[31] Fine v. Checcio, 870 A.2d 850, 860 (2005).
[32] Id.

# ARGUMENT

## I. WHETHER APPELLEES' DENIAL OF APPELLANT'S REQUEST FOR A WAIVER FROM THE SIX-ATTEMPT LIMIT WAS AN INDEPENDENT ACT OF DISCRIMINATION THAT COULD TRIGGER THE COMMENCEMENT OF A NEW LIMITATIONS PERIOD, SEE DEL. STATE COLL. v. RICKS, 449 U.S. 250, 260-61 (1980)?

The recent federal and state court decisions make clear that the continuing violation doctrine is an area of the law that is NOT a static one, and that both courts and politicians are willing to consider issues of public policy in determining when a claim is found to have accrued.   The Appellee's denial of Appellants' request for a waiver from the six-attempt limit was an independent act of discrimination based on the following reasons:

**(a) Richard Katz suffers from multiple psychiatric comorbidities including bipolar disorder.  The bipolar disorder was first diagnosed in March of 2013.  This would therefore have to be considered an independent act of discrimination because there was a change to his psychiatric diagnosis that was disclosed and brought to the defendants' attention in his April 1st, 2014 Appeal.**

The defendants ignored this disclosure and attempted to tangle him in an administrative quagmire *exception clause* with the Pennsylvania State Board of Medicine who shifted responsibility right back to the defendants. The District Judge erred by making the following statement in his February 7th Order:

> "During the time of Plaintiff's disability, Plaintiff was able to finish medical school, apply for the required examinations for his medical license on multiple occasions and apply for other jobs."

Plaintiff received his medical degree in 2004, and was not diagnosed with bipolar disorder until March of 2013.  Although bipolar disorder can occur at any point in

27

life, the average age of onset is 25. Every year, 2.9% of the U.S. population is diagnosed with bipolar disorder, with nearly 83% of cases being classified as severe.[33]  Katz was diagnosed on his 43rd birthday.  **How then does the District Judge discern if Katz had a new onset Bipolar Disorder exacerbated by the inordinate stress and pressure that the defendants put him through by not accommodating his disabilities coupled with the 'make or break' nature of the faulty six-attempt limit rule; or if the bipolar disorder has been there all along?** Katz has a very complicated neurological and psychiatric history that begins with a seizure disorder during early childhood.  This is a factor that his own psychiatrists are even uncertain about.  The District Judge was not particularly versed in the intricacies of this case to make such a temporally disjointed statement.  The District Judge also goes against the spirit and intent of the ADA by not considering the *mitigating measures* that Katz had to employ to compensate for his disabilities to get through the rigors of medical education (EXHIBIT 55).

**(b) The lack of acknowledgment of Katz's mental disabilities on the part of the defendants together with their NEW faulty policy barrier – the 'six attempt limit rule' to those with mental disabilities constitutes a NEW discriminatory act beginning April 17, 2014.**

There was a failure to make a reasonable accommodation and to modify an unjust policy to an individual with neurobiological decrements. An individual who has a record of having mental impairment.  There was no explanation or justification provided to the disabled party. Plaintiff's request to modify the six-attempt policy, is

---

[33] NAMI National Institute of Mental Illness (NAMI) https://www.nami.org/Learn-More/Mental-Health-Conditions/Bipolar-Disorder

a reasonable accommodation under the ADA and does not substantially modify the USMLE's standards as stated below by attorney Charles Weiner an expert in disability law.   This letter was addressed to the Pennsylvania State Board of Medicine - Counsel on April 7th, 2015 on behalf of Richard Katz (Case 3:15-cv-01187-RDM Document 1-1 Filed 06/17/15 Page 1 of 2)

> Furthermore, the State Board of Medicine should consider that the request for this waiver is itself an accommodation under the ADA. Mr. Katz's request to modify six attempt policy, is a reasonable accommodation and does not substantially modify the State Board's or the USMLE's standards. *See e.g. Doe v. Samuel Merritt University*, 921 F.Supp. 2d. 958 (N.D. Cal. 2013) (Preliminary Injunction granted allowing student with a disability to take a podiatric licensing examination unlimited times as an accommodation to University's policy providing for a three exam limit).

**(c)   The defendants misinformed and misled Katz in 2006 about the identity and actual credentials of their so-called "EXPERT(S)" refusing to provide his disability application file when requested on January 17th, 2014, ironically it was the same so-called "EXPERT" who was in receipt of his request.**

The NBME so-called "EXPERT" responded on February 4th, 2014 stating that the "NBME does not copy or return the contents of an examinee's disability file or send copies to examinee's or third parties." See (DKT # 1-5 filed 06/17/2015). *Wherefore, plaintiff was estopped from invoking the statute of limitations until receiving his file during the discovery phase of this lawsuit (See Walters v. Ditzler, 227 A.2d 833 (Pa. 1967)."*

**(d) The ADA, does not contain a specific statute of limitations.[34] Applying a time bar in a case where the plaintiff had no opportunity to raise his claim within the**

---

[34] Hill, E. & Blanck, P. (2009). Future of Disability Rights: Part Three—Statutes of Limitations in Americans with Disabilities Act, "Design and Construct" Cases, Syracuse Law Review, 60, 125-159.

**time period may be unfair.**[35]

Applying a strict time bar under a statute designed to bring equality of opportunity to a traditionally underrepresented group, may not deter discrimination and undermine the remedial purposes of the civil rights law. Given that the ADA is a relatively new law with a broad scope and complexity, judicial interpretation is needed to guide behavior. Tight limitations prevent judicial input into the statute's meaning, leaving all prospective parties limited guidance to shape their behavior.

**(e)   The "polestar of the discovery rule is not the plaintiff's actual knowledge of injury but rather whether the injury was known or through the exercise of reasonable diligence knowable to the plaintiff".  Carrion, 2006 WL 3526748 at *2-3, quoting Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385-1386 (3rd Cir. 1994).**

A cause of action does not accrue when a person has a, "hunch, hint, suspicion or rumor" of an injury.  Heins, 271 F. Supp.2d at 545, quoting Kronisch v. United States, 150 F.3d. 112, 121 (2nd Cir. 1998).   Instead, the claim accrues when the plaintiff either discovered, or with the exercise of reasonable diligence should have discovered, the critical facts of the injury and its cause.  Heins, 271 F. Supp.2d at 545.   Through the discovery process of this lawsuit Katz was finally able to determine what transpired behind closed doors at the NBME Disability Services in 2005 - 2006.  Prior to this Katz was in the dark.

---

[35] Id.

**6. While the Supreme Court has not explicitly held that the discovery rule applies to Title VII claims, See Ledbetter, 127 S. Ct. at fn 10; National Railroad Passenger Corporation v. Morgan, 536 U.S. 101, at fn 7 (2002), <u>it has suggested that the discovery rule could be used to determine the accrual date in Title VII claims.</u>  Delaware State College v. Ricks, 449 U.S. 250, at fn16 (1980); National Railroad Passenger Corp. v. Morgan, 536 US 101, 124 (1990) (concurrence of Justice O'Connor, Chief Justice Rehnquist and Justice Breyer, stating that, "some version of the discovery rule applies to discrete-act claims...").**

Moreover, the Second Circuit, and virtually every other Federal Court of Appeals that has considered the issue, has applied the discovery rule of accrual to employment discrimination and **civil rights cases.**  Thus, there is overwhelming authority supporting the application of the discovery rule to Title VII claims.

**7.  Borrowing the EEOC filing deadline which is not jurisdictional, the statute of limitations is also subject to principles of equity.  Zipes, 455 US at 393; Irwin v. Department of Veterans Affairs, 498 US 89 (1990); Young v. United States, 535 US 43 49-50 (2002).**

Such equitable principles may stop the time limits from running even though the accrual period has passed. Cada, 920 F.2d. at 450-451. There are three terms used to described the equitable principles used to toll statutes of limitations:  **equitable estoppel, equitable tolling and fraudulent concealment.**  Pearl, 296 F.2d. at 81. The Second Circuit has explained that equitable estoppel applies when a plaintiff knows of his cause of action, but the **defendant's conduct causes the plaintiff to delay in filing the claim.**  Cerbone v. International Ladies Garment Workers Union, 768 F.2d. 45, 49-50 (2nd Cir. 1985).  Equitable tolling applies where the plaintiff is ignorant of the cause of action, and tolling is deemed appropriate as a matter of fairness.  Id. at 48.  Fraudulent concealment of a cause of action is a term

sometimes used to describe a particular type of equitable tolling.    Id. at 49.   The discovery rule and the principles of equitable tolling are related and are sometimes confused.  Pearl, 296 F.3d. at 80.  **When a plaintiff could not through reasonable diligence discover that she has been injured, the discovery rule applies and the cause of action has not accrued.  However, when a plaintiff knows or should have known of his injury- i.e. his claim has accrued- but the defendant's wrongful, affirmative acts prevent him from learning about other facts that might support a cause of action, then tolling may apply**.  In other words, tolling only applies once a claim has accrued.... Heins, 271 F. Supp. 2d. at 554.

