# THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT COURT

_____

## CA. NO. 17-1329

_____

### RICHARD KATZ

*Plaintiff/Appellant*

v.

### THE NATIONAL BOARD OF MEDICAL EXAMINERS

### and

### THE FEDERATION OF STATE MEDICAL BOARDS

*Defendants/Appellees*

---

## BRIEF FOR APPELLEES

---

Appeal from the February 7, 2017, Order of the Honorable Robert D. Mariani of the United States District Court for the Middle District of Pennsylvania, Case No. 3-15-cv-01187, adopting in part and modifying in part the Report and Recommendation of United States Magistrate Judge Joseph F. Saporito, Jr., dismissing two of Appellant's claims as frivolous, and granting summary judgment in favor of Appellees on all remaining claims.

---

NEIL J. HAMBURG
MICHAEL E. SACKS
ID Nos. 32175 and 39974
HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA  19103-1443
(215) 255-8590
Counsel for Appellees
National Board of Medical Examiners and
The Federation of State Medical Boards

i

## CORPORATE DISCLOSURE STATEMENT

In accordance with Fed. R. App. P. 26.1, Appellees state as follows:

The National Board of Medical Examiners (NBME) is a non-profit corporation registered in the District of Columbia and headquartered in Philadelphia, Pennsylvania.  The NBME has no parent corporation and no stock.

The Federation of State Medical Boards (FSMB) is a non-profit corporation registered in Nebraska and headquartered in Euless, Texas, with an additional office in Washington, D.C.  The FSMB has no parent corporation and no stock.

No publicly owned corporation has a financial interest in the outcome of this appeal.

# TABLE OF CONTENTS

**PAGE**

CORPORATE DISCLOSURE STATEMENT ............................................ i

TABLE OF CONTENTS ............................................................. ii

TABLE OF AUTHORITIES ........................................................ iv

I.   INTRODUCTION ............................................................. 1

II.  STATEMENT OF THE ISSUES ................................................ 4

III. STATEMENT OF RELATED CASES ........................................... 5

IV.  COUNTERSTATEMENT OF THE CASE ...................................... 5

     A.   Facts About the Defendants, the NBME and FSMB. .............. 5

     B.   Facts Concerning Mr. Katz's Background, His 2005-
          2006 Request for Accommodations, and His USMLE
          Testing.................................................................... 8

     C.   Facts Concerning the USMLE's Adoption of the Six-
          attempt Limit........................................................... 15

     D.   Procedural History .................................................. 19

V.   SCOPE AND STANDARD OF REVIEW ....................................... 21

VI.  SUMMARY OF THE ARGUMENT............................................. 22

VII. ARGUMENT ................................................................ 24

     The Statute of Limitations Bars Each of Mr. Katz's Claims
     Under the Americans with Disabilities Act and the
     Rehabilitation Act ........................................................ 24

A.   The Statute of Limitations on ADA and Rehabilitation
     Act Claims is Two Years, Barring Any Claim
     Regarding the 2006 Denial of Mr. Katz's Request for
     Accommodations ..................................................................   25

     1.   Under the Standards of Kach v. Hose, Mr. Katz's
          Mental Disability Did Not Toll the Statute of
          Limitations on His Claim Regarding the
          NBME's 2006 Denial of His Request for
          Accommodations ..........................................................   27

     2.   Mr. Katz's Discussion of Kach v. Hose is Both
          Misleading and Misinformed.........................................   34

     3.   The District Court Properly Rejected Mr. Katz's
          Claim of Equitable Tolling Regarding the
          NBME's 2006 Denial of His Request for
          Accommodations Based on the NBME's
          Supposed Fraudulent Concealment ...............................   35

B.   The District Court Correctly Found that the Statute of
     Limitations Barred Mr. Katz's Claim of Disability
     Discrimination Based Upon the Adoption of the Six-
     Attempt Limit, and Delaware State College v. Ricks
     Provides No Relief...................................................................   39

C.   Even If Mr. Katz's Claim Regarding the Six-Attempt
     Limit Were Not Time-Barred, He Has Adduced No
     Evidence Whatsoever that Modifying the Six-Attempt
     Limit Would Be a Reasonable Accommodation .....................   45

D.   The Court Should Affirm the Lower Court's Rejection
     of Mr. Katz's Argument that His Lawsuit Was Timely
     Under the Continuing Violation Doctrine...............................   50

E.   The Court Should Reject Mr. Katz's Tortured Attempt
     to Invoke the Discovery Rule .................................................   51

VIII.  CONCLUSION ..................................................................................   53

iv

# TABLE OF AUTHORITIES

**PAGE**

## CASES

Arots v. Salesianum School, Inc., 2003 WL 21398017 (D.Del. 2003) ....................................................................................    33

Boswell v. Colvin, 2016 WL 640575 (W.D.Pa. 2016).............................    27

Chardon v. Fernandez, 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981) ..................................................................................    26, 44

Dahlman v. AARP, 791 F.Supp. 2d 68, 77-78 (D.D.C. 2011).................    33

Delaware State College v. Ricks, 449 U.S. 250 (1980) ........................... 3-4, 23, 39, 41-42

Disabled in Action of Pa. v. S.E. Pa. Trans. Auth., 539 F.3d 199 (3d Cir. 2008) ...........................................................................    26

Doe v. Samuel Merritt University, 921 F.Supp. 2d. 958 (N.D. Cal. 2013)....................................................................................    46

Eubanks v. Clarke, 434 F.Supp. 1022 (E.D.Pa.1977) .............................    30-31

Kach v. Hose, 589 F.3d 626 (3d Cir. 2009) ............................................ 3, 21-22, 27-35

Lake v. Arnold, 232 F.3d 360 (3d Cir. 2000)...........................................    22, 29-32

Lee v. Overton, 2013 WL 159528 (E.D.Pa. 2013)...................................    31

Lever v. Northwestern Univ., 979 F.2d 552 (7th Cir. 1992)....................    26

Mahmood v. Nat'l Board of Medical Examiners, 2012 WL 2368462 (E.D. Pa. 2012) .........................................................................    46

v

Miller v. Philadelphia Geriatric Center, 463 F.3d 266 (3d Cir. 2006)...................................................................................... 34

Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co. of Md., 989 F.2d 635 (3d Cir. 1993) ............................................................. 22

Oshiver v. Levin, Fishbein, Sedran and Berman, 38 F.3d 1380 (3d Cir. 1994)............................................................................... 37, 51-52

Rawdin v. American Bd. of Pediatrics, 985 F.Supp.2d 636 (E.D. Pa. 2013)............................................................................. 45, 47-48

Ruehl v. Viacom Inc., 500 F.3d 375 (3d Cir. 2007)................................. 37-38

Soignier v. Am. Bd. of Plastic Surgery, 92 F.3d 547 (7th Cir. 1996) ....... 26-27, 41-43

Sullivan v. Doe, 2008 WL 4083176 (E.D. Pa. 2008).............................. 32

## OTHER AUTHORITIES

42 U.S.C. § 12189 ..................................................................... 26, 45

## I.    INTRODUCTION

Plaintiff/Appellant Richard Katz is a 2004 graduate of St. Christopher College of Medicine who has failed Step 1 of the United States Medical Licensing Examination (USMLE) nine times.  In 2005, after failing Step 1 four times, and failing Step 2 CK (Clinical Knowledge) once, he submitted a request for testing accommodations to the National Board of Medical Examiners (NBME), seeking extended testing time based on supposed ADHD (Attention Deficit Hyperactivity Disorder), anxiety and depression.  The NBME processed his request in its usual way, including communicating with Mr. Katz to make sure he provided as much supporting documentation as possible and submitting the documentation to an external reviewer with appropriate training, education and experience.  In March 2006, the NBME denied Mr. Katz's request for testing accommodations, providing him with a letter detailing the reasons for the denial.  In the following years, Mr. Katz continued taking, and failing, the USMLE.

In 2011, the USMLE announced the adoption of a six-attempt limit on the number of times a candidate could take a Step or Step component of the USMLE. Before that, the USMLE had no limit on the number of times a candidate could take a Step or Step component of the USMLE, but it had recommended, for nearly 20 years, that state medical boards impose limits, and 41 out of 50 states did so, the majority limiting candidates to three or four attempts.

The USMLE implemented the six-attempt limit in two stages, and it became effective for Mr. Katz on January 1, 2013, after which he could no longer register to take Step 1.  Mr. Katz registered for Step 1 three more times after he learned of the six-attempt limit and before it barred him from further registrations, and he failed on each attempt.

In April 2014, Mr. Katz sent a letter, which he refers to as an "appeal," asking for a waiver of the six-attempt limit so he could take Step 1 again, with accommodations.  He said that he had recently been diagnosed with bipolar disorder, and he provided a letter from a physician saying that his previous diagnosis of ADHD was incorrect.  The USMLE secretariat responded that Mr. Katz could only request accommodations in connection with a current registration for a Step of the USMLE, and advised him that only a state medical board could request a waiver of the attempt limit on his behalf.  Mr. Katz asked the Pennsylvania Medical Board to intervene on his behalf to request a waiver of the six-attempt limit, but the Pennsylvania Board declined to do so.

Mr. Katz sued the NBME and its USMLE partner, the Federation of State Medical Boards (FSMB), in June 2015, approximately two and one-half years after the six-attempt limit became effective for him.  He claimed that the defendants violated the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act of 1973 when the NBME denied his request for

accommodations in 2006, when the USMLE adopted the six-attempt limit, and when it did not waive the six-attempt limit as he requested. Mr. Katz's second amended complaint also raised various state-law claims.

On defendants' motion, the District Court dismissed some of Mr. Katz's claims as frivolous, and granted summary judgment in favor of the NBME and the FSMB on all claims under the ADA and the Rehabilitation Act based on statute of limitations grounds. Mr. Katz now appeals the grant of summary judgment on his ADA and Rehabilitation claims only.