The filing deadline for a discrimination claim may be subject to equitable tolling if: (1) the plaintiff has acted with reasonable diligence during the period he seeks to have tolled; and (2) the plaintiff has shown that the circumstances are so extraordinary that the doctrine should apply.   Zerilli-Edelglass v. New York City Transit Authority, 333 F.3d 74, 80-81 (2nd Cir. 2003); Smith v. McGinnis, 208 F.3d 13, 17 (2nd Cir. 2000); Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2nd Cir. 1996); Warner v. Asplundh Tree Expert Co., 2003 WL 22937718 (D. Conn. 2003). ***Extraordinary circumstances* justifying equitable tolling may exist if the plaintiff can show that, "it would have been impossible for a reasonably prudent person to learn that his discharge was discriminatory".**  Pearl, 296 F.3d 76, at 85; Miller v. Int'l Tel. & Tel. Corp., 755 F.2d 20, 24 (2d Cir.1985).  See Also: Cerbone, 768 F.2d. at 49; Kennedy v. Saint Francis Hospital, 225 F. Supp.2d. 128, 134-135 (D. Conn. 2002**).   The filing deadline may also be extended if the plaintiff can show that the defendant's misleading or fraudulent conduct prevented the plaintiff from learning the facts that would support a cause of action.  Miller, 755 F.2d at 24.  See also Cerbone, 768 F.2d. at 49; Carrion,**

**2006 WL 3526748 at \*4; Zenobi v. Exxon Corp, 577 F. Supp. 514, 517**
**(D. Conn. 1983); Heins, 271 F.**

Supp.2d. at 554-555. This second type of tolling is sometimes referred to as fraudulent concealment. Cerbone, 768 F.2d. at 49; Carrion, 2006 WL 3526748 at \*4; Zenobi, 577 F. Supp. at 517; Heins, 271 F. Supp.2d at 554-555.    Equitable tolling will defer the start of the filing period from the time of the discriminatory action to the time the employee, "should have discovered the action's discriminatory motive".

Cerbone, 768 F.2d. at 49.   See Paneccasio v. Unisource Worldwide, Inc., 2003 WL 1714085 (D. Conn. 2003) (denying motion to dismiss on equitable tolling grounds, where plaintiff alleged that defendant fraudulently concealed the facts that formed the basis of his age discrimination claim); Oshiver, 38 F.3d at 1392 (reversing district court's dismissal of claim, explaining that claim could be equitably tolled until date that plaintiff learned that she had been replaced by a male, where defendant misled plaintiff about reason for discharge).

**II. WHETHER THE DISTRICT COURT WAS CORRECT TO CONCLUDE**
**THAT APPELLANT'S MENTAL HEALTH STATUS COULD NOT**
**EQUITABLY TOLL THE LIMITATIONS PERIOD, SEE KACH v. HOSE.**
**589 F. 3d 626, 645 (3d CIR. 2009)?**

Relying on the Docket, and the legal standards already addressed herein, this case arises to the level of an "extraordinary circumstance" —  unlike in Kach v. Hose.  Accordingly, the statute of limitations should be tolled.

The lower Court erred in minimizing and mischaracterizing this case as *duress. To show an extraordinary circumstance, a litigant must "show an 'external obstacl[e]' to timely filing, i.e., that 'the circumstances that caused a litigant's delay must have been beyond its control.'" Menominee Indian Tribe of Wisc. v. United States, 136 S. Ct. 750, 756 (2016) (quoting Menominee Indian Tribe of Wisc. v. United States, 764 F.3d 51, 58–59 (D.C. Cir. 2014)).*

Katz's arrived at Pocono Medical Center in March of 2013, he was evaluated for suicidality.  The attending psychiatrist at Pocono Medical stated in her March 9, 2013 note; Richard Katz **"has thoughts of worthlessness, hopelessness, judgment is impaired." "Insight is poor!"** (EXHIBIT 59).

The in-patient hospital record speaks for itself.  Katz's risk factors for suicidality were high, this included mental impairment, a depressed psychological state, socio-economic problems (unemployment), financial distress because of his vocational issues directly from the discrimination he experienced by the NBME.  He takes psychiatric medications every day of his life and requires frequent psychotherapy to control the symptoms of his disorder.  Does this not rise to the level of an "extraordinary circumstance?"

**The American Psychiatric Association's definition of a mental disorder:**

[E]ach of the mental disorders is conceptualized as a clinically significant behavioral or psychological syndrome or pattern that occurs in an individual and that is associated with present distress (e.g., a painful symptom) or disability (i.e., impairment in one or more important areas of functioning) or with significantly increased risk of suffering death, pain, disability, or an important loss of freedom. In addition, this syndrome or pattern must not be merely an expectable and culturally sanctioned response to a particular event . . . . **Whatever its original cause, it must be considered a manifestation of a behavioral, psychological or biological dysfunction in the individual.** Neither deviant behavior (e.g., political, religious, or sexual) nor conflicts that are primarily between the individual and society are mental disorders unless the deviance or conflict is a symptom of a dysfunction in the individual, as described above.

34

**Duress** has been defined as: [T]hat degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to **overcome the mind of a person of ordinary firmness**…. Ortt v. Schwartz, 62 Pa. Super. 70. See also Falgiatore v. Falgiatore, 378 Pa. 586, 107 A.2d 864.

In Barrett v Principi, the United States Court of Appeals, Federal Circuit concluded:

"On the merits, we are presented with only one issue: can mental illness ever excuse the failure to timely file a notice of appeal? We join the majority of our sister circuits in concluding that mental illness can justify equitable tolling."

"A careful study of Supreme Court precedent, as well as that of the regional circuits, …. reveals that equitable tolling is available in a variety of circumstances, including when a party has been mentally incapacitated."

"We believe these generalized standards should govern claims of mental incompetence. Therefore, to obtain the benefit of equitable tolling, ….. show that the failure to file was the direct result of a mental illness that rendered him incapable of "rational thought or deliberate decision making," Meléndez-Arroyo, 273 F.3d at 37, or "incapable of handling [his] own affairs or unable to function [in] society," Smith-Haynie, 155 F.3d at 580 (internal quotes omitted)."

## CONCLUSION

For the reason set forth herein, Apellant Richard Katz humbly requests this

Honorable Court;

**(a)** To find that the District Court erred in granting the Defendants' Amended Motion

for Summary Judgement on the basis that there were no material facts in dispute.

This brief proves that too many material facts currently exist for this case not to

move forward.

**(b)** That the Case be remanded to the Philadelphia Federal Court and NOT back to the Middle District Court in Scranton if meritorious on appeal. As outlined in this brief, the Middle District Court did not properly handle this action. The outcome was seemingly already determined before the case ever began.

**(c)** To find that the Middle District Court erred with its false assumptions in not granting Counsel to Plaintiff which unfairly chalked this matter up to a "David v. Goliath" contest. This unfairly swayed the advantage to the defendants.

**(d)** To find that despite such challenges, after Plaintiffs' deployment of *mitigating measures* and countless hours parsing the case-law, that a 'very accurately slung stone' has been casted (1 Samuel 17:40, 49), by way of seemingly straightforward equitable principles demonstrating genuine issues for trial on all counts of the Second Amended Complaint.

**(e)** To acknowledge that the ADA was meant to level the playing field for people with disabilities like plaintiff, and High Stakes testing agencies like NBME have chosen to interpret the ADA to severely limit who is covered. Thus, totally disregarding the spirit and intent of the ADA and scientific evidence pointing to the absolute need for accommodations.

**(f)** To acknowledge that if the defendants' actions are not redressed (as GAO warned Justice in 2011) the riptide will eventually become a tsunami that engulfs individuals with disabilities. Plaintiff therefore respectfully asks this Court to grant him a "first chance to successfully handle his disability," by not only adopting his arguments, but also Congress' intended application of the ADA, a remedial legislation to "break down barriers to the integrated participation of people with disabilities in community life." H.R. Rep. No. 485 (III), 101st Cong., 2d Sess. 49-50 (1990).

# CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF

# APPELLATE PROCEDURE 32(a) AND LOCAL RULE 31.1

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify the following:

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because this brief contains 8,232 words excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii) of the Federal Rules of Appellate Procedure.