For the following reasons, this Court should affirm the District Court's findings that all of Mr. Katz's ADA and Rehabilitation Act claims were time barred. First, Mr. Katz's mental problems do not satisfy the rigorous standard required to qualify as "extraordinary circumstances," so as to equitably toll the statute of limitations under <u>Kach v. Hose</u>, 589 F.3d 626 (3d Cir. 2009), for any period after 2006.[1] Likewise, the NBME did not fraudulently conceal information

---

[1]    In an Order dated April 18, 2017, S.A. 43, this Court instructed the parties to address, among other things, whether the defendants' denial of Mr. Katz's request for a waiver of the six-attempt limit was an independent act of discrimination under <u>Delaware State College v. Ricks</u>, 449 U.S. 250, 260-261 (1980), and whether the District Court correctly determined that Mr. Katz's mental health status did not equitably toll the statute of limitations under <u>Kach v. Hose</u>, 589 F.3d 626, 645 (3d Cir. 2009). Both issues are addressed in the argument section of this brief.

from Mr. Katz in its 2006 denial of his request for accommodations, so equitable tolling is likewise not available on that basis.

With regard to the adoption of the six-attempt limit, Mr. Katz had two years to challenge the rule after it became effective for him on January 1, 2013, but he sued approximately six-months after the limitations period elapsed. The denial of his request for a waiver of the six-attempt limit was not a new, separate act of alleged discrimination under Delaware State College v. Ricks, 449 U.S. 250, 260-261 (1980), but rather an affirmation or consequence of the USMLE's previous adoption and implementation of the rule. Accordingly, the denial of Mr. Katz's request for a waiver did not start a new limitations period, nor was it part of a continuing violation.

Because none of the equitable doctrines Mr. Katz relies on to save his late filing apply, the Court of Appeals should affirm the District Court's decision that the statute of limitations barred each of Mr. Katz's claims.

## II.    STATEMENT OF THE ISSUES

> Did the District Court correctly find that the statute of limitations barred each of Mr. Katz's claims under the Americans with Disabilities Act and the Rehabilitation Act?

> Suggested Answer:  Yes.

## III.    STATEMENT OF RELATED CASES

There are no related cases or proceedings.  At pages 8-9 of the Brief for Appellant, Mr. Katz identifies several unrelated cases involving the National Board of Medical Examiners or other entities, and he erroneously refers to them as related cases.  This is the only litigation between Mr. Katz and the defendants, the NBME and the FSMB.

## IV.    COUNTERSTATEMENT OF THE CASE

### A.    Facts About the Defendants, the NBME and the FSMB.

The NBME is an independent, non-profit organization that serves the public through high quality assessments of healthcare professionals.  The NBME, together with the FSMB, develops and administers the United States Medical Licensing Examination, taken by U.S. medical students and graduates, and international medical students and graduates who wish to practice medicine in the United States.  Supplemental Appendix 44 (Defendants' Statement of Undisputed Facts);[2] S.A. 197-198 (Affidavit of Gerard F. Dillon, Ph.D.).  All state medical boards in the United States use the USMLE to assess minimum competence for purposes of medical licensure.  S.A. 197-198 (Dillon Affid.).

The NBME, established in 1915, and the FSMB, established in 1912, each has as its core mission to protect the health of the public through state of the art

---

[2]    The Supplemental Appendix is hereafter referred to as "S.A."

assessment of physicians and other health professionals.  While individual state licensing boards grant the license to practice medicine, all medical boards in the U.S. accept a passing score on the USMLE as evidence that an applicant demonstrates the core competencies to practice medicine.  S.A. 197-198 (Dillon Affid.).  As a result, healthcare consumers throughout the nation enjoy a high degree of confidence that their doctors have met a common standard of minimum competence.

The USMLE is a three-step examination, assessing a physician's ability to apply knowledge, concepts, and principles, and to demonstrate fundamental patient-centered skills, that are important in health and the treatment of diseases, and that constitute the basis of safe and effective patient care.  Step 1 of the USMLE assesses whether the examinee understands and can apply important concepts of the core sciences basic to the practice of medicine, with special emphasis on principles and mechanisms underlying health, disease, and modes of therapy.  Step 1 ensures mastery of not only the sciences that provide a foundation for the safe and competent practice of medicine in the present, but also the scientific principles required for maintenance of competence through lifelong learning.  S.A. 197 (Dillon Affid.).

Step 2 of the USMLE assesses whether the examinee can apply medical knowledge, skills, and understanding of clinical science essential for the provision

of patient care under supervision, emphasizing health promotion and disease prevention. Step 2 is comprised of two parts: Step 2 CK (Clinical Knowledge) is constructed according to an integrated content outline that organizes clinical science material along two dimensions: physician task and disease category. Step 2 CS (Clinical Skills) is a clinical skills exam that uses standardized patients (actors in the role of patients) to test whether the examinee has the ability to gather information from patients, perform physical examinations, accurately document his or her findings, and communicate his or her findings to patients. S.A. 198 (Dillon Affid.).

Step 3 assesses whether the examinee can apply medical knowledge and understanding of biomedical and clinical science essential for the unsupervised practice of medicine, with emphasis on patient management in ambulatory settings. It is the final examination in the USMLE sequence leading to a license to practice medicine without supervision. S.A. 198 (Dillon Affid.).

Examination committees broadly representing the medical profession meticulously prepare the examination materials in all three steps of the USMLE. The committees are comprised of recognized experts in their fields, including both academic and non-academic medical practitioners, as well as members of state medical licensing boards. S.A. 198 (Dillon Affid.).

Most medical schools in the United States and many located elsewhere require medical students to take USMLE Step 1 after completing the first two years of medical school, which is comprised of the core sciences that form the basis of medical practice.  S.A. 198 (Dillon Affid.).

The NBME's Office of Disability Services is responsible for implementing the policy of providing test accommodations on the USMLE to individuals with recognized disabilities under the ADA.  S.A. 183 (Affidavit of Catherine Farmer, Psy.D.).

When an examinee registers for a step of the USMLE and submits a Request for Test Accommodations with supporting documentation, the NBME's Office of Disability Services conducts a review which may include consulting with one or more external experts who specialize in the assessment, diagnosis, and evaluation of the claimed disability to assist in determining whether the documentation submitted by the examinee establishes that she or he has a substantial limitation in a major life activity and, if so, what accommodation is appropriate.  S.A. 184-185 (Farmer Affid.).

**B.    Facts Concerning Mr. Katz's Background, His 2005-2006 Request for Accommodations, and His USMLE Testing.**

Mr. Katz grew up in Queens, New York.  In fourth, fifth and sixth grades his school placed him in classes for intellectually gifted children, which he said related

not to his academic abilities, but rather to his artistic ones. S.A. 359 (Mr. Katz's

personal statement submitted with his 2005 Request for Accommodations.) Mr.

Katz attended the High School for Art and Design in New York City, where he

stopped taking math and science courses after his sophomore year. S.A. 216 (R.

Katz depo., p. 23-25). Mr. Katz scored 400 on the math SAT, and 425 on the

verbal. He then attended Parson's School of Design, where he received a Bachelor

of Fine Arts degree. Again, he took no math or science courses other than one

science course in Wildlife of North America. S.A. 220 (R. Katz depo., p. 41).

Other than receiving speech therapy as a child, Mr. Katz never received

accommodations at any time through his graduation from college. S.A. 246 (R.

Katz depo., p. 144-145).

During and after college, Mr. Katz worked at a hospital where he enjoyed

the energy-packed environment, and decided that he wanted to be a doctor. S.A.

359-360 (R. Katz personal statement). Mr. Katz took post-baccalaureate courses at

Nassau Community College,[3] Queens College and the State University of New

York at Old Westbury to prepare to apply to medical school, and for the first time,

---

[3]     Plaintiff got a "C" in a math course and withdrew from a physics course
when he attended Nassau Community College in 1996.

at Old Westbury, he received academic accommodations.[4]  S.A. 358, 360 (R. Katz personal statement).  The only documentation that Mr. Katz provided to the NBME from the College at Old Westbury, a one-page memorandum, stated that he had received accommodations from Fall 1994 through Spring 1997 based upon "documentation of an anxiety disorder and Attention Deficit Disorder."  S.A. 358.  Mr. Katz did not provide such documentation to the NBME, however, nor did the Old Westbury memorandum describe the documentation reviewed or relied upon in granting accommodations, the standards for granting accommodations, or what the accommodations were.  S.A. 358.  In his personal statement submitted to the NBME in 2005, Mr. Katz said that Old Westbury granted accommodations because his family physician "felt" that his problem "was secondary to test anxiety and possibly an attention-deficit disorder ..."  S.A. 360.

Other documentation that Mr. Katz submitted to the NBME stated that he did not have psychological testing until 2003, at which time the examiners who performed the testing made no diagnosis of ADD or ADHD.  S.A. 328-345, (2003 report of psychological testing).

---

[4]    Mr. Katz acknowledged at his deposition that when he stated in his Request for Test Accommodations forms that he received extended time for exams in college, he was referring to the post-baccalaureate courses he took at SUNY Old Westbury.  S.A. 246 (R. Katz depo., p. 143).

In his 2005 personal statement, Mr. Katz said that he "did not fair [sic.] that well on the MCAT," and that he applied and was accepted at St. Matthew's School of Medicine in Belize.  S.A. 360.  In his sworn deposition testimony, however, Mr. Katz acknowledged that he actually started at a different medical school, Ross University in Dominica, West Indies.  He said that he attended Ross for one semester but he got sick and depressed, failed the semester, and did not return there.  S.A. 241-242 (R. Katz depo., p. 124-126).  Later that year, Mr. Katz started at St. Matthew's University School of Medicine in Belize.  He later transferred to St. Christopher's because it offered clinical clerkships in a region that he preferred.  S.A. 241-243 (R. Katz depo., p. 124-130).  When asked on his applications to St. Matthew's and St. Christopher's about prior medical schools attended, Mr. Katz did not mention his failed semester at Ross University School of Medicine.  S.A. 278, 279 (St. Matthew's app.); S.A. 283-284 (St. Christopher's app.).