This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using the 2016 version of Microsoft Word in 14 point Times New Roman font.

This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of this electronic brief is identical to the text of the paper copies, and the KASPERSKY Virus Protection, version 17.0 has been run on the file containing the electronic version of this brief and no viruses have been detected.

                                       /s/ Richard Katz, pro se.

Dated: May 25, 2017

## **CERTIFICATE OF SERVICE**

I certify that the foregoing APPEAL, is being filed electronically with the Clerk of Court on May 25, 2017 using the electronic case filing system, which will automatically send email notifications of such filing to registered parties.


**Neil J. Hamburg**
**Michael E. Sacks**
HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA 19103-1443
(215) 255-8590
Attorneys for Defendants,


/s/ Richard Katz
Richard Katz
*pro se*
3364 Parker Lane
East Stroudsburg, PA 18301
Telephone: 570-517-9314

39

## IN THE MIDDLE DISTRICT COURT OF PENNSYLVANIA

|  |  |  |  |
|---|---|---|---|
| Richard Katz | : | Case No. | 3:15-cv-01187 |
| Plaintiff | : | | |
| | : | | |
| v. | : | **NOTICE OF APPEAL** | |
| | : | | |
| National Board of Medical Examiners (NBME) et al. | : | | |
| Defendants | : | | |
| | : | | |

Now comes the _pro se plaintiff Richard Katz_, and hereby gives notice that he is

appealing the _District Judges' Order Adopting the Magistrate Judges' Report and Recommendations_

decision entered by said trial court on the __7__ of _February_, _2017_ to the

Third Circuit Court of Appeals.

Richard Katz, pro se

3364 Parker Lane , East Stoudsburg, PA 18301

(570) 517-9314

### CERTIFICATE OF SERVICE

I hereby certify that a copy of this Notice of Appeal was served by ECF system upon
Michael Sacks of Hamburg Golden, P.C. 1601 Market Street, Philadelphia, PA 19103 this
9 th day of _February_ 20_17_.

/s/Richard Katz, pro se

APPEAL,CLOSED,PROSEREF,SCR,SPADFORM,WVSENT

# United States District Court
# Middle District of Pennsylvania (Scranton)
# CIVIL DOCKET FOR CASE #: 3:15-cv-01187-RDM

Katz v. National Board of Medical Examiners et al
Assigned to: Honorable Robert D. Mariani
Case in other court: Third Circuit, 17-01329
Cause: 28:1331 Federal Question: Other Civil Rights

Date Filed: 06/17/2015
Date Terminated: 02/07/2017
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

## Plaintiff

**Richard Katz**

represented by **Richard Katz**
3364 Parker Lane
East Stroudsburg, PA 18301
570-517-9314
Email: cat2400@msn.com
PRO SE

V.

## Defendant

**National Board of Medical Examiners**

represented by **Michael E. Sacks**
Hamburg & Golden, P.C.
1601 Market Street
Suite 3310
Philadelphia, PA 19103
215-255-8590
Fax: 12152558583
Email: sacksme@hamburg-golden.com
*ATTORNEY TO BE NOTICED*

**Neil J. Hamburg**
Hamburg & Golden, P.C.
1601 Market St.
Suite 3310
Philadelphia, PA 19103-1443
215-255-8592
Fax: 12152558583
Email: hamburgnj@hamburg-golden.com
*ATTORNEY TO BE NOTICED*

## Defendant

**United States Medical Licensing Exam
(USMLE) Organization**
*TERMINATED: 08/13/2015*

represented by **Michael E. Sacks**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Neil J. Hamburg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Federation of State Medical Boards**                  represented by **Michael E. Sacks**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Neil J. Hamburg**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/17/2015 | 1 | COMPLAINT against National Board of Medical Examiners, United States Medical Licensing Exam (USMLE) Organization, filed by Richard Katz. (Attachments: # 1 Exhibit(s) 1, # 2 Exhibit(s) 2, # 3 Exhibit(s) 3, # 4 Exhibit(s) 4, # 5 Exhibit(s) 5, # 6 Exhibit(s) 6, # 7 Exhibit(s) 7)(bg) (Entered: 06/17/2015) |
| 06/17/2015 | 2 | MOTION to Appoint Counsel by Richard Katz.(bg) (Entered: 06/17/2015) |
| 06/17/2015 | 3 | MOTION for Leave to Proceed in forma pauperis by Richard Katz. (Attachments: # 1 Proposed Order)(bg) (Entered: 06/17/2015) |
| 06/17/2015 | 4 | PRO SE LETTER ISSUED w/ 285 Packet & Notice & Consent Form. (Attachments: # 1 285 packet, # 2 Notice and Consent) (bg) (Entered: 06/17/2015) |
| 06/17/2015 | 5 | STANDING PRACTICE ORDER ISSUED (bg) (Entered: 06/17/2015) |
| 06/24/2015 | 6 | U.S. MARSHAL - 285, AO 398 and AO 399 Service Forms (bg) (Entered: 06/24/2015) |
| 06/24/2015 | 7 | Documents Filed by Richard Katz. (bg) (Entered: 06/24/2015) |
| 06/25/2015 | 8 | U.S. MARSHAL - 285, AO 398 and AO 399 Service Forms (bg) (Entered: 06/25/2015) |
| 06/29/2015 | 9 | ORDER DIRECTING THE CLERK'S OFFICE TO SEND AO 398 AND 399 WAIVERS FORMS to defendants. ; granting 3 Motion for Leave to Proceed in forma pauperisSigned by Magistrate Judge Joseph F. Saporito, Jr on 6/29/15. (ms) (Entered: 06/29/2015) |
| 06/30/2015 | 10 | Waiver of Service forms (AO 398 and 399)along with Complaint (Doc. 1) and Order (Doc. 9) Mailed to National Board of Medical Examiners, United States Medical Licensing Exam (USMLE) Organization Waiver of Service due by 8/3/2015. (Attachments: # 1 waivers, # 2 addresses)(rp) (Entered: 06/30/2015) |
| 07/13/2015 | 11 | EXHIBIT by Richard Katz re 1 Complaint,. (Katz, Richard) (Entered: 07/13/2015) |
| 07/17/2015 | 12 | NOTICE of Appearance by Neil J. Hamburg on behalf of National Board of Medical Examiners (Hamburg, Neil) (Entered: 07/17/2015) |
| 07/17/2015 | 13 | NOTICE of Appearance by Neil J. Hamburg on behalf of United States Medical Licensing Exam (USMLE) Organization (Hamburg, Neil) (Entered: 07/17/2015) |
| 07/19/2015 | 14 | EXHIBIT by Richard Katz re 1 Complaint,. (Katz, Richard) (Entered: 07/19/2015) |
| 07/27/2015 | 15 | WAIVER OF SERVICE Returned re National Board of Medical Examiners waiver sent on 6/30/2015, answer due 8/31/2015. (bg) (Entered: 07/27/2015) |
| 07/27/2015 | 16 | WAIVER OF SERVICE Returned re United States Medical Licensing Exam (USMLE) Organization waiver sent on 6/30/2015, answer due 8/31/2015. (bg) (Entered: 07/27/2015) |