Mr. Katz's 2005 requests for accommodations to the NBME contained no documentation of any accommodations in medical school and in the section of the Request for Test Accommodations titled "Accommodation History," he checked "No" for medical school.  S.A. 58, 64 (R. Katz Req. for Accomm. forms).  At his deposition, however, Mr. Katz testified that he received "informal accommodations" at medical school, by which he meant that without submitting

any documentation, the school permitted him to take as much time as he wanted on examinations.  S.A. 244-245 (R. Katz depo., p. 137-138).

Mr. Katz, who graduated from medical school in 2004, first sat for USMLE Step 1 in March 2002.  S.A. 118, 286 (R. Katz USMLE history).  In July 2005, after he had failed Step 1 five times and failed Step 2 CK once, Mr. Katz requested accommodations on Step 2 CK and Step 2 CS.  He did not request accommodations on Step 1.  S.A. 56-59, 61-65 (Request for Accomm. forms); S.A. 246-247 (R. Katz depo., p. 145-146); S.A. 184 (Farmer Affid.).

In 2005, as now, the NBME published information and guidelines for requesting testing accommodations in the USMLE Bulletin of Information (BOI) that can be found on the USMLE website, www.usmle.org.  A candidate who believed he or she had a disability that required accommodation on the USMLE would review the published information and submit a Request for Test Accommodations together with supporting documentation in connection with his or her Step exam registration.  S.A. 185 (Farmer Affid.).  The NBME's Disability Services office handled Mr. Katz's Request for Test Accommodations in its usual way, which included:

- It conducted a preliminary audit of the request and supporting documentation submitted by Mr. Katz and advised him of missing information.  Mr. Katz then had the opportunity to supplement the

documentation supporting his Request for Test Accommodations (which he did).

- The NBME sent the request and supporting documentation to an external consultant for review and recommendation – in Mr. Katz's case to Dr. Catherine Farmer.[5]

- The Manager/Director of the NBME's Disability Services office would review the candidate's submission, the written report and recommendation of the outside consultant and determine whether to grant an accommodation.

- The NBME Disability Services Manager/Director would notify the candidate of the decision in writing.

S.A. 183-190 (Farmer Affid.).

For reasons described at length in Dr. Farmer's February 2, 2006, report to J. Abram Doane, the NBME's then Manager of Disability Services, and in a more summary fashion in Mr. Doane's March 13, 2006, letter to Mr. Katz, the NBME

---

[5]    Dr. Farmer worked at the NBME in various capacities from 1986 to 2005, when she left to engage in a post-doctoral fellowship at the University of Rochester, School of Medicine and Dentistry, from September 2005 to August 2006.  S.A. 192-194 (Farmer C.V.).  In February 2006, Dr. Farmer performed the review of Mr. Katz's file as an external consultant for the NBME.  Dr. Farmer returned to the NBME full-time as Director of Disability Services and ADA Compliance officer for its Testing Programs, and she continues to hold those positions today.  Id.

denied Mr. Katz's Request for Test Accommodations because his documentation

did not demonstrate a significant impairment of a major life activity.  S.A. 383-386

(Farmer letter to Doane); S.A. 388-389 (Doane letter to R. Katz).   Mr. Doane

stated in part:

> By definition, ADHD affects people over time and across
> situations in multiple domains, not in one circumscribed area
> such as test taking.  The impact of the disorder needs to be
> evident in real world functioning and result in developmentally
> deviant impairment in at least two domains.  Your
> documentation does not suggest significant and persistent
> functional impairment over time and across situations, nor does
> it demonstrate that you were significantly limited in the ability
> to handle normal developmental, academic and social tasks.  To
> the contrary, the documentation you submitted indicates that
> you progressed through elementary and grade school, earned a
> Bachelor's degree, and earned a MD degree, all apparently
> without accommodations.
>
> Furthermore, you provided little objective evidence or data
> indicating that you are currently functionally impaired to a
> degree that would rise to the level of a disability.   No
> documentation was provided via faculty/supervisor comments,
> job performance evaluations, or through other sources of
> information verifying that you have shown significant
> impairment in one or more major life activities.   The
> conclusions of your evaluators notwithstanding, the
> developmental evidence and current pattern of test results
> provided in your documentation offers little evidence to support
> the conclusion of significant impairment in one or more major
> life activities due to inattention, hyperactivity, and/or
> impulsivity.
>
> Although your evaluators indicate that you are currently
> diagnosed with an anxiety and a depressive disorder, your
> documentation contains no evidence that these conditions

> impair your day to day functioning to a degree that would rise
> to the level of a disability.  ...

S.A. 388-389 (Doane letter to R. Katz).

Mr. Katz neither supplemented his Request for Test Accommodations nor submitted another official Request for Test Accommodations.  He continued taking, and failing, the USMLE step exams as shown on the reports of his USMLE history.  S.A. 118, 286 (R. Katz USMLE history).

Notwithstanding Mr. Katz's statement that the NBME used Dr. Farmer to "get around ADA compliance issues and to control for incoming accommodations requests" (Brief for Appellant, p. 4), or that the NBME otherwise had a tendency to deny requests for accommodations, at the time Mr. Katz submitted his request for accommodations, the NBME granted approximately 75 percent of the requests for accommodations it received.  S.A., 186 (Farmer Affid.).

### C. Facts Concerning the USMLE's Adoption of the Six-attempt Limit.

The USMLE Composite Committee establishes policy for the USMLE Program and is composed of representatives of the FSMB, the NBME, the Educational Commission for Foreign Medical Graduates (ECFMG), and the American public.  S.A. 197 (Dillon Affid.).

Before 2011, the Composite Committee imposed no limit on the number of times an examinee could take any Step of the USMLE.  Rather, each state's

medical board decided for that state whether to impose an attempt limit on taking the USMLE, and if so, what the maximum number of attempts would be. The USMLE did, however, recommend limits to state medical boards, including the recommendation – in place for nearly 20 years leading up to the 2011 adoption of the six-attempt limit – that state medical boards impose a limit of six attempts to pass any Step or Step Component unless the examinee demonstrated that he or she had obtained additional educational experience acceptable to the licensing authority. S.A. 198 (Dillon Affid.).

In 2010-2011, when the USMLE's Composite Committee considered adoption of a limit on the number of attempts to pass any Step or Step Component of the USMLE, 41 out of 50 states (78%) imposed such limits. The vast majority imposed a limit of three or four attempts per Step. Pennsylvania was in the minority of states that imposed no attempt limit at all. S.A. 199 (Dillon Affid.).

In 2011, the Composite Committee adopted a policy limiting examinees to six attempts to pass any step of the USMLE. S.A. 198-199 (Dillon Affid.); S.A. 98-99 (USMLE announcements). The policy became effective on January 1, 2012, for examinees who had not previously taken any step of the USMLE. For examinees like Mr. Katz, who had taken one or more steps of the USMLE already, the six-attempt limit became effective as of January 1, 2013. S.A. 198-199 (Dillon Affid.); S.A. 98-99 (USMLE announcements).

17

The six-attempt limit applies to all examinees, without regard to disability status.  If an examinee applies for and receives accommodations for his or her first attempt at USMLE Step 1, for example, then he or she would be entitled to the same accommodations on up to six attempts at Step 1.[6]  If an examinee does not apply for or is found not entitled to accommodations, he or she still has up to six attempts to take the examination, and can reapply for testing accommodations each time if denied.  S.A. 199 (Dillon Affid.).

The primary impetus for the Composite Committee's consideration of a six-attempt limit was a security issue involving the computerized Steps of the USMLE, in which the concern was that examinees who took a Step multiple times might be contributing to the "leak" of examination questions.  S.A. 199 (Dillon Affid.).

A secondary but important motivation was the concern within the Composite Committee that among the very small percentage of examinees who repeatedly failed a Step of the USMLE, an unqualified examinee might eventually pass by chance alone if given enough opportunities.  S.A. 199 (Dillon Affid.).

The Composite Committee created an exception to the six-attempt limit under which a state medical board may request that the USMLE permit an examinee to have an additional attempt beyond the six-attempt limit for any reason

---

[6]    Examinees apply for accommodations when they register for a step of the USMLE, and must do so for each step in the USMLE sequence.

the state board deems appropriate.  In that way, just as before the adoption of the six-attempt limit each state medical board could determine whether or not to impose attempt limits, so too, after the adoption of the six-attempt limit, if a state medical board believes that an examinee should be given an additional attempt, the control would be with the state board.  S.A. 199 (Dillon Affid.).

Mr. Katz had already failed USMLE Step 1 six times when the USMLE Composite Committee adopted the six-attempt limit.  Because of the extra year provided to examinees who had already taken one or more steps of the USMLE, Mr. Katz had until December 31, 2012, to register again for Step 1.  S.A. 98-99 (USMLE announcements).  Mr. Katz registered and took Step 1 three additional times, and failed, after the USMLE adopted the six-attempt limit and before it barred him from registration.  S.A. 118, 286 (R. Katz USMLE history).

Mr. Katz received a diagnosis of bipolar disorder for the first time in March 2013.  S.A. 391 (R. Katz April 1, 2014, letter to ECFMG).  Mr. Katz had registered for Step 1 on December 7, 2012, with an examination eligibility period from June 1, 2013 to November 30, 2013.  S.A. 118 (R. Katz USMLE history).  Mr. Katz could have, but did not, submit a Request for Test Accommodations in connection with his pending registration for Step 1 after he received the new diagnosis of bipolar disorder in March 2013.  S.A. 188-189 (Farmer Affid.).  Mr. Katz has not submitted a formal Request for Test Accommodations in connection with a

registration since 2005-2006.  S.A. 189 (Farmer Affid.).  Mr. Katz took the Step 1

examination for the final time on November 12, 2013, and failed.  S.A. 391 (R.

Katz April 1, 2014, letter to ECFMG).

### D.    Procedural History

Mr. Katz filed his complaint on June 17, 2015, naming the "NBME/United

States Medical Licensing Exam (USMLE) Organization" as defendants.  S.A. 2,

(Dist. Court Docket, No. 1).  Mr. Katz also moved for appointment of counsel, and

to proceed *in forma pauperis*.  S.A. 2 (Dist. Court Docket, Nos. 2, 3).