| | | |
|---|---|---|
| 08/03/2015 | 17 | MOTION to Amend/Correct 1 Complaint, by Richard Katz.(Katz, Richard) (Entered: 08/03/2015) |
| 08/03/2015 | 18 | EXHIBIT *Federation of State Medical Boards The University of Texas Health Science Center at San Antonio* by Richard Katz re 17 MOTION to Amend/Correct 1 Complaint, . (Katz, Richard) (Entered: 08/03/2015) |
| 08/05/2015 | 19 | MOTION to Seal or otherwise limit inspection of a case record by Richard Katz. Brief in Support due by 8/19/2015 (bg) (Entered: 08/05/2015) |
| 08/12/2015 | 20 | ORDER finding as moot 17 Motion to Amend/Correct. See order for complete details. Signed by Magistrate Judge Joseph F. Saporito, Jr on 8/12/15 (ms) (Entered: 08/12/2015) |
| 08/12/2015 | 21 | NOTICE of Appearance by Michael E. Sacks on behalf of National Board of Medical Examiners (Sacks, Michael) (Entered: 08/12/2015) |
| 08/12/2015 | 22 | NOTICE of Appearance by Michael E. Sacks on behalf of United States Medical Licensing Exam (USMLE) Organization (Sacks, Michael) (Entered: 08/12/2015) |
| 08/12/2015 | 23 | AMENDED COMPLAINT re: Doc. 1, Doc. 18, by Richard Katz.(Katz, Richard) Modified on 8/13/2015 (ms). (Entered: 08/12/2015) |
| 08/13/2015 | | SPECIAL ADMISSION FORM emailed to Attorney Michael Sacks (lg) (Entered: 08/13/2015) |
| 08/13/2015 | 24 | Waiver of Service forms (AO 398 and 399) along with Amended Complaint (Doc. 23) Order (Doc. 9) and Notice, Consent and Reference of a Civil Action to a Magistrate Judge Mailed to Federation of State Medical Boards Waiver of Service due by 9/17/2015. (Attachments: # 1 waiver, # 2 address)(rp) (Entered: 08/13/2015) |
| 08/13/2015 | 25 | PETITION FOR SPECIAL ADMISSION (PRO HAC VICE) by Michael E. Sacks on behalf of National Board of Medical Examiners Attorney Michael Sacks is seeking special admission. Filing fee $ 50, receipt number 0314-3514442.. (Sacks, Michael) (Entered: 08/13/2015) |
| 08/14/2015 | 26 | ORDER DIRECTING THE CLERK'S OFFICE TO SEND AO 398 AND 399 WAIVERS FORMS to defendants as to Doc. 23 Amended COmplaint. Signed by Magistrate Judge Joseph F. Saporito, Jr on 8/14/15. (ms) (Entered: 08/14/2015) |
| 08/14/2015 | 27 | Waiver of Service forms (AO 398 and 399) along with Amended Complaint (Doc. 23) Order (Doc. 26) and Notice, Consent and Reference of a Civil Action to a Magistrate Judge Mailed to National Board of Medical Examiners Waiver of Service due by 9/17/2015. (Attachments: # 1 waiver)(rp) (Entered: 08/14/2015) |
| 08/17/2015 | 28 | MOTION to Seal by Richard Katz.(ep) (Entered: 08/17/2015) |
| 08/17/2015 | 29 | BRIEF IN SUPPORT re 28 MOTION to Seal filed by Richard Katz.(ep) (Entered: 08/17/2015) |
| 08/19/2015 | | Status of Attys Michael E. Sacks and Neil J. Hamburg verified for 25 petition for pro hoc vice admission; (ep) (Entered: 08/19/2015) |
| 08/19/2015 | 30 | SPECIAL ADMISSIONS FORM APPROVED as to Michael E. Sacks. Signed by Magistrate Judge Joseph F. Saporito, Jr on 8/19/15. (ms) (Entered: 08/19/2015) |
| 08/27/2015 | 31 | NOTICE of Appearance by Neil J. Hamburg on behalf of Federation of State Medical Boards (Hamburg, Neil) (Entered: 08/27/2015) |
| 08/27/2015 | 32 | NOTICE of Appearance by Michael E. Sacks on behalf of Federation of State Medical Boards (Sacks, Michael) (Entered: 08/27/2015) |

| 08/28/2015 | 33 | *Affirmative Defenses and* ANSWER to 1 Complaint, 23 Amended Complaint, by Federation of State Medical Boards, National Board of Medical Examiners. (Attachments: # 1 Exhibit(s), # 2 Exhibit(s), # 3 Exhibit(s), # 4 Exhibit(s), # 5 Exhibit(s)) (Sacks, Michael) Modified on 8/31/2015 (ms). (Entered: 08/28/2015) |
|---|---|---|
| 09/01/2015 | 34 | SCHEDULING ORDER: Telephonic Case Management Conference set for 9/14/2015 10:30 AM before Magistrate Judge Joseph F. Saporito Jr. Conference to be initiated by the Court. Proposed schedulig order to be provided to the Court 3 business days prior to conference. See Order for complete details.Signed by Magistrate Judge Joseph F. Saporito, Jr on 9/1/15. (ms) (Entered: 09/01/2015) |
| 09/01/2015 | 35 | ORDER DEEMING WITHDRAWN 19 Sealed Motion for failure to file support brief. Signed by Magistrate Judge Joseph F. Saporito, Jr on 9/1/15 (ms) (Entered: 09/01/2015) |
| 09/02/2015 | 36 | DOCUMENT SEALED -re: dft's answer to amended complaint (Attachments: # 1 Exhibit(s), # 2 Exhibit(s)) (cl) (Entered: 09/02/2015) |
| 09/03/2015 | 37 | ORDER denying 28 Motion to Seal the entire record of this case without prejudice to the filing of a future motion to seal any particular document or documents. Signed by Magistrate Judge Joseph F. Saporito, Jr on 9/3/15 (ms) (Entered: 09/03/2015) |
| 09/03/2015 | 38 | ORDER : Doc. 36 exhibits and attachments shall be FILED UNDER SEAL. Signed by Magistrate Judge Joseph F. Saporito, Jr on 9/3/15. (ms) (Entered: 09/03/2015) |
| 09/08/2015 | 39 | RESPONSE by Richard Katz to 33 Answer to Complaint, . (Katz, Richard) (Entered: 09/08/2015) |
| 09/09/2015 | 40 | SCHEDULING ORDER: Telephonic Case Management Conference set for 9/14/15 is RESCHEDULED TO 9/16/2015 10:00 AM before Magistrate Judge Joseph F. Saporito Jr. Conference to be initiated by the Court.Signed by Magistrate Judge Joseph F. Saporito, Jr on 9/9/15. (ms) (Entered: 09/09/2015) |
| 09/11/2015 | 41 | CASE MANAGEMENT PLAN *(Joint)* by Federation of State Medical Boards, National Board of Medical Examiners. (Sacks, Michael) (Entered: 09/11/2015) |
| 09/12/2015 | 42 | CASE MANAGEMENT PLAN *Addendum* by Richard Katz. (Katz, Richard) (Entered: 09/12/2015) |
| 09/16/2015 | 43 | ORDER denying 2 Motion to Appoint Counsel without prejudice to the filing of a subsequent motion to appoint counsel after the plaintiff has undertaken a more diligent effort to obtain counsel on his own. Signed by Magistrate Judge Joseph F. Saporito, Jr on 9/16/15 (ms) (Entered: 09/16/2015) |
| 09/16/2015 | 45 | SCHEDULING ORDER: Amended Pleadings due by 10/15/2015. Discovery due by 2/15/2016. Plaintiffs retained expert reports due 1/15/16. Defendants retained experts due 2/15/16. Supplementations due 3/1/16. Joinder of Parties due by 10/15/2016. Motions due by 4/1/2016.Signed by Magistrate Judge Joseph F. Saporito, Jr on 9/16/15. (ms) (Entered: 09/16/2015) |
| 09/18/2015 | 47 | MOTION for Reconsideration re 37 Order on Doc. 28 Motion to Seal by Richard Katz. (ms) (Entered: 09/18/2015) |
| 09/18/2015 | 48 | CERTIFICATE OF SERVICE by Richard Katz re 39 Response (ms) (Entered: 09/18/2015) |
| 09/18/2015 | 50 | MOTION to File Document Under Seal 49 DOCUMENT(S) PENDING SEALING DECISION by Richard Katz.(ms) (Entered: 09/18/2015) |
| 09/21/2015 | 51 | Letter from Richard Katz dated 9/15/15 re: proof of service to Defendants for PLAINTIFF'S REPLY BRIEF IN SUPPORT OF RECONSIDERATION OF MOTION |