On August 3, 2015, Mr. Katz moved to amend the complaint, dropping the

"USMLE Organization" and adding the FSMB as a defendant.  S.A. 3 (Dist. Court

Docket, No. 17).  On August 5, 2015, Mr. Katz filed a motion to seal the court file.

S.A. 3 (Dist. Court Docket, No. 19).  Mr. Katz's amended complaint is reproduced

at S.A. 165 et seq.  Defendants filed their answer and affirmative defenses on

August 28, 2015.  S.A. 4 (Dist. Court Docket, No. 33).

On September 3, 2015, the Court denied without prejudice Mr. Katz's

motion to seal the entire record, but sealed Exhibits 4 and 5 to the defendants'

answer.  S.A. 5 (Dist. Court Docket, Nos. 37, 38).  On September 16, 2015, the

Court denied without prejudice Mr. Katz's motion to appoint counsel, S.A. 5 (Dist.

Court Docket, No. 43).  S.A. 5 (Dist. Court Docket, No. 45).

On October 1, 2015, Mr. Katz moved for leave to file a second amended complaint, S.A. 6 (Dist. Court Docket, No. 52), and re-filed the motion on November 17, 2015. S.A. 6 (Dist. Court Docket, No. 62, 63; the Proposed Second Amended Complaint is included at S.A. 124 et seq.)

Defendants filed a discovery motion on January 28, 2016, S.A. 7 (Dist. Court Docket, No. 79), and Mr. Katz filed discovery motions on January 28, 2016, March 15, 2016, April 11, 2016 and April 20, 2016. S.A. 7-9 (Dist. Court Docket, Nos. 80, 91, 98 and 99). Mr. Katz filed a second motion for appointment of counsel, S.A. 7 (Dist. Court Docket, No. 66), and a "motion to waive costs of deposition – for lay and expert witness fees, and court reporter fees." S.A. 7 (Dist. Court Docket, No. 71).

On May 2, 2016, defendants moved for summary judgment. S.A. 9 (Dist. Court Docket, No. 105). On May 3, 2016, the Court granted Mr. Katz's motion for leave to file a second amended complaint, which was deemed filed that day. S.A. 9 (Dist. Court Docket, No. 106, 107); S.A. 287 et seq. (second amended complaint, as filed). On May 4, 2016, the Court denied Mr. Katz's motion to waive costs of deposition (court reporter fees) and for lay and expert witness fees. S.A. 9 (Dist. Court Docket, No. 110). By Order dated May 10, 2016, the Court resolved certain outstanding discovery motions, stayed the briefing on defendants' summary judgment motion, and directed defendants to file an amended statement of facts

and amended brief in support of summary judgment within 60 days. S.A. 10 (Dist. Court Docket, No. 117).

On May 12, 2016, the Court denied Mr. Katz's second motion to appoint counsel and denied his remaining discovery motions. S.A. 11 (Dist. Court Docket, Nos. 118, 119, 120, 123). Defendants answered the second amended complaint under seal on May 13, 2016. S.A. 11 (Dist. Court Docket, No. 124).

Defendants filed an amended motion for summary judgment on July 11, 2016. S.A. 11, (Dist. Court Docket, No. 126). After briefing, United States Magistrate Judge Joseph F. Saporito, Jr. issued a Report and Recommendation (R&R) on November 30, 2016. S.A. 15 (Dist. Court Docket, No. 199); S.A. 18 et seq. (R&R). Mr. Katz objected to the R&R on December 19, 2016. S.A. 15, (Dist. Court Docket, No. 201). On February 7, 2017, the District Court, Judge Robert D. Mariani, adopted in part and modified in part the R&R, and entered judgment in favor of the defendants on all claims. S.A. 16 (Dist. Court Docket, No. 205); S.A. 40-42 (District Court Order).

## V.    SCOPE AND STANDARD OF REVIEW

The Court of Appeals exercises plenary review over both the District Court's grant of summary judgment and its legal determination that Mr. Katz failed to assert his claims within the applicable limitations periods.  Kach v. Hose, 589 F.3d 626, 633-634 (3d Cir. 2009).  In reviewing the lower court's summary judgment

ruling, the Court of Appeals is "required to apply the same test the district court should have utilized initially." Id., citing Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co. of Md., 989 F.2d 635, 637 (3d Cir. 1993).

## VI. SUMMARY OF THE ARGUMENT

The statute of limitations bars each of Mr. Katz's claims under the Americans with Disabilities Act and the Rehabilitation Act. Addressing the claims chronologically, the two-year statute of limitations bars Mr. Katz's claim that the NBME discriminated against him in 2006 when it denied his request for accommodations; the statute bars Mr. Katz's claim that the USMLE discriminated on the basis of disability when it adopted the six-attempt limit in 2011, which became effective for Mr. Katz on January 1, 2013, and barred him from further registrations for Step 1; and the statute bars the claim that defendants discriminated when they denied his request for a waiver of the six-attempt limit in April 2014.

Equitable tolling does not save Mr. Katz's late filing. Mr. Katz's mental health issues do not satisfy the rigorous standard of mental incapacity under Kach v. Hose because Mr. Katz was never adjudicated incompetent or institutionalized. Further, Mr. Katz could not show the type of circumstance credited by this Court in Lake v. Arnold, 232 F.3d 360 (3d Cir. 2000), in which the plaintiff showed that her disability motivated the defendants to inflict the injury (sterilization) upon her.

Equitable tolling is likewise unavailing because the NBME did not fraudulently conceal information from Mr. Katz regarding the 2006 denial of his request for accommodations.   Mr. Katz knew of his "injury" when the NBME denied his request, and he knew the defendants' reasons for denying his request.

The District Court also correctly found Mr. Katz's claim of discrimination in the adoption of the six-attempt limit time barred.   Mr. Katz knew about the adoption of the six-attempt limit when the USMLE announced it in 2011, and he knew that it would prevent him from registering for Step 1 after January 1, 2013. He did not file his lawsuit within two years of the date the six-attempt limit barred him from further registrations.

Mr. Katz's claim that the denial of his request for a waiver of the six-attempt limit was a new discriminatory act that started a new limitations period is untenable under Delaware State College v. Ricks.   Neither the denial of an appeal nor a request for a waiver of an attempt limit is a new discriminatory act, but rather a confirmation or consequence of the earlier decision.   Mr. Katz's attempt to distinguish Ricks by noting that he did not receive a letter telling him the consequences of the six-attempt limit is completely undermined by the facts.   The six-attempt was an across-the-board rule applicable to all candidates, and it was published on the USMLE's website.   Mr. Katz was aware of and understood the six-attempt limit and its consequences at the relevant time.

Even if Mr. Katz's claim regarding the six-attempt limit were not time-barred, he has adduced no evidence whatsoever that modifying the six-attempt limit would be a reasonable accommodation, which is an element of his claim. In contrast, the defendants produced an affidavit explaining the background of the six-attempt limit, including the concern that in the absence of a limit, if given enough opportunities, some unqualified examinees might eventually pass just by chance a Step that they had repeatedly failed.

In addition, the District Court properly rejected Mr. Katz's arguments under the continuing violation doctrine and the discovery rule.

For all these reasons, the Court should affirm the District Court's findings that the statute of limitations barred all of Mr. Katz's claims.

## VII. ARGUMENT

### The Statute of Limitations Bars Each of Mr. Katz's Claims Under the Americans with Disabilities Act and the Rehabilitation Act.

Mr. Katz raised several disability discrimination claims in his second amended complaint and the District Court found that the statute of limitations barred them all. Addressing them chronologically, Mr. Katz claims that the NBME discriminated against him in 2005-2006 when it denied his request for accommodations on the USMLE. S.A. 289 et seq. (Second Amended Complaint, ¶¶ 5, 17-24). Specifically, he claims that he submitted sufficient documentation in

2005 to demonstrate a disability and that the NBME should have granted the accommodations he requested.  Id.

Second, Mr. Katz claims that the defendants' adoption of a rule limiting candidates to six attempts to pass any Step or Step Component of the USMLE discriminated and unlawfully denied him access to the USMLE.  He claims that the USMLE Bulletin explaining the six-attempt limit "does not discuss exceptions to this rule" or matters involving ADA, the ADAAA or Rehabilitation Act policies. S.A. 289 et seq. (Second Amended Complaint, ¶¶ 3-4).  Finally, he claims that after the six-attempt limit prevented him from registering for additional attempts to pass the USMLE Step 1, he requested a waiver of the six-attempt limit which the defendants denied, and that such denial was a further violation.  S.A. 289 et seq. (Second Amended Complaint, ¶ 4).

For the following reasons, the Court of Appeals should affirm the District Court's findings that the statute of limitations barred all of Mr. Katz's claims under the ADA and Rehabilitation Act.

### A.   The Statute of Limitations on ADA and Rehabilitation Act Claims is Two Years, Barring Any Claim Regarding the 2006 Denial of Mr. Katz's Request for Accommodations.

In the absence of a specific statutory limitations period in the ADA or Rehabilitation Act, federal courts borrow the most analogous state statute of limitations.  In Pennsylvania, courts apply the Commonwealth's two-year personal

injury statute of limitations to claims under the Americans with Disabilities Act and the Rehabilitation Act.  Disabled in Action of Pa. v. S.E. Pa. Trans. Auth., 539 F.3d 199 (3d Cir. 2008).  While Disabled in Action arose under Title II of the ADA and the Rehabilitation Act, the same logic applies to Title III of the ADA, 42 U.S.C. § 12189, which covers actions against entities like the NBME that provide examinations or courses for professional certification or licensing.  Soignier v. Am. Bd. of Plastic Surgery, 92 F.3d 547 (7th Cir. 1996), cert. denied, 519 U.S. 1093 (1997).  On appeal, Mr. Katz does not challenge the District Court's use of the two-year statute of limitations, but argues that his claims fit within one or more exceptions to the statute.