| | | |
|---|---|---|
| | | TO SEAL and plaintiff's medical records. (lh) (Entered: 09/21/2015) |
| 10/01/2015 | 52 | Second MOTION to Amend/Correct 1 Complaint, by Richard Katz. (Attachments: # 1 Exhibit(s) Doane LinkedIn Profile)(Katz, Richard) (Entered: 10/01/2015) |
| 10/09/2015 | 53 | Letter from Richard Katz dated 10/6/15 informing the court that (Doc. 52) Second Motion to Amend Complaint was sent to Hamberg & Golden, P.C. via certified mail (postmarked 10/6/15). (lh) (Entered: 10/09/2015) |
| 10/10/2015 | 54 | Supplement by Richard Katz. to 52 Second MOTION to Amend/Correct 1 Complaint, . (Katz, Richard) (Entered: 10/10/2015) |
| 10/12/2015 | 55 | Supplement by Richard Katz. to 52 Second MOTION to Amend/Correct 1 Complaint, . (Katz, Richard) (Entered: 10/12/2015) |
| 10/12/2015 | 56 | EXHIBIT by Richard Katz re 52 Second MOTION to Amend/Correct 1 Complaint, . (Katz, Richard) (Entered: 10/12/2015) |
| 10/16/2015 | 57 | Letter from Richard Katz dated 10/14/15 informing the court that (Doc. 54, 55 and 56) was sent to Michael Sacks, Hamberg & Golden, P.C. via certified mail (postmarked 10/14/15). (lh) (Entered: 10/16/2015) |
| 10/30/2015 | 58 | ORDER 1) Defendants are directed to file either a certificate of concurrence or a brief in opposition to plaintiff's motion for reconsideration (Doc. 47) and plaintiff's motion to file document under seal (Doc. 50) within 14 days from the date of this order. (2) Plaintiff is directed to file his proposed second amended complaint and supporting brief to his Doc. 52 second motion to amend/correct complaint within 21 days from the date of this order.Signed by Magistrate Judge Joseph F. Saporito, Jr on 10/30/15. (ms) (Entered: 10/30/2015) |
| 11/04/2015 | 59 | CERTIFICATE of Concurrence by Federation of State Medical Boards, National Board of Medical Examiners re 50 MOTION to File Document Under Seal 49 DOCUMENT(S) PENDING SEALING DECISION, 47 MOTION for Reconsideration re 37 Order on Motion to Seal . (Sacks, Michael) (Entered: 11/04/2015) |
| 11/17/2015 | 60 | MOTION to Seal by Richard Katz.(lh) (Entered: 11/17/2015) |
| 11/17/2015 | 62 | MOTION for Leave to File an Second Amended by Richard Katz.(lh) (Entered: 11/17/2015) |
| 11/17/2015 | 63 | PROPOSED DOCUMENT re: Second Amended Complaint (lh) (Entered: 11/17/2015) |
| 11/24/2015 | 64 | BRIEF IN OPPOSITION re 62 MOTION for Leave to File filed by Federation of State Medical Boards, National Board of Medical Examiners.(Sacks, Michael) (Entered: 11/24/2015) |
| 11/25/2015 | 65 | REPLY BRIEF re 62 MOTION for Leave to File *Second Amended Complaint* filed by Richard Katz.(Katz, Richard) (Entered: 11/25/2015) |
| 12/01/2015 | 66 | Second MOTION to Appoint Counsel by Richard Katz.(Katz, Richard) (Entered: 12/01/2015) |
| 12/01/2015 | 67 | MOTION for Hearing re 66 Second MOTION to Appoint Counsel by Richard Katz. (Katz, Richard) (Entered: 12/01/2015) |
| 12/22/2015 | 68 | INTERROGATORIES by Richard Katz.(Katz, Richard) (Entered: 12/22/2015) |
| 12/24/2015 | 69 | EXHIBIT by Richard Katz. (Katz, Richard) (Entered: 12/24/2015) |
| 01/07/2016 | 70 | DOCUMENT SEALED - Exhibit 9 to Doc. 63, referenced at p. 11 of Doc. 63, consisting of medical records of plaintiff Richard Katz, not previously attached to the Doc. 63 |

| | | proposed amended complaint. (ms) (Entered: 01/07/2016) |
|---|---|---|
| 01/08/2016 | 71 | MOTION for Bill of Costs by Richard Katz. (Attachments: # 1 Memo)(Katz, Richard) (Entered: 01/08/2016) |
| 01/12/2016 | 72 | First MOTION for Extension of Time to Modification in Scheduling Order by Richard Katz.(Katz, Richard) (Entered: 01/12/2016) |
| 01/13/2016 | 73 | ATTACHMENT(S) *Expert Witness Fees* by Richard Katz re 71 MOTION for Bill of Costs , filed by Richard Katz. Related document: 71 MOTION for Bill of Costs filed by Richard Katz.(Katz, Richard) (Entered: 01/13/2016) |
| 01/19/2016 | 74 | OBJECTIONS by Richard Katz. *To Defendants Proposed Subpoenas*. (Katz, Richard) (Entered: 01/19/2016) |
| 01/21/2016 | 75 | ATTACHMENT(S) *Local Rule LR 5.2* by Richard Katz re 74 Objections, filed by Richard Katz. Related document: 74 Objections filed by Richard Katz. (Attachments: # 1 Supplement)(Katz, Richard) (Entered: 01/21/2016) |
| 01/26/2016 | 77 | Addendum by Richard Katz. 74 Objections . (Katz, Richard) (Entered: 01/26/2016) |
| 01/27/2016 | 78 | First MOTION for Discovery *SUBPOENA DUCES TECUM* by Richard Katz. (Attachments: # 1 Subpoena, # 2 Subpoena, # 3 Subpoena, # 4 Subpoena, # 5 Subpoena) (Katz, Richard) (Entered: 01/27/2016) |
| 01/28/2016 | 79 | MOTION for Discovery *to Overrule Plaintiff's Objections to Defendants' Proposed Subpoenas, to Require Plaintiff to Sign Authorizations, and for a Protective Order regarding Plaintiff's Requst for Personnel Files of Defendant NBME's Employees* by Federation of State Medical Boards, National Board of Medical Examiners. (Attachments: # 1 Proposed Order, # 2 Memo, # 3 Certificate of Nonconcurrence, # 4 Certificate re LR 26.3, # 5 Exhibit(s), # 6 Exhibit(s), # 7 Exhibit(s), # 8 Exhibit(s), # 9 Exhibit(s), # 10 Exhibit(s), # 11 Exhibit(s))(Sacks, Michael) (Entered: 01/28/2016) |
| 01/28/2016 | 80 | First MOTION for Protective Order by Richard Katz.(Katz, Richard) (Entered: 01/28/2016) |
| 01/29/2016 | 81 | BRIEF IN OPPOSITION re 80 First MOTION for Protective Order filed by Federation of State Medical Boards, National Board of Medical Examiners. (Attachments: # 1 Exhibit(s))(Sacks, Michael) (Entered: 01/29/2016) |
| 01/29/2016 | 82 | ORDER granting 60 Motion to Seal. Clerk of Court is directed to file plaintiff's Doc. 61 submission under seal. Signed by Magistrate Judge Joseph F. Saporito, Jr on 1/29/16 (ms) (Entered: 01/29/2016) |
| 01/29/2016 | 83 | ORDER granting 50 Motion to Seal Document 49 DOCUMENT(S) PENDING SEALING DECISION Signed by Magistrate Judge Joseph F. Saporito, Jr on 1/29/16 (ms) (Entered: 01/29/2016) |
| 01/29/2016 | 84 | ORDER denying 47 Motion for Reconsideration Signed by Magistrate Judge Joseph F. Saporito, Jr on 1/29/16 (ms) (Entered: 01/29/2016) |
| 01/29/2016 | 85 | ORDER granting 72 Motion to Extend Case Management Deadlines. Discovery due by 3/15/2016. Plaintiff expert reports due 2/15/16; defendant expert reports due 3/15/16; supplementations due 4/1/16. Motions due by 5/1/2016. Signed by Magistrate Judge Joseph F. Saporito, Jr on 1/29/16 (ms) Modified on 2/1/2016 (ms). (Entered: 01/29/2016) |
| 01/30/2016 | 86 | BRIEF IN OPPOSITION re 79 MOTION for Discovery *to Overrule Plaintiff's Objections to Defendants' Proposed Subpoenas, to Require Plaintiff to Sign Authorizations, and for a Protective Order regarding Plaintiff's Requst for Personnel Files of Defendant NBME□ filed by Richard Katz.(Katz, Richard) (Entered: 01/30/2016)* |