Soignier, a case brought by a physician who failed his professional association's board certification examination after it denied him some of the accommodations he requested, instructs that a cause of action for denial of testing accommodations accrues no later than the date the plaintiff first takes the relevant examination without the accommodations he requested, because the "time starts to run with 'the *discriminatory act*, not the point at which the *consequences* of the act become painful.'"  92 F.3d 547, 552, quoting Lever v. Northwestern Univ., 979 F.2d 552, 553 (7th Cir. 1992) (emphasis in original), quoting Chardon v. Fernandez, 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981), *cert. denied,* 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 661 (1993).

Under the <u>Soignier</u> court's application of the statute of limitations, Mr. Katz's cause of action for alleged discrimination in the denial of accommodations accrued either on March 13, 2006, when the NBME informed him of the denial, or on September 29, 2006, the date Mr. Katz next took a Step of the USMLE without the accommodations he had requested.  S.A. 286 (R. Katz USMLE history).  The statute of limitations on such claim expired in 2008, long before he brought this lawsuit in 2015.  Mr. Katz tries to resurrect his claim regarding the 2006 denial based on equitable tolling.  He presents two arguments, neither of which has merit.

    1.    **Under the Standards of <u>Kach v. Hose</u>, Mr. Katz's Mental Disability Did Not Toll the Statute of Limitations on His Claim Regarding the NBME's 2006 Denial of His Request for Accommodations.**

It is well settled that equitable tolling of a statute of limitations is an extraordinary remedy that courts rarely grant.  <u>Kach v. Hose</u>, <u>supra</u>, 589 F.3d 626, 645.  In <u>Boswell v. Colvin</u>, 2016 WL 640575 (W.D.Pa. 2016), the Court stated:

> Equitable tolling is an extraordinary remedy, and must be applied sparingly. [<u>Whiteley v. Colvin</u>, 2015 U.S. Dist. LEXIS 56045, at *7 (M.D. Pa. Mar. 12, 2015)]; <u>Santos v. United States</u>, 559 F.3d 189, 197 (3d Cir. 2009). Equitable tolling may apply '(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum.' <u>Kramer v. Comm'r of Soc. Sec.</u>, 461 F. App'x 167, 169 (3d Cir. 2012).

2016 WL 640575, *1.

A plaintiff raising equitable tolling based on mental incapacity must meet a highly demanding standard, described by this Court in <u>Kach v. Hose</u>, <u>supra</u>.   In <u>Kach</u>, this Court found that the plaintiff – who ran away from home at age 14 and lived secretly for 10 years with a man who was a security guard at her middle school, later claiming that she had been coerced and held against her will – did not show that she was mentally incapacitated from filing suit, notwithstanding that her circumstances were "extraordinary" in the vernacular sense of the word.  589 F.3d 626, 645.  The Court accepted her claim that her unusual experience had stunted her emotional and cognitive development, but it said that she did not show the type of extreme mental incapacity that could equitably toll the statute of limitations. The Court described the standard as follows:

> We nevertheless conclude that Kach has not met her burden of showing that this is one of those extraordinary cases warranting the application of any federal equitable tolling provision. *See Wallace,* 549 U.S. at 396, 127 S.Ct. 1091; *cf. Lyons v. Potter,* 521 F.3d 981, 983 (8th Cir.2008) ("Courts that have allowed equitable tolling based on mental illness have done so only in exceptional circumstances, such as where the complainant is institutionalized or adjudged mentally incompetent." (citations omitted)); *Lopez v. Citibank, N.A.,* 808 F.2d 905, 907 (1st Cir.1987) (Breyer, J.) ("[W]e believe a federal court should assume that the mental illness was not of a sort that makes it equitable to toll the statute—at least absent a strong reason for believing the contrary." (citation omitted)); *see also, e.g., Biester v. Midwest Health Servs.,* 77 F.3d 1264, 1267–68 (10th Cir.1996) (finding no exceptional circumstances where there was no allegation that the plaintiff was ever adjudged incompetent or institutionalized).

589 F.3d 626, 645.

Accordingly, under the standard endorsed by this Court in <u>Kach</u>, a plaintiff claiming that his mental incapacity was an extraordinary circumstance that should toll the statute of limitations must show that he was "adjudged incompetent" or "institutionalized." <u>Id.</u>

The <u>Kach</u> Court distinguished the case before it from the unique circumstances of <u>Lake v. Arnold</u>, 232 F.3d 360 (3d Cir. 2000), in which it had found that the plaintiff's mental incapacity might justify equitable tolling. In <u>Lake</u>, the mentally retarded plaintiff had been permanently sterilized when she was 16 years old at the direction of her guardian father. Many years later the plaintiff and her husband learned of the sterilization, leading her to sue her father, stepmother, the doctors who performed the surgery and the hospital (a state actor) under Section 1983. The district court found plaintiff's claims time barred, but the Court of Appeals remanded to determine if equitable tolling should apply to her claim. The Court cited the special circumstances of the case:

> If Elizabeth's allegations prove on remand to be true, we conclude that in this situation, where a guardian conspires to deprive a mentally incompetent person of her constitutional and civil rights, equitable tolling might be appropriate. …
>
> We are not, in remanding this case to the District Court, holding that a mentally incompetent plaintiff would *never* be bound by state statute of limitations provisions in federal civil rights

actions or, alternatively, that she would be evaluated by a more lenient subjective test. *Cf. Robinson,* 107 F.3d at 1022–23 (recognizing that a liberal interpretation of equitable tolling exception would swallow the rule). In fact, we have previously held that mental incompetence is not *per se* a reason to toll the statute of limitations in federal actions. … Where we have permitted equitable tolling for mental disability in the past, the plaintiff's mental incompetence motivated, to some degree, the injury that he sought to remedy. *See Eubanks v. Clarke,* 434 F.Supp. 1022 (E.D.Pa.1977) (deciding to equitably toll the Pennsylvania statute of limitations for a mentally incompetent plaintiff who was involuntarily committed for entire limitations period).

* * * * *

In sum, we are not equitably tolling Pennsylvania's statute of limitations solely because Elizabeth's mental incompetence prevented her from recognizing her injury when she was sterilized. Instead, as in *Eubanks,* we are tolling it due to the failure of the guardian system. The persons, who should have protected Elizabeth because of her retardation, instead harmed her by having her sterilized so that she could not procreate. If her allegations prove true on remand, Elizabeth's claims should proceed.

232 F.3d at 370-372.

The Kach Court called Lake v. Arnold "sui generis," 589 F.3d at 644, and went on to cite cases requiring a plaintiff to show a judgment of incompetence or institutionalization. Mr. Katz has presented nothing like the extreme situation that existed in Lake, in which the plaintiff was not only mentally retarded and incapable of understanding the nature of her injury (sterilization) when it occurred, but also demonstrated the added element of the defendants depriving her of her rights *because of* her mental disability.

In contrast, Mr. Katz has never alleged that when the NBME denied his request for accommodations in 2006 he did not understand the denial, or that he was targeted for discrimination because of his disability. Nor did Mr. Katz present evidence, as discussed in <u>Kach v. Hose</u>, that he was ever adjudicated incompetent to handle his own affairs or that he was "institutionalized." Certainly Mr. Katz's brief one-week hospitalization in 2013 at Pocono Medical Center, while a low point for him, is a far cry from the type of "institutionalization" contemplated by this Court, such as the involuntary commitment for the entire limitations period in <u>Eubanks v. Clarke</u>, cited with approval by the Court in <u>Lake v. Arnold</u> above.

Even if Mr. Katz had presented stronger evidence regarding incompetency or institutionalization, it would likely not have been sufficient to toll the statute of limitations under <u>Kach v. Hose</u> and <u>Lake v. Arnold</u>.

In <u>Lee v. Overton</u>, 2013 WL 159528 (E.D.Pa. 2013), the plaintiff sued police officers and others under Section 1983 for alleged constitutional violations during an arrest for armed robbery. In response to a motion to dismiss on statute of limitations grounds, the plaintiff argued, among other things, that the court should deem his claim equitably tolled for a period during which he was committed to Norristown State (Psychiatric) Hospital after being adjudicated incompetent. The Court rejected his claim, holding that under <u>Lake v. Arnold</u> and <u>Kach v. Hose</u>, a

32

plaintiff must show, among other things, that his disability *motivated* the

defendants' actions against him.

> Since *Lake,* the Third Circuit has been reluctant to equitably toll
> limitations periods in § 1983 cases on the basis of mental
> incompetence. In *Kach v. Hose,* 589 F.3d 626 (3d Cir.2009),
> the Third Circuit denied the plaintiff's claim for equitable
> tolling, distinguishing *Lake* on multiple grounds. First, the court
> reasoned that in *Lake,* the plaintiff belonged to a protected class
> and that her forced sterilization "exemplified the discrimination
> against such persons that § 1983 ... [was] designed to remedy."
> *Id.* at 644. Second, the court highlighted that in *Lake,* the
> plaintiff's mental retardation had in part motivated the injury
> she sought to remedy. *Id.* Finally the court held that even if
> tolling were warranted, the plaintiff in *Kach* had not adequately
> established what mental disability she suffered from, nor was
> there any evidence "that the alleged constitutional deprivations
> of which she complain[ed] were motivated, in even a minor
> way, by such a disability." *Id.*
>
>     \*    \*    \*
>
> Defendants argued that the medical records Plaintiff provided
> are insufficient to prove that he was mentally incompetent at
> the time of the complained of events. … Accepting as true the
> account of Plaintiff's medical history as described in the
> recently submitted exhibits, without even a scintilla of evidence
> linking Plaintiff's mental illness to the actions of Defendants,
> the Court cannot independently connect the dots. Therefore,
> under the prevailing law in the Third Circuit, Plaintiff's
> circumstances do not fall into the narrow set of circumstances
> that warrant equitable tolling on the grounds of mental
> incompetency.