| | | |
|---|---|---|
| 02/03/2016 | 87 | Supplement by Richard Katz. to 86 Brief in Opposition, . (Katz, Richard) (Entered: 02/03/2016) |
| 03/06/2016 | 90 | OBJECTIONS by Richard Katz. *Defendants' Second Set of Subpoenas*. (Katz, Richard) (Entered: 03/06/2016) |
| 03/15/2016 | 91 | First MOTION to Compel Discovery *Supplemental Interrogatories Number One* by Richard Katz.(Katz, Richard) (Entered: 03/15/2016) |
| 03/17/2016 | 92 | Supplement by Richard Katz. to 91 First MOTION to Compel Discovery *Supplemental Interrogatories Number One FOIA Justification/Application*. (Katz, Richard) (Entered: 03/17/2016) |
| 03/21/2016 | 93 | Supplement by Richard Katz. to 92 Supplement, 91 First MOTION to Compel Discovery *Supplemental Interrogatories Number One Kempen_Amir_Katz*. (Katz, Richard) (Entered: 03/21/2016) |
| 03/22/2016 | 94 | Second MOTION for Extension of Time to Complete Discovery *Expert Reports* by Richard Katz.(Katz, Richard) (Entered: 03/22/2016) |
| 03/23/2016 | 95 | ORDER granting 94 Motion for Extension of expert report supplementations deadline. Supplementations to expert reports due 30 days after Court disposes of plaintiff's Doc. 71 motion for bill of costs. Signed by Magistrate Judge Joseph F. Saporito, Jr on 3/23/16 (ms) (Entered: 03/23/2016) |
| 03/28/2016 | 96 | BRIEF IN OPPOSITION re 91 First MOTION to Compel Discovery *Supplemental Interrogatories Number One* filed by Federation of State Medical Boards, National Board of Medical Examiners. (Attachments: # 1 Exhibit(s), # 2 Exhibit(s))(Sacks, Michael) (Entered: 03/28/2016) |
| 03/30/2016 | 97 | REPLY BRIEF re 91 First MOTION to Compel Discovery *Supplemental Interrogatories Number One PLAINTIFF'S RESPONSE to DEFENDANTS* filed by Richard Katz.(Katz, Richard) (Entered: 03/30/2016) |
| 04/11/2016 | 98 | First MOTION to Compel Discovery *Request for Admissions* by Richard Katz. (Attachments: # 1 Exhibit(s) Plaintiff RFA, # 2 Exhibit(s) Defendants Response RFA) (Katz, Richard) (Entered: 04/11/2016) |
| 04/20/2016 | 99 | Second MOTION to Compel Discovery *Supplemental Interrogatories TWO* by Richard Katz. (Attachments: # 1 Exhibit(s), # 2 Exhibit(s))(Katz, Richard) (Entered: 04/20/2016) |
| 04/25/2016 | 100 | BRIEF IN OPPOSITION re 98 First MOTION to Compel Discovery *Request for Admissions* filed by Federation of State Medical Boards, National Board of Medical Examiners.(Sacks, Michael) (Entered: 04/25/2016) |
| 04/27/2016 | 101 | MOTION to Exceed Page Limitation by Federation of State Medical Boards, National Board of Medical Examiners.(Sacks, Michael) (Entered: 04/27/2016) |
| 04/27/2016 | 102 | BRIEF IN OPPOSITION re 101 MOTION to Exceed Page Limitation filed by Richard Katz.(Katz, Richard) (Entered: 04/27/2016) |
| 04/28/2016 | 103 | ORDER granting 101 Motion for Leave to File Excess Pages Signed by Magistrate Judge Joseph F. Saporito, Jr on 4/28/16 (ms) (Entered: 04/28/2016) |
| 04/29/2016 | 104 | ORDER finding as moot 52 Motion to Amend/Correct Signed by Magistrate Judge Joseph F. Saporito, Jr on 4/29/16 (ms) (Entered: 04/29/2016) |
| 05/02/2016 | 105 | MOTION for Summary Judgment by Federation of State Medical Boards, National Board of Medical Examiners. (Attachments: # 1 Exhibit(s), # 2 Exhibit(s), # 3 Exhibit(s), # 4 Exhibit(s), # 5 Exhibit(s), # 6 Exhibit(s), # 7 Exhibit(s), # 8 Exhibit(s), # 9 Exhibit(s), |

| | | |
|---|---|---|
| | | # 10 Exhibit(s), # 11 Exhibit(s), # 12 Exhibit(s), # 13 Exhibit(s), # 14 Exhibit(s), # 15 Exhibit(s), # 16 Exhibit(s), # 17 Exhibit(s), # 18 Exhibit(s), # 19 Exhibit(s), # 20 Exhibit(s), # 21 Exhibit(s), # 22 Exhibit(s), # 23 Exhibit(s))(Sacks, Michael) (Entered: 05/02/2016) |
| 05/03/2016 | 106 | ORDER granting 62 Motion for Leave to File second amended complaint. Clerk shall file the proposed document (Doc. 63) as the second amended complaint in this action; Defendants shall respond to the second amended complaint as provided by Fed.R.Civ. P. 15(a)(3). Signed by Magistrate Judge Joseph F. Saporito, Jr on 5/3/16 (ms) (Entered: 05/03/2016) |
| 05/03/2016 | 107 | SECOND AMENDED COMPLAINT against Federation of State Medical Boards, National Board of Medical Examiners, filed by Richard Katz.(ms) (Entered: 05/03/2016) |
| 05/03/2016 | 108 | MOTION to File Document Under Seal by Federation of State Medical Boards, National Board of Medical Examiners.(cl) (Entered: 05/03/2016) |
| 05/04/2016 | 110 | ORDER denying 71 Motion for Bill of Costs Signed by Magistrate Judge Joseph F. Saporito, Jr on 5/4/16 (ms) (Entered: 05/04/2016) |
| 05/04/2016 | 111 | ORDER finding as moot 78 Motion for Discovery Signed by Magistrate Judge Joseph F. Saporito, Jr on 5/4/16 (ms) (Entered: 05/04/2016) |
| 05/06/2016 | 112 | First MOTION to Exceed Page Limitation *Opposition to Summary Judgement* by Richard Katz.(Katz, Richard) (Entered: 05/06/2016) |
| 05/06/2016 | 113 | BRIEF IN OPPOSITION re 99 Second MOTION to Compel Discovery *Supplemental Interrogatories TWO* filed by Federation of State Medical Boards, National Board of Medical Examiners.(Sacks, Michael) (Entered: 05/06/2016) |
| 05/06/2016 | 114 | ORDER granting 108 Motion to Seal Document 109 DOCUMENT(S) PENDING SEALING DECISION Signed by Magistrate Judge Joseph F. Saporito, Jr on 5/6/16 (ms) (Entered: 05/06/2016) |
| 05/09/2016 | 115 | ORDER granting 112 Motion for Leave to File Excess Pages. Plaintiff may file a brief in opposition to defendant's summary judgment motion in excess of 15 pages and 5000 words, not to exceed 30 pages.Signed by Magistrate Judge Joseph F. Saporito, Jr on 5/9/16 (ms) (Entered: 05/09/2016) |
| 05/10/2016 | 116 | MEMORANDUM (Order to follow as separate docket entry)re: Docs. 74, 77, 80, 90, 79Signed by Magistrate Judge Joseph F. Saporito, Jr on 5/10/16. (ms) (Entered: 05/10/2016) |
| 05/10/2016 | 117 | ORDER (memorandum filed previously as separate docket entry). In accordance with the accompanying Memorandum, IT IS HEREBY ORDERED THAT:1.The plaintiffs motions to compel and for a protective order (Doc. 74; Doc. 77; Doc. 80; Doc. 90) are DENIED;2.The defendants motion to compel and for a protective order (Doc. 79) is GRANTED in part and DENIED in part, as follows:a.The plaintiffs objections to the defendants proposed subpoenas are OVERRULED, subject to the following protective measures:i.The defendants shall mark any records received from third-parties in response to the subpoenas at issue in these motions as CONFIDENTIAL;ii.Documents marked CONFIDENTIAL in accordance with the preceding paragraph shall be used in this litigation only; andiii.The Court shall retain jurisdiction to impose sanctions against the parties or their counsel in the event of noncompliance with this Order;b.The plaintiff shall promptly sign the requested authorization forms and return them to defense counsel within seven (7) days of the date of this Order; andc.The defendants objections with respect to Katzs request for the production of confidential personal records of five current or former NBME employees are SUSTAINED;3.Briefing with respect to the defendants |