2013 WL 159528, \* 4-5 (footnotes omitted).  See also <u>Sullivan v. Doe</u>, 2008 WL

4083176 (E.D. Pa. 2008) (plaintiff's claim that she suffered from PTSD and severe

depression was insufficient to equitably toll the statute of limitations on her

Section 1983 claim for false arrest and imprisonment; a showing of mental impairment is not the same as mental incapacity); Arots v. Salesianum School, Inc., 2003 WL 21398017, *3 (D.Del. 2003) (plaintiff's serious depression, alcoholism and suicidality did not justify equitable tolling based on mental disability in employment discrimination case); Dahlman v. AARP, 791 F.Supp. 2d 68, 77-78 (D.D.C. 2011) (under D.C. Circuit law, equitable tolling did not excuse the late filing of an ADA lawsuit for an employee who suffered a breakdown and had post-traumatic stress disorder, where she did not show that she was *non compos mentis*, interpreted to mean incapable of handling one's affairs or function in society, because evidence showed that during relevant period of time she worked from home and fulfilled some of the tasks of her employment).

In this case, the District Court correctly found that Mr. Katz's claim of mental disability did not establish the type of extreme circumstance required under Kach, noting that in the years after 2006, Mr. Katz continued studying for the USMLE, registering for and taking Steps of the USMLE, and applying for various jobs.   S.A. 41 (District Court Opinion, p. 2).   Under the "extraordinary circumstances" standard of mental incapacity this Court described in Kach, Mr. Katz cannot be deemed to have been mentally incapacitated for the period from 2006 until 2015 when he filed his lawsuit.   Mr. Katz was never adjudicated incompetent.   He was briefly hospitalized (for approximately one week) in 2013,

which he attributed at the time to multiple stressors, including the fact that he had financial difficulties, low self-esteem, and was facing his last chance to pass Step 1 of the USMLE.  S.A. 298 (Second Amended Complaint, ¶ 42).  The District Court thus correctly found that Mr. Katz was not sufficiently mentally disabled under Kach v. Hose to equitably toll the statute of limitations for a period of years.

## 2. Mr. Katz's Discussion of Kach v. Hose is Both Misleading and Misinformed.

On pages 15-16 of his brief, Mr. Katz confuses the Kach Court's discussion of equitable tolling and its discussion of delay in the accrual of a cause of action, without distinguishing the concepts.  Moreover, the indented quoted paragraphs on page 16 of his brief are misleading because Mr. Katz presents them as if they were one continuous passage, when in fact they are separated by pages of text and pertain to different issues.

The first paragraph ("Kach would have to show that she was mentally incompetent ...") appears on page 637 of the Kach opinion (589 F.3d 626, 637), and is part of the Court's discussion of the heavy burden, under Miller v. Philadelphia Geriatric Center, 463 F.3d 266 (3d Cir. 2006), on a plaintiff claiming a delay in the accrual of a cause of action based on mental incompetence.  In that part of its opinion, the Kach Court makes clear that to justify a delay in the accrual of a cause of action based on mental incapacity, a plaintiff must show a condition

such as Miller's lifelong profound mental retardation, or the type of "total mental disability" of persons in comas or who have had lobotomies. 589 F.3d 626, 638. Mr. Katz does not even venture such an argument here.

The second indented paragraph, which Mr. Katz presents as if it were continuous, is from a separate section of the <u>Kach</u> opinion addressing tolling under Pennsylvania law, 589 F.3d 626, 640, where the Court declines to recognize that duress may toll the statute of limitations under Pennsylvania law, an issue that is irrelevant to the present case.

For all these reasons, <u>Kach v. Hose</u> does not support equitable tolling for any period of time based on Mr. Katz's mental condition.

> **3.      The District Court Properly Rejected Mr. Katz's Claim of Equitable Tolling Regarding the NBME's 2006 Denial of His Request for Accommodations Based on the NBME's Supposed Fraudulent Concealment.**

Mr. Katz also argues that the Court should deem his claim regarding the 2006 denial of his request for accommodations equitably tolled because, he claims, the defendants intentionally misled him, citing the letter from the NBME's Abram Doane in March 2006 that said the NBME consulted with "experts" about his request for accommodations. Mr. Katz argues that the use of the plural (expert**s**) was incorrect, and that Dr. Catherine Farmer should not be considered an expert because she is not licensed as a psychologist and because she only received her

Psy.D. degree in 2004.  The District Court correctly rejected Mr. Katz's argument that defendants misled him.

Mr. Katz points to no regulation or other requirement that a person conducting a review of a request for accommodations must be a *licensed* medical or psychological professional, because there is no such requirement.  While a psychologist must be licensed if she seeks to hold herself out to patients as a licensed professional, or to bill insurance companies for services, licensure is not required to review requests for accommodations within a university, testing agency or other such entity.  A person who has had advanced training and years of experience reviewing medical and psychological records to evaluate requests for accommodations certainly can be considered an expert for that purpose, and both Dr. Farmer and Mr. Doane fit that description in 2006.  Moreover, while qualification to testify as an expert in court is not at issue here, both Dr. Farmer and Mr. Doane would qualify as experts under Federal Rule of Evidence 702, which looks not to licensure but to whether the individual is "qualified as an expert by knowledge, skill, experience, training, or education ..."

Mr. Katz erroneously suggests that Mr. Doane misled him to cover up a predetermined outcome to deny his request for accommodations (Brief for Appellant, p. 3-4, 13, 26), but he ignores the only competent evidence that sheds light on such a claim.  In her affidavit, Dr. Farmer states that in 2005-2006, when

Mr. Katz submitted his request for accommodations, the NBME granted approximately 75 percent of the requests it received.  S.A. 186 (Farmer Affid.). Given that fact, the notion that the NBME intentionally misled Mr. Katz to keep him from discovering who reviewed his request for accommodations is absurd.  In fact, the March 2006 denial of Mr. Katz's request for accommodations provided an accurate, detailed summary of the reasons for denial, none of which are affected by the disclosure in discovery that Dr. Farmer conducted the review.  See S.A. 388-389 (Doane letter to R. Katz).

In Ruehl v. Viacom Inc., 500 F.3d 375 (3d Cir. 2007), this Court addressed a plaintiff's claim for equitable tolling based upon misleading information that the defendant provided in connection with a release under the age discrimination statute.  The plaintiff in Ruehl showed that the defendant, Viacom, had misled him by getting him to sign a release that included claims under the age discrimination laws, yet the release itself failed to comply with the Older Workers Benefit Protection Act requirement to disclose demographic information about other employees who simultaneously lost their jobs so the employee can determine whether he or she was part of a pattern of age discrimination.  Citing Oshiver v. Levin, Fishbein, Sedran and Berman, 38 F.3d 1380 (3d Cir. 1994), the Court cited two requirements for equitable tolling in employment cases:

> [T]he equitable tolling doctrine may excuse the plaintiff's non-compliance with the statutory limitations provision at issue when it appears that (1) the defendant actively misled the plaintiff respecting the reason for the plaintiff's discharge, *and* (2) this deception *caused* the plaintiff's non-compliance with the limitations provision.

500 F.3d at 384 (emphasis in the original). Notwithstanding the strong connection between Viacom's invalid release, which led the plaintiff to believe he had no basis to sue for age discrimination, and the plaintiff's failure to sue within the statute of limitations, the Court said that the plaintiff "has not demonstrated extraordinary circumstances that would justify equitable tolling." Id.

In contrast with <u>Ruehl</u>, the NBME did not actively mislead Mr. Katz, and did nothing to lull him into foregoing rights. Rather, the NBME provided accurate information to Mr. Katz in 2006 when it provided him with a summary of the basis for the denial of his request for accommodations. S.A. 388-389 (Doane letter to R. Katz). Accordingly, the Court should affirm the District Court's rejection of Mr. Katz's claim for equitable tolling of the statute of limitations based on so-called misleading information.[7]

---

[7]    Even if Mr. Katz's claim of disability discrimination regarding the 2006 denial of his request for accommodations were not clearly barred by the two-year statute of limitations, defendants note that Mr. Katz has provided no actual evidence that the NBME *wrongly* denied his request for accommodations in 2006, or acted in any kind of discriminatory manner. In her affidavit, Dr. Catherine Farmer states that the NBME Disability Services office handled Mr. Katz's request for accommodations in its usual manner (which she describes), and the NBME's

**B.    The District Court Correctly Found that the Statute of Limitations Barred Mr. Katz's Claim of Disability Discrimination Based Upon the Adoption of the Six-Attempt Limit, and _Delaware State College v. Ricks_ Provides No Relief.**

Mr. Katz acknowledges in the second amended complaint that "[i]n 2011 USMLE Organization announced that they will place an exam limit to the number of times examinees can take to pass a USMLE Step Exam. ..." S.A. 289 (Second Amended Complaint, ¶ 3).    A copy of the USMLE's August 25, 2011, announcement, along with a follow up announcement dated June 20 2012, are provided. S.A. 98-100.[8]

The USMLE implemented the six-attempt limit in two stages.  For those examinees who had not yet taken any Step or Step Component of the USMLE before January 1, 2012, the six-attempt limit became effective on that date.  However, the USMLE gave examinees like Mr. Katz, who had already taken one or more Steps or Step Components of the USMLE, an additional year, until

---

well-reasoned basis for denial is provided in her report and in Mr. Doane's letter. S.A. 383-386 and 388-389.  Moreover, according to Dr. Farmer, if the NBME received a request with the same documentation today, it would come to the same conclusion.  S.A. 187 (Farmer Affid.).  Mr. Katz's suggestion that the NBME wrongly denied his request for accommodations is further undermined by the April 4, 2014, letter that he provided from his own doctor saying that the 2005 diagnosis of ADHD, on which Mr. Katz had relied, was incorrect.  S.A. 396 (Letter from Dr. Samuel Garloff).

[8]    Notwithstanding his statement in Second Amended Complaint that the USMLE adopted the six-attempt limit in 2011, in his appeal brief Mr. Katz now says that the USMLE announced the change in 2012.  Brief for Appellant, p. 1.

January 1, 2013, before the six-attempt limit became effective for them.  S.A. 97-100 (USMLE Announcements).