| | | |
|---|---|---|
| | | motion for summary judgment (Doc. 105) is STAYED for a period of sixty (60) days to permit service of the subpoenas duces tecum and response thereto by the third-party recipients, at the conclusion of which time the defendants shall file an amended brief in support of their motion, an amended statement of facts, and any supplemental exhibits in support of the motion, and the plaintiff shall file his response to the motion and supporting materials within twenty-one (21) days after service of the amended brief in support; and4.The parties shall bear their own costs incurred in connection with these motions, as an award of expenses to the defendants would be unjust in light of the plaintiffs indigence. See Fed. R. Civ. P. 37(a)(5); see also Fed. R. Civ. P. 26(c)(3).Signed by Magistrate Judge Joseph F. Saporito, Jr on 510/16. (ms) (Entered: 05/10/2016) |
| 05/12/2016 | 118 | ORDER denying 66 Motion to Appoint Counsel ; finding as moot 67 Motion for Hearing Signed by Magistrate Judge Joseph F. Saporito, Jr on 5/12/16 (ms) (Entered: 05/12/2016) |
| 05/12/2016 | 119 | ORDER denying 91 Motion to Compel Discovery Signed by Magistrate Judge Joseph F. Saporito, Jr on 5/12/16 (ms) (Entered: 05/12/2016) |
| 05/12/2016 | 120 | ORDER denying 99 Motion to Compel Discovery Signed by Magistrate Judge Joseph F. Saporito, Jr on 5/12/16 (ms) (Entered: 05/12/2016) |
| 05/12/2016 | 121 | SEALED -Motion to File Document under Seal (cl) (Additional attachment(s) added on 5/13/2016: # 1 Memo Memorandum in Support, # 2 Proposed Order) (ms). (Entered: 05/12/2016) |
| 05/12/2016 | 123 | ORDER DENYING 98 First MOTION to Compel Discovery *Request for Admissions* filed by Richard Katz Signed by Magistrate Judge Joseph F. Saporito, Jr on 5/12/16. (ms) (Entered: 05/12/2016) |
| 05/13/2016 | 124 | ORDER re 121 Document Sealed, 122 DOCUMENT(S) PENDING SEALING DECISION. Granting motion to file a document under seal. Clerk shall accept for filing under seal Defendants' answer and affirmative defenses to plaintiff's second amended complaint. Signed by Magistrate Judge Joseph F. Saporito, Jr on 5/13/16. (ms) (Entered: 05/13/2016) |
| 07/11/2016 | | DOCKET ANNOTATION: Defense counsel is directed to re-file its Doc. 125 Amended Motion for Summary Judgment, Amended Statement of Undisputed Facts, and Amended Memorandum in Support as separate filings. (ms) (Entered: 07/11/2016) |
| 07/11/2016 | 126 | Amended MOTION for Summary Judgment by Federation of State Medical Boards, National Board of Medical Examiners.(Sacks, Michael) (Entered: 07/11/2016) |
| 07/11/2016 | 127 | STATEMENT OF FACTS re 126 Amended MOTION for Summary Judgment filed by Federation of State Medical Boards, National Board of Medical Examiners.(Sacks, Michael) (Entered: 07/11/2016) |
| 07/11/2016 | 128 | MEMORANDUM OF LAW by Federation of State Medical Boards, National Board of Medical Examiners re 127 Statement of Facts, 126 Amended MOTION for Summary Judgment . (Attachments: # 1 Exhibit(s), # 2 Exhibit(s), # 3 Exhibit(s), # 4 Exhibit(s)) (Sacks, Michael) (Entered: 07/11/2016) |
| 07/15/2016 | 129 | BRIEF IN OPPOSITION re 126 Amended MOTION for Summary Judgment filed by Richard Katz.(Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 130 | STATEMENT OF FACTS filed by Richard Katz.(Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 131 | MEMORANDUM OF LAW by Richard Katz . (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 132 | EXHIBIT *EXHIBIT 1* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |

| 07/15/2016 | 133 | EXHIBIT *EXHIBIT 2* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 134 | EXHIBIT *EXHIBIT 3* by Richard Katz re 130 Statement of Facts, 129 Brief in Opposition to Motion for Summary Judgment. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 135 | EXHIBIT *4* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 136 | EXHIBIT *5* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 138 | EXHIBIT *7* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 142 | EXHIBIT *11* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 143 | EXHIBIT *12* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 144 | EXHIBIT *13* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 145 | EXHIBIT *14* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 146 | EXHIBIT *15* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 147 | EXHIBIT *16* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 148 | EXHIBIT *17* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 149 | EXHIBIT *18* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 150 | EXHIBIT *19* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 151 | EXHIBIT *20* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 157 | EXHIBIT *26* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 161 | EXHIBIT *30* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 163 | EXHIBIT *32* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 164 | EXHIBIT *34* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 165 | EXHIBIT *33* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 166 | EXHIBIT *34* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |

| | | |
|---|---|---|
| 07/15/2016 | 167 | EXHIBIT *35* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 168 | EXHIBIT *36* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 169 | EXHIBIT *37* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 171 | EXHIBIT *39* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 172 | EXHIBIT *40* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 173 | EXHIBIT *41* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 174 | EXHIBIT *42* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 175 | EXHIBIT *43* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 176 | EXHIBIT *44* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 177 | EXHIBIT *45* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 178 | EXHIBIT *46* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 179 | EXHIBIT *47* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 180 | EXHIBIT *48* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 181 | EXHIBIT *49* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Attachments: # 1 Exhibit(s), # 2 Exhibit(s))(Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 182 | EXHIBIT *50* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 183 | EXHIBIT *51* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 184 | EXHIBIT *52* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 187 | EXHIBIT *55* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 188 | EXHIBIT *56* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 189 | EXHIBIT *57* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 190 | EXHIBIT *58* by Richard Katz re 130 Statement of Facts, 131 Memorandum of Law. |

| | | (Katz, Richard) (Entered: 07/15/2016) |
|---|---|---|
| 07/15/2016 | 191 | AFFIDAVIT re 130 Statement of Facts, 129 Brief in Opposition to Motion for Summary Judgment, 131 Memorandum of Law filed by Richard Katz. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 192 | EXHIBIT *FOIA* by Richard Katz re 191 Affidavit. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 193 | EXHIBIT *FOIA - REQUEST* by Richard Katz re 192 Exhibit, 191 Affidavit. (Katz, Richard) (Entered: 07/15/2016) |
| 07/15/2016 | 194 | EXHIBIT *FOIA - TIME EXTENSION* by Richard Katz re 192 Exhibit, 193 Exhibit, 191 Affidavit. (Katz, Richard) (Entered: 07/15/2016) |
| 07/18/2016 | 195 | DOCUMENT SEALED - Exhibit 59 re: 130 Staement of Facts, 131 memorandum of Law (ms) (Entered: 07/18/2016) |
| 07/28/2016 | 196 | REPLY BRIEF re 126 Amended MOTION for Summary Judgment filed by Federation of State Medical Boards, National Board of Medical Examiners.(Hamburg, Neil) (Entered: 07/28/2016) |
| 07/28/2016 | 197 | ANSWER TO STATEMENT OF FACTS re 130 Statement of Facts filed by Federation of State Medical Boards, National Board of Medical Examiners.(Hamburg, Neil) (Entered: 07/28/2016) |
| 08/02/2016 | 198 | REPLY BRIEF re 126 Amended MOTION for Summary Judgment filed by Richard Katz. (Attachments: # 1 Exhibit(s) 1)(Katz, Richard) (Entered: 08/02/2016) |
| 11/30/2016 | 199 | REPORT AND RECOMMENDATIONS re 105 MOTION for Summary Judgment filed by National Board of Medical Examiners, Federation of State Medical Boards, 126 Amended MOTION for Summary Judgment filed by National Board of Medical Examiners, Federation of State Medical Boards.For the foregoing reasons, it is recommended that:1.The plaintiffs obstruction of justice claim be DISMISSED sua sponte as legally frivolous, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i);2.The plaintiffs breach of contract claim be DISMISSED sua sponte for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii);3.The defendants motion for summary judgment (Doc. 105; Doc. 126) be GRANTED with respect to all of the remaining claims;4.The Clerk be directed to enter JUDGMENT in favor of the defendants and against the plaintiff; and5.The Clerk be directed to CLOSE this case. Objections to R&R due by 12/19/2016Signed by Magistrate Judge Joseph F. Saporito, Jr on 11/30/16. (ms)(Original file to Judge Mariani from Chambers) (Entered: 11/30/2016) |
| 12/19/2016 | 200 | (PLEASE DISREGARD - APPEAL OF MAGISTRATE JUDGE DECISION TO DISTRICT COURT NOT APPROPRIATE AT THIS TIME; TO BE TREATED AS OBJECTIONS TO REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE) APPEAL OF MAGISTRATE JUDGE DECISION to District Court by Richard Katz re 199 REPORT AND RECOMMENDATIONS re 105 MOTION for Summary Judgment filed by National Board of Medical Examiners, Federation of State Medical Boards, 126 Amended MOTION for Summary Judgment filed by National Board of Medical Ex (Attachments: # 1 Exhibit(s) A, # 2 Exhibit(s) B, # 3 Exhibit(s) C)(Katz, Richard) Modified on 12/21/2016 (ms). (Entered: 12/19/2016) |
| 12/19/2016 | 201 | OBJECTION to 199 Report and Recommendations. (Attachments: # 1 Exhibit(s), # 2 Exhibit(s), # 3 Exhibit(s))(ms) (Entered: 12/21/2016) |
| 12/30/2016 | 202 | RESPONSE by Federation of State Medical Boards, National Board of Medical Examiners to 201 Objection to Report and Recommendations . (Sacks, Michael) (Entered: 12/30/2016) |