Mr. Katz admitted in his sworn deposition testimony that he became aware of the six-attempt limit from the on-line USMLE bulletin around the time that the USMLE adopted it in 2011.  S.A. 264 (R. Katz depo., p. 216-217).  Mr. Katz registered for and took Step 1 three additional times after the USMLE adopted the six-attempt limit, and he failed each time.  S.A. 118, 286 (R. Katz USMLE history).

Since Mr. Katz had all of the relevant information about the adoption of the six-attempt limit by August 2011, and the six-attempt limit became effective for him on January 1, 2013, the statute of limitations for Mr. Katz to challenge the policy began to run no later than January 1, 2013, when he was barred from further registrations, and expired no later than December 31, 2014.  Mr. Katz filed this lawsuit on June 17, 2015, more than six months after the expiration of the applicable two-year statute of limitations.  Accordingly, the Court of Appeals should find that the two-year statute of limitations barred Mr. Katz's belated claim that the defendants' adoption of the six-attempt limit violated his rights under the ADA.

Mr. Katz now argues that the defendants' April 17, 2014, denial of his April 1, 2014, request for a waiver of the six-attempt limit, which Mr. Katz refers to as

an "appeal," was a "new discriminatory act" that triggered a new limitations period.  Under Delaware State College v. Ricks, however, such an argument is clearly wrong.

In Ricks, the defendant college informed the plaintiff, a professor, on June 26, 1974, that it denied his application for tenure and that he would be receiving a terminal one-year teaching contract.  Professor Ricks later filed an internal appeal, which the College also denied.  Finding Professor Ricks's subsequent lawsuit barred by the statute of limitations, the Supreme Court held that neither the denial of his internal appeal nor the termination of his employment at the end of the one-year terminal contract were new discriminatory acts that started a new limitations period.  Rather, the only relevant act that could constitute discrimination was the clearly communicated decision to deny tenure, not the "delayed, but inevitable consequences" of that act.  449 U.S. 250, 258.

Mr. Katz's argument that the denial of his so-called "appeal," in which he asked the USMLE to let him test again despite having exceeded the six-attempt limit, was a new discriminatory act, is untenable under Ricks.  The Sixth Circuit's decision in Soignier v. American Bd. of Plastic Surgery, supra, is directly on point.

In Soignier, the American Board of Plastic Surgery limited candidates to five attempts to pass the board certification examination, with all of the economic and other advantages that designation entails.  Before his fifth and final allowable

attempt to pass, Dr. Soignier requested a series of accommodations which the Board partially granted and partially denied. Dr. Soignier then tested with the limited set of accommodations that the Board granted, and he failed the exam again. Pertinent to this case, in addition to filing an internal appeal, Dr. Soignier asked the Board for permission to test again, notwithstanding that he had reached the five-attempt limit. The Board denied each of his requests, and Dr. Soignier later sued the Board.

In its opinion addressing the timeliness of Dr. Soignier's lawsuit, the Court of Appeals examined the Supreme Court's decision in <u>Ricks</u> and held that ***neither the denial of the internal appeal nor the request to test again beyond the five-attempt limit could mark the accrual of the statute of limitations because they were not "new discriminatory acts."*** Rather, like the denial of the grievance in <u>Ricks</u>, <u>supra</u>, such acts merely confirmed the Board's prior actions and were part of the same harm that accrued when Dr. Soignier tested with the limited accommodations the Board allowed:

> The law and reason support the district court's decision. *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), and its progeny in this circuit dictate that discovery of the original act of discrimination, *not* future confirmation of the injury or determination that the injury is unlawful, is when the statute of limitations begins to run. *Id.* at 258, 101 S.Ct. at 504.

* * * *

Under this law, the district court correctly ruled that the two-year statute of limitations began to run in November 1992 when the Board administered the oral exam for the fifth and final time. The complaint alleges that when Soignier completed the orals in November 1992, he was aware that the Board had conducted the test without the accommodations he allegedly deserved. Soignier claims that at that time, he was disabled and otherwise eligible to take the orals, but that the Board refused him reasonable accommodations for his disability. These are each of the elements of an ADA claim. …

**In May 1993, the Board refused to grant Soignier an extra attempt to pass the orals. In November 1994, the Board affirmed its November 1992 test-taking procedures and refused to void the 1992 results. "An employer's refusal to undo a discriminatory decision is not a fresh act of discrimination."** *Lever*, **979 F.2d at 556.** *Ricks* **and the cases delineated above so hold. The events of May 1993 and November 1994 are "future confirmation" or "consequential" of the surgeon's alleged injury. These actions do not constitute new, separate discriminatory acts actionable under the ADA. Rather, they are part of the harm that continued to flow to the surgeon as a result of the Board's administration of the November 1992 test. Accordingly, the district court properly concluded that the Board's actions after November 1992 did not constitute new acts of discrimination, and thus that the limitations period expired in November 1994, roughly six months before Soignier filed suit.**

92 F.3d 547, 551-552 (emphasis added).   Soignier and Ricks together leave no

doubt that the defendants' denial of Mr. Katz's request, in April 2014, to grant him

an additional (tenth) attempt to pass Step 1 cannot be considered a new

discriminatory act that would start a new limitations period.  Rather, the denial was

a confirmation of the harm that Mr. Katz suffered from the adoption of the six-

attempt limit, which barred him, as of January 1, 2013, from registering again for USMLE Step 1.

Mr. Katz tries to distinguish Ricks on p. 16-19 of his brief, arguing that unlike Professor Ricks and the plaintiffs in Chardon v. Fernandez, 454 U.S. 6 (1981), he did not receive a letter that specifically notified him of the effect of the six-attempt rule. "Katz received no formal warning or notification regarding the consequence of the 'six attempt limit rule' from defendants." Brief for Appellant, p. 18.

Mr. Katz's argument is completely undermined by the facts. First, unlike in Ricks, which involved direct notification to an individual professor that the College denied his bid for tenure, and Chardon, which involved notice to a limited group of non-tenured school administrators that their jobs would end on a specified date, the six-attempt limit was an across-the-board rule, applicable to all candidates, which the USMLE adopted and publicized on line. Mr. Katz admitted at his deposition that *he became aware of the rule when the USMLE adopted it in 2011*, S.A. 263-264 (Katz depo. at 213-218), and he clearly understood the "consequence" of the rule, namely that he would be barred from further registrations for Step 1 when the rule became effective for him on January 1, 2013. In fact, Mr. Katz refers in both the Second Amended Complaint and in his brief to the "make or break" nature of the six-attempt limit which he claims led to his

mental breakdown and one-week hospitalization in March of 2013. S.A. 298 (Second Amended Complaint, ¶ 42); Brief for Appellant, p. 6, 14.

Accordingly, Mr. Katz's attempt to distinguish <u>Ricks</u> by claiming that he did not receive specific notification from the defendants about the six-attempt limit, when in fact he was fully aware of its adoption and he even registered and took the exam three more times in the hope of finally passing, is nonsensical.

**C.    Even If Mr. Katz's Claim Regarding the Six-Attempt Limit Were Not Time-Barred, He Has Adduced No Evidence Whatsoever that Modifying the Six-Attempt Limit Would Be a Reasonable Accommodation.**

Defendants are subject to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12189, which covers agencies that provide testing for professional licensing.[9] S.A. 289 (Second Amended Complaint, ¶ 4). To prevail on a claim under Section 12189, a plaintiff must prove that he is disabled, that his request for accommodations is reasonable, and that the request has been denied. <u>Rawdin v. American Bd. of Pediatrics</u>, 985 F.Supp.2d 636, 647-648 (E.D. Pa. 2013), aff'd,

---

[9]    42 U.S.C. § 12189 provides:

Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

582 Fed.Appx. 114 (3d Cir. 2014); Mahmood v. Nat'l Board of Medical
Examiners, 2012 WL 2368462, at *4 (E.D. Pa. 2012).

In paragraph 4 of the second amended complaint, Mr. Katz asserts the
following with regard to the six-attempt limit:

> Katz sent an appeal to NBME Disability Services on April 1st
> 2014, requesting that they modify their "Six-attempt Limit
> Rule" as a reasonable accommodation under the ADA (Doe v.
> Samuel Merritt University, 921 F. Supp. 2d. 958 (N.D. Cal.
> 2013) Preliminary Injunction granted allowing student with a
> disability to take a podiatric licensing examination unlimited
> times as an accommodation to University's policy providing for
> a three exam limit.). The defendants denied this request.

S.A. 289 (Second Amended Complaint, ¶ 4).[10] Notwithstanding his assertion that

"modification" of the six-attempt limit would be a reasonable accommodation,

plaintiff has produced no evidence whatsoever to support that claim.[11]

---

[10]    The case that plaintiff cites in paragraph 4 of the second amended complaint,
Doe v. Samuel Merritt University, 921 F.Supp. 2d. 958 (N.D. Cal. 2013), is
inapposite. In that case, the Court granted a preliminary injunction in favor of a
podiatry student whom the defendant University dismissed after she failed Part 1
of her podiatric licensing examination three times. Notably, the Court said it was
restoring the status quo, in which the plaintiff was a student entitled to test. In
contrast, Mr. Katz has not been entitled to take USMLE Step 1 for several years.
Moreover, the Court in Doe considered it important to permit the plaintiff to test
while the material she learned in podiatric school was fresh in her mind, whereas in
this case, Mr. Katz has been out of medical school for more than 12 years. Finally,
the Court in Doe noted that it made no decision on the merits, so even if the
plaintiff passed the test that she took as a result of the preliminary injunction, the
court's final decision on the merits would determine whether a passing grade
would count, or whether the school's policy of dismissing a student for failing
three times would govern.

In contrast, the defendants produced an affidavit in support of summary judgment from Dr. Gerard F. Dillon, the Vice President for Licensure Programs at the NBME. Dr. Dillon explains in his affidavit the background of the six-attempt limit, including the USMLE Composite Committee's concern, which contributed to the adoption of the six-attempt limit, that in the absence of a limit, if given enough opportunities, some unqualified examinees might eventually pass just by chance a Step that they had repeatedly failed. S.A. 199 (Dillon Affid.).