| 12/31/2016 | 203 | SUR REPLY to REPLY to Response to Motion re 199 REPORT AND RECOMMENDATIONS re 105 MOTION for Summary Judgment filed by National Board of Medical Examiners, Federation of State Medical Boards, 126 Amended MOTION for Summary Judgment filed by National Board of Medical Ex filed by Richard Katz.(Katz, Richard) (Entered: 12/31/2016) |
|---|---|---|
| 01/04/2017 | 204 | SUR REPLY to REPLY to Response to Motion re 199 REPORT AND RECOMMENDATIONS re 105 MOTION for Summary Judgment filed by National Board of Medical Examiners, Federation of State Medical Boards, 126 Amended MOTION for Summary Judgment filed by National Board of Medical Ex filed by Richard Katz. (Attachments: # 1 Exhibit(s) A, # 2 Exhibit(s) B, # 3 Exhibit(s) C, # 4 Exhibit(s) D, # 5 Exhibit(s) E)(Katz, Richard) (Entered: 01/04/2017) |
| 02/07/2017 | 205 | ORDER ADOPTING REPORT AND RECOMMENDATIONS (Doc. 199). Defendants' Motion for Summary Judgment, (Doc. 105), in light of the fact that it was filed a day before Plaintiff filed his Second Amended Complaint, (Doc. 107), is DISMISSED AS MOOT. defendants' Amended Motion for Summary Judgment, (Doc. 126) is GRANTED with respect to all of Plaintiff's remaining claims. Judgment is hereby entered IN FAVOR OF Defendants and AGAINST Plaintiff on these claims. adopting 199 Report and Recommendations. (PLEASE SEE ORDER FOR COMPLETE DETAILS) Signed by Honorable Robert D. Mariani on 2/7/17. (lh) (Entered: 02/07/2017) |
| 02/09/2017 | 206 | NOTICE OF APPEAL in Non-Prisoner Pro Se Case as to 205 Order Adopting Report and Recommendations, Order Terminating Case, Order on Motion for Summary Judgment,, Order on Report and Recommendations,,,,,,,,,, by Richard Katz. Motion for IFP Pending. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. (Katz, Richard) (Entered: 02/09/2017) |
| 02/09/2017 | 207 | First MOTION for Leave to Appeal in forma pauperis by Richard Katz.(Katz, Richard) (Entered: 02/09/2017) |
| 02/13/2017 | 208 | USCA Case Number 17-1329 for 206 Notice of Appeal, filed by Richard Katz. USCA Case Manager Kirsi (DOCUMENT IS RESTRICTED AND CAN ONLY BE VIEWED BY COURT STAFF). (sb) (Entered: 02/13/2017) |
| 02/28/2017 | 209 | First MOTION to Seal , MOTION to Seal Case by Richard Katz. (Attachments: # 1 Exhibit(s) Leagle.com, # 2 Exhibit(s) Justia.com)(Katz, Richard) (Entered: 02/28/2017) |
| 02/28/2017 | | Supplemental Record on Appeal transmitted to US Court of Appeals re 207 First MOTION for Leave to Appeal in forma pauperis . Documents and Docket Sheet available through ECF. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. (bg) (Entered: 02/28/2017) |
| 03/03/2017 | 210 | RESPONSE by Federation of State Medical Boards, National Board of Medical Examiners to 209 First MOTION to Seal MOTION to Seal Case . (Sacks, Michael) (Entered: 03/03/2017) |
| 04/03/2017 | 211 | ORDER upon consideration of Plaintiffs Motion to Seal, (Doc. 209), IT IS HEREBY ORDERED THAT the Motion is DENIED.Signed by Honorable Robert D. Mariani on 4/3/17 (jfg) (Entered: 04/03/2017) |

**PACER Service Center**

**Transaction Receipt**

| 05/24/2017 17:12:30 | | | |
|---|---|---|---|
| **PACER Login:** | 266stanton:4613142:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:15-cv-01187-RDM |
| **Billable Pages:** | 12 | **Cost:** | 1.20 |

# THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD KATZ,                          :
                                       :
      **Plaintiff,**                 :
                                       :
v.                                     :      **3:15-CV-1187**
                                       :      **(JUDGE MARIANI)**
NATIONAL BOARD OF MEDICAL              :
EXAMINERS, et al.,                     :
                                       :
      **Defendants.**                :

FILED
SCRANTON

FEB 0 7 2017

PER _____
DEPUTY CLERK

## ORDER

AND NOW, THIS 7th DAY OF FEBRUARY, 2017, upon *de novo* review of

Magistrate Judge Saporito's Report & Recommendation, (Doc. 199), **IT IS HEREBY**

**ORDERED THAT:**

1. The Report & Recommendation ("R&R"), (Doc. 199), is **ADOPTED** for the reasons

   discussed therein, except as modified below.

2. Plaintiff's Objections, (Doc. 201), are **OVERRULED**. Plaintiff's relevant objections

   concern whether the continuing violations doctrine is applicable and whether there

   were any grounds for tolling the statute of limitations. The R&R adequately

   addresses why the continuing violations doctrine does not apply. (Doc. 199 at 18-

   19). With that in mind, the last affirmative act that could be the basis for Plaintiff's

   claims[1] is the passage of the six-attempt limit rule, which accrued, at the latest,

---

[1] Plaintiff's claim of unfair and deceptive practices under the Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 *et seq.*, which has a six year statute of limitations, seems to be entirely based on the "deceptive conduct" of Defendants use of the words "experts" to describe a non-licensed psychologist who reviewed Plaintiff request for testing accommodations in 2006. This claim would therefore be time-bared in 2012.

when it took effect for Plaintiff on January 1, 2013. The Defendants' denial of Plaintiff's request for a waiver is not an independent act of discrimination, but merely Plaintiff's attempt to remedy the act of alleged discrimination that had already occurred. See Delaware State College v. Ricks, 449 U.S. 250, 260-61, 101 S. Ct. 498, 66 L. Ed. 2d 431 (1980). Therefore, the denial of the waiver request is not the date that the claims accrued as Plaintiff suggests.

As for tolling, Plaintiff argues two points: (1) Plaintiff's mental status should allow for tolling because he was incapable of rational thought or deliberate decision making due to his bipolar disorder until April of 2014; (2) Defendants' statement that Plaintiff's request for accommodations was reviewed by "experts" was deceptive and prohibited him from discovering his claims. (Doc. 201 at 11, 14-18). Both arguments are without merit. First, while the Court does not doubt the seriousness of Plaintiff's bipolar disorder, Plaintiff's mental illness does not rise to the level of extraordinary as required to toll the statute of limitations on the basis of mental illness. See Kach v. Hose, 589 F.3d 626, 643-45 (3d Cir. 2009). During the time of Plaintiff's disability, Plaintiff was able to finish medical school, apply for the required examinations for his medical license on multiple occasions, and apply for other jobs. Second, even assuming the use of the word "experts" by Defendants was deceptive and wrongful, Plaintiff was aware that he was denied the accommodations he believed he was entitled to under the law.

2

3. Defendants' Motion for Summary Judgment, (Doc. 105), in light of the fact that it was filed a day before Plaintiff filed his Second Amended Complaint, (Doc. 107), is **DISMISSED AS MOOT.**

4. Plaintiff's Obstruction of Justice claim, (Doc. 107 at ¶¶ 25-36), is **DISMISSED WITH PREJUDICE** as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

5. Plaintiff's Breach of Contract claim, (Doc. 107 at ¶ 24), is **DISMISSED WITH PREJUDICE** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).[2]

6. Defendants' Amended Motion for Summary Judgment, (Doc. 126), is **GRANTED** with respect to all of Plaintiff's remaining claims.[3] Judgment is hereby entered **IN FAVOR OF** Defendants and **AGAINST** Plaintiff on these claims.

7. The Clerk of the Court is directed to **CLOSE** this case.

Robert D. Mariani
United States District Judge

---

[2] Plaintiff argues that given his status as a *pro se* litigant, he should be allowed to amend this claim. (Doc. 201 at 10). The Court, however, finds that because there are no facts to suggest the presence of a contract between Plaintiff and Defendants, any such attempt to amend this claim would be futile. Therefore, the Court does not grant leave to amend. *See Cowell v. Palmer Twp.*, 263 F.3d 286, 296 (3d Cir. 2001) ("[L]eave to amend need not be granted when amending the complaint would clearly be futile").

[3] The remaining claims are (1) discrimination in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12189, (Doc. 107 at ¶¶ 16-23); (2) unfair and deceptive practices under the Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 *et seq.*, (Doc. 107 at ¶¶ 37-41); (3) negligent or intentional infliction of emotional distress, (Doc. 107 at ¶¶ 42-44); (4) tortious interference with a prospective employment relationship, (Doc. 107 at ¶¶ 45-53); (5) fraudulent misrepresentation, (Doc. 107 at ¶ 54); and (6) discrimination under § 504 of the Rehabilitation Act, 29 U.S.C. § 794, (Doc. 107 at ¶¶ 63-67).