Dr. Dillon further points out in his affidavit that providing an exception to the six-attempt limit just for disabled individuals would create an unfair advantage for them that could undermine the integrity of the examination. Id.[12]

In Rawdin v. American Bd. of Pediatrics, supra, a highly regarded pediatrician who had suffered a brain tumor and its recurrence repeatedly failed his specialty board's certification examination. Dr. Rawdin requested that the board alter the format of the certification examination as an accommodation, but the board refused. In a lawsuit against the board, the District Court – although

---

[11]   Mr. Katz quotes from a letter that his former attorney, Charles Weiner, wrote to the Pennsylvania Medical Board, in which Mr. Weiner said that allowing Mr. Katz to test again would be a reasonable accommodation. Brief for Appellant, p. 29. Obviously, a letter from Mr. Katz's lawyer is not evidence.

[12]   Mr. Katz testified that he believes that the six-attempt limit should be eliminated for anyone with disabilities, even if they receive other accommodations that are intended to even the playing field. S.A. 265-266 (R. Katz depo., p. 219-222). Mr. Katz's view is contrary to the law. See discussion of Rawdin, infra.

sympathetic to the plaintiff's health history and his talent as a physician – found

that plaintiff had not proved his proposed accommodation to be reasonable.[13]  The

Court noted that the ADA is intended to place disabled individuals on an even

footing, but not to give them a choice of accommodations or an advantage over

non-disabled persons:

> Even if Dr. Rawdin was disabled — which he is not — the Court also
> concludes he is not entitled to the accommodations he seeks. Disabled
> individuals are entitled to reasonable accommodations "that permit
> them to have access to and take a meaningful part in public services
> and public accommodations." *Powell v. Nat'l Bd. of Med. Exam'rs,*
> 364 F.3d 79, 85 (2d Cir.2004). ...  Reasonable accommodation is
> mandated in order to place people with disabilities on an even playing
> field, but "it does not authorize a preference for disabled people
> generally [,] ... [and it] does not extend to the provision of adjustments
> or modifications that are for the personal benefit of the individual with
> a disability." (Citations omitted).

985 F.Supp.2d 636, 653-654.

In this case, the only competent evidence regarding the reasonableness of the

six-attempt limit came from Dr. Dillon, who participated in the USMLE

Composite Committee's discussions leading to the six-attempt limit's adoption.

Dr. Dillon explained why the USMLE adopted the limit in 2011; that the limit was

consistent with the policies of the vast majority of state medical boards at the time;

---

[13]    Notably, the Court in <u>Rawdin</u> also found that notwithstanding plaintiff's
proof that his memory was weaker than other aspects of his cognitive functioning,
such deficit did not render him disabled because his memory still functioned within
normal limits.

and that a state medical board can, for any reason it deems appropriate, request an exception to the limit for an individual examinee. S.A. 197-200 (Dillon Affid.).

Significantly, Mr. Katz asked the Pennsylvania Medical Board to intercede on his behalf and request an exception to the six-attempt limit, but the Pennsylvania Board declined to do so. S.A. 175-181 (Minutes of meeting of the Pa. Board of Medicine, May 19, 2015).

Accordingly, even if Mr. Katz were not time-barred from pursuing a claim based on the adoption of the six-attempt limit, his failure to produce any evidence whatsoever that modification of the limit would be a reasonable accommodation is fatal to his claim.

**D.   The Court Should Affirm the Lower Court's Rejection of Mr. Katz's Argument that His Lawsuit Was Timely Under the Continuing Violation Doctrine.**

Mr. Katz appears to argue that under the continuing violations doctrine, the USMLE's April 2014 denial of his request for a waiver of the six-attempt limit was one in a series of discriminatory acts, making his June 2015 lawsuit timely, and encompassing prior acts, including the 2006 denial of his request for accommodations. Mr. Katz's attempt to link the denial of his request for accommodations in 2006, and the denial of his so-called appeal in 2014 (to waive the six-attempt limit) under the rubric of a continuing violation stretches that concept beyond the breaking point. As Magistrate Judge Saporito aptly noted, a

continuing violation claim requires "continual unlawful acts." S.A. 35 (Report and Recommendation, p. 18). There was nothing "continuing" about the two events Mr. Katz tries to connect, separated as they were by eight years. Even if they were "violations," which neither one was, they could not be a continuing violation.

The District Court relied upon Magistrate Judge Saporito's reasoning in rejecting Mr. Katz's continuing violation argument, and this Court should affirm. S.A. 40 (District Court opinion, p. 1). Judge Saporito explained that the NBME denied Mr. Katz's only request for accommodations in 2006. In 2011, the USMLE adopted the six-attempt limit, and it went into effect for Mr. Katz on January 1, 2013. Although Mr. Katz signed up for Step 1 three additional times between the adoption of the six-attempt limit in 2011 and January 1, 2013, when the rule barred him from further registrations, he chose not to request accommodations on any of those attempts. The Court correctly found that the USMLE's April 17, 2014, denial of Mr. Katz's request for a waiver of the six-attempt rule was not a new act of discrimination that could potentially constitute a continuing violation, but rather that it was "part of the harm that continued to flow to Katz as a result of the defendants' August 2011 adoption and implementation of the six-attempt limit." S.A. 36 (Report & Recommendation, p. 19). This Court should affirm that finding.

### E.   The Court Should Reject Mr. Katz's Tortured Attempt to Invoke the Discovery Rule.

Mr. Katz also argues that the discovery rule applies to his claim that the NBME violated the ADA in 2006 when it denied his request for accommodations. Mr. Katz argues that through the discovery process of this lawsuit he was "finally able to determine what transpired behind closed doors at the NBME Disability Services in 2005 - 2006. Prior to this Katz was in the dark."  Brief for Appellant, p. 30.

Mr. Katz's discovery rule argument is a rehash of his argument seeking equitable tolling based on alleged fraudulent concealment.  As discussed above, Mr. Katz may have learned in discovery *who* at the NBME reviewed his request for accommodations in 2005-2006, but he learned nothing new about *why* the NBME denied his request for accommodations.  To the contrary, Mr. Katz received a full explanation concerning the reasons the NBME denied his request for accommodations in the March 2006 letter from Abram Doane.   S.A. 388-389 (March 13, 2006, letter from A. Doane to R. Katz).

Mr. Katz cites numerous cases that address the discovery rule in different jurisdictions, including this Court's decision in Oshiver v. Levin, Fishbein, Sedran and Berman, 38 F.3d 1380 (3d Cir. 1994).  In Oshiver, the Court explained that a cause of action accrues when the plaintiff discovers that he has been injured.  It is

not necessary that the plaintiff understand the legal cause of the injury.  Id., 38

F.3d 1380, 1385-1386.   In Oshiver, where the plaintiff attorney filed an EEOC

charge for discriminatory discharge from employment, the actual injury component

was satisfied, and the cause of action accrued, when the law firm fired plaintiff,

notwithstanding that she did not discover, until months later, that she had been

replaced by a male attorney, leading her to suspect sex discrimination:

> With regard to Oshiver's claim of discriminatory discharge, we
> have no difficulty in concluding that for purposes of the
> discovery rule, Oshiver "discovered" the injury on April 10,
> 1990, the very date defendant law firm informed her of her
> discharge. Simply put, at the moment the law firm conveyed
> her dismissal to her, Oshiver became aware (1) that she had
> been injured, i.e., discharged, and (2) that this injury had been
> caused by another party's conduct. That Oshiver may have been
> deceived regarding the underlying motive behind her discharge
> is irrelevant for purposes of the discovery rule.

38 F.3d 1380, 1390-1391.

In this case, where Mr. Katz was aware in March 2006 that the NBME

denied his request for accommodations, a decision with which he disagreed, he

sustained and knew of his "injury," and the information he "discovered" during

this lawsuit provides no relief from the two-year statute of limitations that expired

in 2008.[14]

---

[14]   Oshiver arose in the context of a motion to dismiss the complaint.  Although
the Court of appeals found that the discovery rule provided no relief for plaintiff's
claim of discriminatory discharge, it did find that plaintiff had sufficiently invoked

## VIII.  CONCLUSION

For all the foregoing reasons, this Court should affirm the District Court's grant of summary judgment in favor of the National Board of Medical Examiners and the Federation of State Medical Boards.

Respectfully submitted,

/s/ Neil J. Hamburg
NEIL J. HAMBURG
MICHAEL E. SACKS
ID. Nos. 32175 and 39774
HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA  19103-1443
(215) 255-8590
hamburgnj@hamburg-golden.com
sacksme@hamburg-golden.com

Attorneys for the National Board of Medical Examiners and The Federation of State Medical Boards

Dated:  August 25, 2017

---

the doctrine of equitable tolling by alleging that the defendant law firm actively misled her to prevent her from learning that she had been replaced by a male attorney.  38 F.3d 1380, 1391-1392.  In contrast, in this case, after discovery, Mr. Katz was unable to adduce any evidence whatsoever that the defendants actively misled him in regard to the 2006 denial of his request for accommodations.

## COMBINED CERTIFICATIONS OF COUNSEL

I hereby certify that the foregoing brief complies with Fed. R. App. P. 32(a)(7)(B) because the text (excluding table of contents and other excludable items) contains 12,961 words. I further certify that the electronic version of the brief and the paper copies are identical. Finally, I certify that the brief has been scanned for viruses using Norton AntiVirus for Mac 7.4.1 and that it contains no viruses.

Neil J. Hamburg, Esquire and Michael E. Sacks, Esquire are both members in good standing of the bar of the United States Court of Appeals for the Third Circuit.


/s/ Michael E. Sacks
MICHAEL E. SACKS

## <u>CERTIFICATE OF SERVICE</u>

I, Michael E. Sacks, hereby certify that the Brief for the Appellees has been filed with the Clerk of Court and will be available for viewing and downloading from the Court's Electronic Case Filing System.  I further certify that a copy is being served by regular mail on August 25, 2017, on the following:

> Richard Katz
> 3364 Parker Lane
> East Stroudsburg, PA  18301
> *Pro Se*


> /s/ Michael E. Sacks
> MICHAEL E. SACKS