IN THE
# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

CA. NO. 17-1329

**RICHARD KATZ, M.D.**

*Appellant.*

v.

**THE NATIONAL BOARD OF MEDICAL EXAMINERS
(NBME)**

**and**

**THE FEDERATION OF STATE MEDICAL BOARDS
(FSMB)**

*Appellees.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(Robert D. Mariani, Senior Judge)
Case No. 3-15-cv-01187

REPLY BRIEF OF APPELLANT, RICHARD KATZ, M.D.

RICHARD KATZ, M.D.
3364 Parker Lane
East Stroudsburg, Pennsylvania 18301
570.517.9314 (telephone)
*pro se*

Dated: September 7, 2017

# TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................................................i

TABLE OF AUTHORITIES ............................................................... iii

I. INTRODUCTION ......................................................................... 1

II. STATEMENT OF THE ISSUES.....................................................................................11

III. Dr. Katz Controverts NBME et al. Undisputed Material Facts

A. Facts About the Defendants, the NBME and FSMB. ......................................12

B. Facts Concerning Dr. Katz's Background, His 2005-

2006 NBME Request for Accommodations, and His USMLE

Testing ......................................................................................14

IV. ARGUMENT ................................................................. 21

A. The Statute of Limitations DOES NOT Bar Dr. Katz's Claims Under the ADA and Rehabilitation Act Because he has a long history of mental impairment substantially limiting major life activities that NBME neglected to accommodate in 2005 to 2006 and in 2014. Federal anti-discrimination law, places him in a protected class……………………………………………………………………………….21

B. The NBME et al. Denial of Dr. Katz's Request for A Waiver from The Six-Attempt Limit Was an Independent Act of Discrimination for These Reasons. …………………………………………………………………...................25

C. The Court Should Reject the Lower Court's Review of Dr. Katz's Argument that His Lawsuit Was NOT Timely Under the Continuing Violation Doctrine…………………………………………………………………...27

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32 AND 3D CIR. LAR 32.1(c) ......................................................................30

CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS............................31

CERTIFICATE OF VIRUS CHECK.......................................................................32

CERTIFICATE OF SERVICE …………………………………………………33

APPELLANT'S LIST OF EXHIBITS DESCRIPTION AND NOTES ………….34

# TABLE OF CITATIONS

**Cases**                                                                    **Page**

Berry v. Board of Supervisors of Louisiana State University…………………  29

Bodner v. Banque Paribas……………………………………………………………28

Del. State College. v. Ricks, 449 U.S. 250, 260-61 (1980) …………………  11

Doe v. Samuel Merritt University……………………………………………………4

Janet Lever, v. Northwestern University, et al.,

979 F.2d 552 (7th Cir. 1992) …………………………………………….... 25

Kach v. Hose, 589 F.3d 626 (3d Cir. 2009) …………………………………  2

Kelly v. Burns, 415 F.3d 558, 561 (6th Cir. 2005) ……………………………  22

Lake v. Arnold 589 F.3d at 644………………………………………………  26

NAT'L RAILROAD PASSENGER CORPORATION v. MORGAN.,………………...  30

REEB V. ECONOMIC OPPORTUNITY ATLANTA, INC

516 F.2d ………………………………………………………………… 28

Sedran & Berman, 38 F.3d 1380, 1385-1386 (3rd Cir. 1994) …………………27

SEVIER v. TURNER 742
F.2d…………………………………………………………………………… 23

Soignier v. Am. Bd. of Plastic Surgery,

92 F.3d 547 (7th Cir. 1996) …………………………………………………  23

Steere v. George Washington University ………………………………………... 23

West v. Phila. Elec. Co., 45 F.3d 744, 754–55 (3d Cir. 1995) ……………….....30

**Statutes:**

42 U.S.C. §§ 12181-1218924 ………………………………………………..24

# I. INTRODUCTION:

Appellant Dr. Richard Katz, pro se (Dr. Katz), filed his Appellant Opening Brief and Appendix timely on May 25, 2017. On May 30, 2017, the Appellees NBME and FSMB filed a 60-day extension to file their Appellee Brief. On June 2, 2017, the Court granted NBME and FSMB's motion, until August 25, 2017 giving them an additional two months on-top of the 30-day due date to prepare a response and develop a legal strategy.[1] On June 5, 2017 Dr. Katz submitted his 'OBJECTION AND OPPOSITION TO APPELLEES' STREAMLINED REQUEST FOR EXTENSION OF TIME TO FILE OPENING BRIEF.' On August 28, 2017, the Court issued an order stating that they received the Appellee Brief and Supplemental Appendix from NBME, FSMB but the submission *did not comply* with the Court requirements: Form of Appendix- The following aspect(s) of the appendix was noncompliant:

. Sealed Supplemental Appendix Volume II was not filed electronically.

. Sealed Supplemental Appendix was filed without a motion for leave to file under seal.

After difficulties with the Third Circuit procedural guidelines NBME et al.:

---

[1]. Dr. Katz proceeds on original record, he refers in his Reply Brief to documents in Middle District Court - Case 3:15-cv-01187-RDM Document 131 Filed 07/15/16 Pages 35 to 36. Table entitled "PLAINTIFF'S LIST OF EXHIBITS DESCRIPTION AND NOTES" This table of EXHIBITS is listed in Appendix.

(i) misstate the record and attempt to *minimize* Dr. Katz's undisputed chronology of neurological and psychiatric impairments since childhood as documented by his LICENSED caregivers (i.e. "*supposed* ADHD, anxiety, and depression"; "First, Mr. Katz's mental problems do not satisfy the rigorous standard required to qualify as *"extraordinary circumstances,"* so-as-to equitably toll the statute of limitations under Kach v. Hose, 589 F.3d 626 (3d Cir. 2009), *for any period after 2006*.")

**yet no evaluator at the NBME Office of Disability Services in Philadelphia holds any valid state license to practice psychology or to legally make clinical decisions on *"behalf"* of candidates with mental disabilities.[2] How than does the NBME affirm that Dr. Katz's condition does not arise as "extraordinary circumstances" for any period after 2006 under Kach v. Hose?  Who at the NBME is qualified to clinically render such a determination?   Who from the NBME clinically evaluated Dr. Katz personally?**  Dr. Katz clearly outlines the *error* of the lower courts' grouping of "duress" in the same category as "mental illness" in his Appellant Opening Brief, yet NBME responds to this pivotal point in their reply as if Dr. Katz has some substantive issue with

---

[2] For a Psychologist to be licensed in the US he/she must obtain a doctoral degree in psychology. Accrue supervised hours — ranging from 1,500 to 6,000 hours, depending on the state. Pass the Examination for Professional Practice in Psychology (EPPP). Pass a jurisprudence exam, and receive approval by a state licensing board that requirements have been met.  *No evaluator at the NBME has achieved these credentials.*

his analysis (pg. 34 ¶ 2 Appellee Brief) accusing him of *"not reading it*

*properly."*   NBME et al. resorts to this ongoing pattern of "authority"

'*when their back is against the wall'*, attempting to illogically sway the

Court from a distinction that the Third Circuit themselves determined.

Dr. Katz refers the Court to NBME's deposition of Dr. Katz pg. 224.

```
10          Q.    So, just for the record, I
11    disagree with your reading of that.  I
12    don't think that that's accurate, but we
13    don't have to argue that today.  That's
14    not relevant to or necessary for
15    discussion today.
16          A.    You're questioning my
17    interpretation of that?
18          Q.    Yeah.  I think it's an
19    incorrect interpretation.  But again, we
20    don't have to argue about who is right or
21    who's wrong.  We don't have to try to
22    resolve that right now.
```

The Questions on lines 10 and 18 page 224 of deposition, were posed by

Counsel for NBME et al.  to Dr. Katz.  Dr. Katz responds on line 16 about

NBME Counsel "questioning his interpretation" of *Doe v. Samuel Merritt*

*University.*[3]   Only to have his interpretation corroborated by Attorney

---

[3] In footnote 10 of their Appellee Brief NBME states that Doe v. Samuel Merritt
University, 921 F. Supp. 2d. 958 (N.D. Cal. 2013) is "inapposite". According to

Charles Weiner (below) who is an expert in disability law and ADA guidelines (Case 3:15-cv-01187-RDM Document 1-1 Filed 06/17/15 Pg. 1 - 2)

Furthermore, the State Board of Medicine should consider that the request for this waiver is itself an accommodation under the ADA. Mr. Katz's request to modify six attempt policy, is a reasonable accommodation and does not substantially modify the State Board's or the USMLE's standards. *See e.g. Doe v. Samuel Merritt University,* 921 F.Supp. 2d. 958 (N.D. Cal. 2013) (Preliminary Injunction granted allowing student with a disability to take a podiatric licensing examination unlimited times as an accommodation to University's policy providing for a three exam limit).

Based on the foregoing, along with the documentation furnished by Mr. Katz, we urge the State Board of Medicine to waive the six-attempt limit. Thank you for your courtesy and consideration.

Very truly yours,

/s/

Charles Weiner

---

Attorney Charles Weiner's analysis, NBME's conclusion is wrong. NBME states that the "Court in Doe considered it important to permit the plaintiff to test while the material she learned in podiatric school was fresh in her mind, whereas in this case, Mr. Katz has been out of medical school for more than 12 years."
*Dr. Katz continuously studies the basic and clinical sciences and the material remains fresh in his head.*

(ii) The NBME references findings of fact t h a t  a r e  N O T  grounded in reality. They employ their typical tangled bureaucratic tactics [4], l i k e  the Pennsylvania State Board of Medicine's so-called "*refusal*" of Dr. Katz's request for a waiver of the 'Six Attempt Limit Rule." **The reality being that the Pennsylvania State Board of Medicine deemed Dr. Katz's petition as "*premature*" and are awaiting the decision of this Appeal.** "Mr. Katz sued the NBME and its USMLE partner, the Federation of State Medical Boards (FSMB), in June 2015, approximately two and one-half years after the six-attempt limit became effective for him." Dr. Katz sued NBME et. al. fifteen months after receiving a denial of his APPEAL by the USMLE Secretariat Office who ignored his newly diagnosed bipolar disorder.[5]



[4] Another tangled bureaucratic NBME policy states: "The six-attempt limit applies to all examinees, without regard to disability status. If an examinee applies for and receives accommodations for his or her first attempt at USMLE Step 1, for example, then he or she would be entitled to the same accommodations on up to six attempts at Step 1. If an examinee does not apply for or is found not entitled to accommodations, he or she still has up to six attempts to take the examination, and can reapply for testing accommodations each time if denied. S.A. 199 (Dillon Affid.)."

Does this confusing quagmire of a policy seem reasonable to someone with mental disabilities? It essentially states that the disabled person above should be subjected to the same treatment as the non-disabled person who is already at the top of the stairwell. A FLAWED DEFECTIVE POLICY TO THOSE WITH MENTAL DISABILITIES!

**Dr. Katz filed this lawsuit under the two-year (24 mos.) statute of limitations and his filing is timely**.

(iii) The NBME moves to manipulate this Court that this Appellant Appeal is based on Dr. Katz's ADA and Rehabilitation Act claims ONLY, attempting to exonerate themselves of liability of Dr. Katz's justified State law claims as clearly outlined in his Second Amended Complaint.  **<u>The NBME must be held liable for twelve wasted years and many layers of damage caused to Dr. Katz and to his family.</u>**

The NBME ineptitude in 2005 to 2006 and again in 2014 with the denial of Dr. Katz's request for accommodation of extended exam time and a request of a waiver of their faulty 'Six-Attempt Limit Rule' to people with mental disabilities, *an accommodation itself under the ADA.*

Dr. Katz and his wife were forced to move into his mother's basement in 2011 due to financial hardship, his wife has had repeated miscarriages during the last seven years for *no obvious medical reason*.[6]  Because it is a known fact that women worry more than men overall about finances it has made for high degree of stress and marital discord.  With Dr. Katz always maintaining "this is not my fault!"

These are just a few disclosures albeit personal, of the ramifications of NBME's

---

[6]  Scientists from Tufts University have identified a suspected chain reaction detailing exactly how stress hormones and other chemicals wreak havoc on the uterus and fetus.
http://www.webmd.com/infertility-and-reproduction/news/20030605/how-stress-causes-miscarriage#1

negligent behavior and how it has trickled down to Dr. Katz's family.  Dr. Katz's short circuited vocational pursuit and resultant financial difficulties all leading to a mental breakdown requiring a week long inpatient hospitalization at Pocono Medical Center in March of 2013 where he was evaluated for suicidality.  Yet the NBME employs a strategy of *minimizing severity,* but the chronological record speaks for itself.

(iv) NBME further fails to provide any legal basis for sustaining the district court's defective analysis.  NBME's misleading assertions are a thinly- disguised attempt to avoid the legal consequences of a faulty "Six Attempt Limit Rule" to people with mental disabilities who were shorted a medical career because of the NBME's inept disability evaluation practices and staff.  **Furthermore, no direct notice was ever sent to Dr. Katz personally by NBME notifying him of the fact that he was terminated from registering for the USMLE Step 1.  This is unheard of in the EEOC legal literature for Title VII cases, which the Court will undoubtedly turn to for guidance.**

(v.) The NBME makes a feeble attempt to discredit Dr. Katz's scientific and academic inclination.  Career-changers, like Dr. Katz, are one of many "nontraditional" students attending Medical School throughout the US and abroad. Other students labeled as "nontraditional" may have a disability or may have served in the military.  In Dr. Katz's instance, he was a nontraditional student with disabilities.  NBME paints a picture of discrimination against such

so-called "nontraditional" students in their Appellee Brief.

Cognitive and emotional decrements set in with the stress of heavier academic coursework causing Dr. Katz to get off to a rocky during pre-med. The need for accommodations was based on a physician's evaluation that in addition to an anxiety disorder, he suffered from Attention Deficit Disorder (ADD). These findings were based on a thorough intake, this report was provided to SUNY College at Old Westbury Office of Student Services (Case 3:15-cv-01187-RDM Document 131 Filed 07/15/16 EXHIBIT 8). Dr. Katz required special accommodations for tests, he accessed support groups of peers that shared similar concerns at SUNY Old Westbury at the Office of Disability Services.

**Once his disabilities were accommodated Dr. Katz completed his pre-med coursework with honors (*Ibid.* EXHIBIT 7).** Because Dr. Katz had a different vocational trajectory prior to pre-med has no bearing on this case, especially considering his scientific accomplishments (below).  Dr. Katz's "nontraditional" student status and accomplishments should be commended, NOT chastised "Plaintiff scored 400 on the math SAT, and 425 on the verbal" without exam accommodations for his disabilities (bipolar disorder, first diagnosed in March 2013 - anxiety with specific phobia – (medical boards) diagnosed in 2015) testimony that a problem has always existed an obvious mismatch exists between a high IQ and his performance on standardized exams (*ibid.* EXHIBIT 6 & EXHIBIT 27). The NBME states that "Plaintiff got a "C" in a math course

and withdrew from a physics course when he attended Nassau Community

College in 1996." Dr. Katz received a "C" in "PRECALCULUS" (one of the

hardest college level math classes) during an abbreviated summer session while

working full-time. Plaintiff withdrew from physics because he required more

math background in preparation for physics. Hence the rationale for enrolling

in Precalculus. **In the fall of 1996 Plaintiff enrolled in Physics at SUNY Old**

**Westbury and received a "B" in the lecture and an "A" in the lab (*Ibid.***

***EXHIBIT* 57).** Dr. Katz receiving a "C" in Precalculus during the short summer

session of 1996 has no bearing on this case. What is relevant are his

accomplishments in the medical sciences as outlined below (*Ibid.* EXHIBIT 56).

**Dr. Richard Katz's Scientific Accomplishments and Accolades:**

1. Dean's List for pre-medical sciences SUNY Old Westbury (EXHIBIT 7).
2. Post-doctoral Research Fellowship - Weill Cornell Institute of Geriatric Psychiatry. NIMH Institutional Research Training Grant (T32), the Nathan S. Kline Institute for Psychiatric Research, Orangeburg, New York (2005-2007).
3. University of Pittsburgh NIMH - Summer Research Institute (SRI) July 2006.
4. Major facilitator of RO1 Multi-Institutional Grant awarded to Weill Cornell Institute of Geriatric Psychiatry by NIMH.

**Dr. Richard Katz's Contribution to Medical Science - Peered Reviewed Journal Publications: (EXHIBIT 56)**

1. Alexopoulos GS, Kanellopoulos D, Murphy CF, Gunning-Dixon F, **Katz R**, Heo M: Placebo Response: Does It Predict Antidepressant Response of Geriatric Depression? Am J Geriatr Psychiatry.2007 Feb15 (2): 149-58.

2. Alexopoulos GS, Kanellopoulos D, Murphy CF, Gunning-Dixon F, **Katz R**, Foxe JJ: Electrophysiological Responses to an Emotional Go/No-Go Test and Remission of Geriatric Depression. Neuroreport. 2007 Feb 12:18(3): 217-21.

9

3. De Sanctis PF, **Katz R**, Wylie GR, Alexopoulos GS, Foxe JJ: Enhancement and bi-lateralization of early sensory processing in the ventral visual stream may be a feature of normal aging: A high-density electrical mapping study. Neurobiology of Aging, doi:10.1016/j. neurobiolaging.2007.03.021

4. **Katz R**, De Sanctis PF, Sehatpour P, Mahoney, Gomez MR, Murphy CF, Alexopoulos GS, Foxe JJ. Cognitive Control in Late-Life Depression: Response inhibition deficits and dysfunction of the Anterior Cingulate Cortex. The American Journal of Geriatric Psychiatry, 11 March 2010 doi:10.1097/JGP.0b013e3181d695f2.

Accordingly, due to the district court's clear error, abuse of discretion, and de novo or plenary, judgment should be reversed and entered in favor of Dr. Richard Katz on all counts of his Second Amended Complaint as the governing standard of review clearly reveals error in ruling, order, and judgment.[7]

---

[7] See District Court Case 3:15-cv-01187-RDM Document 200 Filed 12/19/16 Page 1 of 21

## II. STATEMENT OF THE ISSUES

### Dr. Katz Adopts the Third Circuit's Suggested Statement of Issues:

1. Whether appellees' denial of appellant's request for a waiver from the six-attempt limit was an independent act of discrimination that could trigger the commencement of a new limitations period, see Del. State College. v. Ricks, 449 U.S. 250, 260-61 (1980)?

   Dr. Katz's Suggested Answer: Yes.

2. Whether the district court was correct to conclude that appellant's mental health status could not equitably toll the limitations period, see Kach v. Hose. 589 f. 3d 626, 645 (3d cir. 2009)?

   Dr. Katz's Suggested Answer: No.

### NBME et. al. Reworded Statement of Issue(s):

1. Did the District Court correctly find that the statute of limitations barred each of Mr. Katz's claims under the Americans with Disabilities Act and the Rehabilitation Act?

   NBME et al. Suggested Answer: Yes.

2. NBME et al. directly Omits Legal Question #2 Suggested by the Third Circuit, as an incorporation into their legal argument.

### III. Dr. Katz Controverts NBME et al.  Undisputed Material Facts.

### A. Facts About the Defendants NBME and FSMB.

1. NBME and FSMB OWN and SPONSOR the United States Medical Licensing Examination® ("USMLE")[8] (Case 3:15-cv-01187-RDM Document 131 Filed 07/15/16 - EXHIBIT 1)

2. Medical errors are the third cause of death in the U.S., after heart disease and cancer, causing 250,000 deaths every year, indicating that patient safety efforts fall far short. The defendants safe and effective patient care argument based on very recent research statistically holds no merit (*Ibid.* EXHIBIT 2)

3. The NBME convenes a "reference group" once a year including broader representation from medical schools and student organizations. Many past members of this group report that "their collective concerns have not been seriously addressed

---

[8] The USMLE is a grueling one-day long examination divided into eight 60-minute blocks administered in one 8-hour testing session. Questions bombard the examinee, some over a paragraph long and examinee is given a minute per question to mentally process. USMLE *two-step* (also called double-jump) questions require several cognitive steps to arrive at a correct answer. Finding the correct answer requires examinee to formulate a proper diagnosis and then select the most appropriate pharmacologic treatment for example. Note that you get no credit for the intermediate step of diagnosis. The correct answer is found only by reasoning all the way through to the treatment. If the examinee suffers from executive dysfunction and processing speed problems, as is the case with Katz, the examinee will not stand a chance under regular exam conditions. The clock will beat him. Extended exam time as explained by the ADA and DOJ needs to be granted in order to level the playing field (see Settlement Agreement between United States of America and National Board of Medical Examiners DJ# 20216181 as EXHIBIT 17.

by NBME." (*Ibid*. EXHIBIT 3)

4. William C. McGaghie, Ph.D., is Professor of Medical Education and Expert in Medical Education at the Feinberg School of Medicine at Northwestern University.[9] Dr. McGaghie has concluded that the USMLE Step 1, Step 2 CK, and Step 2 CS are NOT reliable measures of Clinical skills acquisition. Gerard F. Dillon of the NBME attempts to challenge Dr. McGaghie in a letter to the editor and he falls by the wayside (*Ibid*. EXHIBIT 4).

5. Organizations like the AMA have "expressed concerns about implementation of the USMLE Step II CS and its use for purpose of medical licensure." "AMA's concerns are 2-fold: (1) the USMLE Step II CS may not allow remediation before residency for medical students who fail the test, (2) the USMLE Step II CS should not be used for medical licensure because it does not accomplish its stated goal— adequately protecting the public from harm. The NBME has failed to provide evidence that their exam will improve clinical skills or patient safety beyond the level of current medical school based assessments." (*Ibid*. EXHIBIT 3)

---

[9] http://www.feinberg.northwestern.edu/faculty-profiles/az/profile.html?xid=15815

**B. Facts Concerning Dr. Katz's Background, His 2005-2006 Request for Accommodations, and His USMLE Testing.**

1. Dr. Katz is a 2004 medical school graduate with a long-history of disabilities. He suffered from epilepsy and had speech impairment as a child, affective disorder and anxiety during adolescence and adulthood, receiving formal and informal accommodations throughout his educational history. In 2005, he applied for exam accommodations on the USMLE, his disabilities prevented him from keeping up with the time constraints of the USMLE under regular exam conditions (3:15-cv-01187-RDM Document 131 Filed 07/15/16 - EXHIBIT 5)

2. NBME denied Dr. Katz's disability application in 2006 despite submissions from his LICENSED psychiatrist and psychologists who evaluated his disabilities under the guidelines of the Americans with Disabilities Act (ADA) on numerous occasions. Below are the determined diagnoses in 2006 (*Ibid.* EXHIBIT 6):

• ADHD,
• Depression, Dysthymia
• Anxiety,
• Adjustment Disorder with Mixed Anxiety and Depressed Mood
• Panic Disorder without Agoraphobia


3. Catherine Farmer. a so-called "External Consultant" and "EXPERT" for NBME in 2006 (now acting NBME Compliance Officer) was the main evaluator of Dr. Katz's file. Farmer became a Psy.D. in 2004 and to date has NEVER ACHIEVED OR ACQUIRED A Psy.D. LICENSE in the state of Pennsylvania or any other U.S.

state to practice psychology (*Ibid.* EXHIBIT 14 & EXHIBIT 24).

4. Based on Farmer's Resume she was employed by NBME in various capacities from 1993 to 2016 and due to her internal affiliation was NOT an objective "external consultant." She was NOT an "Expert" as she only graduated as a Psy.D. in 2004. One year later she was evaluating Dr. Katz's documentation for accommodations for the USMLE. **There is no such thing as an EXPERT Psy.D. after one year! Especially one that holds no license in their respective field! (*Ibid.* EXHIBIT 13 & EXHIBIT 24)**

5. The UNLICENSED Farmer spent just four hours reviewing Dr. Katz's reports from two LICENSED psychiatrists and two LICENSED psychologists, that personally examined him on numerous occasions.  Farmer recommended Katz's application be *denied* for accommodations despite ever meeting or evaluating him personally or ever speaking directly to his caregivers. (*Ibid.* EXHIBIT 15 & EXHIBIT 24)

6. On February 2, 2006, Farmer stated in her letter to Mr. J. Abram Doane, M.S. (the Compliance Officer of NBME at the time) "As you know, I have not met or examined Mr. Katz. My recommendation is based upon my review of the request and supporting documentation submitted by and on *behalf* of Mr. Katz." (*Ibid.* EXHIBIT 24)

7. J. Abram Doane (no longer employed by NBME) stated in his NBME denial letter

to Dr. Katz dated March 13, 2006: "We consulted 'EXPERT**S**' in the field**S** of Learning Disability and Mental Disorder**S** to assist us in reviewing the documentation."[10]    But there were no "EXPERT(S)" just one UNLICENSED inexperienced, Psy.D. of one year by the name of Catherine Farmer (*Ibid.* EXHIBIT 16)

8. Prior to the ADAAA the NBME had a penchant for denying accommodations for on the basis that they were not diagnosed at an earlier age or that they performed well academically. In passing the ADAAA, Congress targeted these testing entities noting in the Congressional Record: 2 Cong Rec 8296 (Sept 17, 2008).

9. Based on Doane's LinkedIn profile, he states he was "Manager of Disability/ADA Compliance for NBME from July 2003 through July 2006."   Doane states he: "Reviewed documentation and reports in support of student requests for services, and was; decision-maker for accommodations for NBME testing programs and state medical licensing boards." But Doane only has a master's degree, and to date holds no PROFESSIONAL LICENSE and was not qualified to make any such determination on "*behalf*" of disability applicants requests for accommodations (Case 3:15-cv-01187-RDM Document 131 Filed 07/15/16 - EXHIBIT 35).

10. After his role of Manager of Disability/ADA Compliance and *'decision-maker'* for NBME Doane became a Consultant for NBME Office of General Counsel on

---

[10] Plural emphasis added.

July 2006 until leaving the NBME organization in July 2008. Doane in his March 13, 2006 letter made a false representation stating that Katz's documentation was given to "EXPERT**S**" in the field**S** of Learning Disability and Mental Disorder**S** to assist NBME Disability Services in reviewing the documentation." (*Ibid.* EXHIBIT 16 & EXHIBIT 35)

11. Doane *misled* Dr. Katz expecting he would believe his story as true and move on without the much-needed accommodation that he required for success. Doane knew that Katz would never get to see Farmer's review denying his accommodation as this review was never made available to Katz despite his request (*Ibid.* EXHIBIT 36).

12. Dr. Katz sent a notarized request to NBME Disability Services on January 27, 2014 requesting his documentation from 2005-2006. On February 4th, 2014 Catherine Farmer replied by mail stating: "The NBME does not copy or return the comments of an examinees' disability file or send copies to examinees or third parties." (Ibid. EXHIBIT 33).

13. Pursuant to the ADAAA and its regulatory guidance, NBME et al. are now mandated to give deference to Dr. Katz's LICENSED evaluating psychiatrists and psychologists and their recommendations to provide accommodations. The guidelines to the regulations by the ADAAA, provide that testing entities should accept without further inquiry, "documentation provided by a qualified professional who has made an individualized assessment of an applicant, that supports the need for modifications, accommodations or aid requested." (*Ibid.* EXHIBIT 34

28 C.F.R. pg 36, App A, at 795).

15. In January of 2012, NBME et al. implemented an attempt limit to the number of times examinees can take to pass any Step of the USMLE, this is currently limited to six attempts. The previous policy permitted examinees to take the USMLE Exams as many times as they needed until passing. In creating this so called 'Six Attempt Limit Rule' NBME made NO concession in their policy development for people with documented mental disabilities under the ADA. (*Ibid.* EXHIBIT 19 & 34).

16. In November of 2013 Katz exceeded his attempt limit on USMLE Step 1, failing by six points under regular exam conditions as NBME never granted the accommodations he sorely needed for success. The defendants then barred him from registering for the USMLE Step 1 (*Ibid.* EXHIBIT 22).

17. Katz sent an APPEAL to defendants on April 1, 2014 explaining recent changes to his psychiatric diagnosis, new information confirming NBME made a wrongful denial of testing accommodations in 2005-2006. Katz also informed NBME that their 'Six Attempt Limit Rule' is a barrier to people with documented mental disabilities (*Ibid.* EXHIBIT 22 & EXHIBIT 31).

18. The defendants replied to this APPEAL with a *denial* on April 17, 2014 never acknowledging Katz's caregiver reports, or the recent changes to his diagnosis and treatment. The defendants even refused to acknowledge that Katz submitted an APPEAL referring to it as "your letter and supporting documents." (*Ibid.* EXHIBIT

22 & EXHIBIT 30)

19. Dr. Katz has remaining attempts for USMLE Step 2 Clinical Skills (CS), USMLE Step 2 Clinical Knowledge (CK) and USMLE Step 3 under regular exam conditions.  However, he is barred from registering for USMLE Step 1 because of the "Six Attempt Limit". The NBME hindered Dr. Katz's licensure as a practicing physician with a faulty administrative barrier policy to individuals with mental disabilities. (*Ibid.* EXHIBIT 22 EXHIBIT 30 EXHIBIT 31).

20. NBME et al. subjected Dr. Katz to repeated studying, and subsequent failures, having to take the USMLE Exams under regular exam conditions, much like a swimmer attempting to swim against a riptide, this took its toll on his mental and overall health. With the 'make or break' 'Six Attempt Limit Rule' Dr. Katz had a mental breakdown in March of 2013 and had to be hospitalized for one week in the Behavioral Health Unit at Pocono Medical Center (*Ibid.* EXHIBIT 59).

21. Katz currently suffers stress related conditions, including but not limited to, bipolar disorder, anxiety disorder, panic disorder, specific phobia associated with test-taking, two functional gastrointestinal disorders associated with stress, gastroesophageal reflux disease (GERD) and irritable bowel syndrome (IBS), chronic frequent exacerbation of asthma, migraine headaches, elevated blood sugar approaching a prediabetic state, sleep disturbance, and a chronic skin condition (*Ibid.* EXHIBIT 27, EXHIBIT 28, EXHIBIT 38).

22. The Disability Rights Section of the U.S. Department of Justice (Justice) is investigating NBME's demands for unnecessary, redundant documentation, burdensome and expensive repeated professional evaluations, irrelevant evaluative testing unrelated to the ability to demonstrate one's knowledge on the USMLE. Katz's complaint is an "aggregate" to a larger investigation (*Ibid.* EXHIBIT 17 & EXHIBIT 29).

23. Frederick Romberg, a Yale Medical Student with Dyslexia waited a year for Justice to settle with NBME for his disability DJ# 20216-181. On February 23, 2011, NBME entered into a two-year settlement agreement with Justice resolving a complaint by Romberg who was twice refused the accommodations he requested because

of his disability (dyslexia) (*Ibid.* EXHIBIT 17).

24. The defendants agreed to provide reasonable accommodations on the USMLE to people with disabilities granting Romberg double standard testing time, a separate testing area to take the test. By March 2013 the agreement with Justice was over. Katz sent his APPEAL to the defendants on April 1, 2014. Katz suffered far worse repercussions due to defendants' negligence, he suffered economically, physically, and mentally (*Ibid.* EXHIIT 17, EXHIBIT 25, EXHIBIT 26, EXHIBIT 27 & EXHIBIT 28)

# IV. ARGUMENT:

**A. The Statute of Limitations DOES NOT Bar Dr. Katz's Claims Under the ADA and Rehabilitation Act Because he has a long history of mental impairment substantially limiting major life activities that NBME neglected to Accommodate in 2005 to 2006 and in 2014. Federal anti-discrimination law, places him in a protected class.**

Dr. Katz has a long history of problems sleeping, sitting for long periods, reading, and concentrating.  Dr. Katz did not find out his diagnosis of bipolar disorder until March of 2013, he contacted the defendants on April 1, 2014 notifying them of changes to his diagnosis via an APPEAL. The defendants responded on April 17, 2014 never acknowledging the changes to his diagnosis and denying his request for accommodations. This tolls the statute of limitations period to April 17, 2016. **Katz's filing was timely as he initiated this lawsuit against defendants on June 17, 2015.** Attorney David Ferleger (*Ibid.* EXHIBIT 52) is a University of Pennsylvania Law School Professor, a pioneer in Civil Rights advocacy with extensive experience litigating against testing agencies, he is a leader of the Disability Rights Bar Association (DRBA), a founding member of the Academy of Court Appointed Masters (ACAM), and on the publications committee for its Bench Book for judges.  Attorney Ferleger spent considerable time analyzing Katz's disability claims pro bono in October of 2015. His October 8th, 2015 commentary regarding statute of limitations and the 'six attempt limit rule' as it pertains to Dr. Katz is stated below:

21

"The 6 Attempt Rule. The applicability to you of the 6 attempt rule was denied by USMLE April 17, 2014. The statute of limitations on that claim would require that it be made by April, 2016, but you have asserted it in your lawsuit."                    - David Ferleger   October 8, 2015

The Appellee's response on April 17, 2014 made Dr. Katz aware of injuries which are the basis of his action and the need to protect his rights.  This was the motivation for filing suit before April 17, 2016.  Unlike the adverse decision in Ricks, Katz's injuries had not yet occurred until receiving the April 17, 2014 response by Appellee's.  **Dr. Katz's situation is far more involved than say an applicant who exceeded six attempts on the USMLE who has no disability as federal anti-discrimination law, places him in a *protected class*.  This is an important distinction that the lower court and the NBME failed to acknowledge as they would like to group federally protected classes in the same category as unprotected classes "The six-attempt limit applies to all examinees, without regard to disability status…."  This is where NBME et al. fails, and where they are breaking federal law.**

Dr. Katz claims that the Appellee's response resulted in an injury on April 17, 2014

See Kelly v. Burns, 415 F.3d 558, 561 (6th Cir. 2005)[11] "We conclude that the alleged

---

[11] Dr. Ralph E. Kelly, after being forced to resign as Commissioner of the Kentucky Juvenile Justice Cabinet, brought suit pursuant to 42 U.S.C. § 1983, claiming that his due process rights were violated when the Kentucky Personnel Board denied him a hearing to clear his name. The district court dismissed Kelly's suit, finding that it was barred by the applicable statute of limitations. For the reasons set forth below, we VACATE the judgment of the district court and REMAND the case for further proceedings consistent with this opinion.

constitutional injury occurred on the date that the name-clearing hearing was denied, which was on April 14, 2003. Only as of that date did Kelly "know [] or ha[ve] reason to know of the injury which is the basis of his action." SEVIER v. TURNER 742 F.2d at 273."

The NBME et al. cite Soignier v. Am. Bd. of Plastic Surgery, 92 F.3d 547 (7th Cir. 1996) stating that "Federal courts in Pennsylvania have consistently followed Soignier and Disabled in Action in applying the two-year statute of limitations for personal injury actions to ADA/RA cases."

**Soignier's disability (auditory processing disability, and dyslexia) <u>was acknowledged and well accommodated for by the American Board of Plastic Surgery</u>.** In Katz's case, the defendants never acknowledged his 2013 diagnosis of bipolar disorder and despite an APPEAL in April of 2014 he was never granted accommodations.

In Steere v. George Washington University the plaintiff was not seeking a second chance but a "first chance to successfully handle his disability." The court rejected the school's argument that the plaintiff's later request for accommodations amounted to asking for a "second chance" and was therefore unreasonable. The court stated: "The second chance doctrine, in-so-far as it is a doctrine, works to deny already accommodated and at-fault plaintiffs from winning an endless string of new accommodations after each failure. *The doctrine does not apply to plaintiffs who, through no fault of their own, have not yet had a chance to get the modifications they*

*need." Here, the plaintiff was not seeking a second chance but a "first chance to*
*successfully handle his disability."*

In Soignier v. Am. Bd. of Plastic Surgery a plastic surgeon claimed disabilities
prevented him from passing an oral board examination. *On his fifth attempt the*
*American Board of Plastic Surgery gave him extra time to complete the test and*
*allowed him to use demonstrative aids. He still did not pass.* Soignier pursued an
internal appeal of this failure and the denial of his requested accommodations, which
the Board denied. He then sued alleging the accommodations offered to him failed to
satisfy Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181-12189
("ADA").  The district court found Soignier discovered his injury in November 1992.
Because Soignier's claim accrued in November 1992, but he did not file his complaint
in federal court until May 1995, the district court dismissed as time-barred pursuant to
Fed. R. Civ. P. 12.

Katz differs from Soignier because the defendants committed TWO distinct and
different wrongs. With the 'NEW" wrong occurring on April 17, 2014 with the denial
of Dr. Katz's APPEAL of the 'Six-Attempt Limit Rule' and their refusal to
acknowledge his 2013 diagnosis of bipolar disorder.

NBME et al. cites Janet Lever, Plaintiff-appellant, v. Northwestern University, et al.,
Defendants-appellees, 979 F.2d 552 (7th Cir. 1992)[12]. Janet Lever filed with the EEOC

---

[12] It should be noted that District Court does not cite this case as a precedent in their
Feb. 7, 2017 Ruling.  Case 3:15-cv-01187-RDM Document 205 Filed 02/07/17 Pgs.

on June 15, 1981, after a Committee on Promotions and Tenure fell one vote short of the two-thirds needed to recommend tenure. *Lever charged that Northwestern discriminated against her because she was female.* Lever had 300 days from the discriminatory act to file a charge. 42 U.S.C. § 2000e-5(e). The charge is timely if measured from the Provost's letter, but not if measured from the Dean's. For eleven years, the parties were locked in combat about which letter started the time.

Dr. Katz contends with mental impairments that have only recently been mitigated through medication and psychotherapy. **Dr. Katz's April 1, 2014 APPEAL to NBME wasn't only an APPEAL it was also an important disclosure to make the NBME aware of recent changes to his psychiatric condition.** Therefore, Dr. Katz's situation differs greatly from the determination made in Lever v. Northwestern University, et al.

As stated by the U.S. Court of Appeals for the Seventh Circuit - 979 F.2d 552 (7th Cir. 1992) Argued Oct. 23, 1992. Decided Nov. 9, 1992:

**"Equitable tolling, ……. comes into play "if despite all due diligence [the employee] is unable to obtain vital information bearing on the existence of his claim." Id. at 451. Nothing in Northwestern's avenues of redress kept "vital information"** out of Lever's hands; if the Dean's decision is best explained by her sex rather than her scholarship, that was equally apparent on May 5, 1980, and January 15, 1981."

The above was not the case in Katz v. NBME et al. Vital information pertaining to Dr. Katz's 2005-2006 disability evaluation was shrouded from him by NBME et al.

---

1 to 3

**B. The NBME et al. Denial of Dr. Katz's Request for A Waiver from The Six-Attempt Limit is an Independent Act of Discrimination for These Reasons:**

(a) Dr. Katz suffers from multiple psychiatric comorbidities including bipolar disorder and specific phobia associated with test-taking (i.e. medical boards). The bipolar disorder was first diagnosed in March of 2013 specific phobia associated with test-taking (i.e. medical boards) diagnosis determined October of 2015 (*Ibid.* EXHIBIT 27). This is an independent act of discrimination because there was a change to his psychiatric diagnosis (bipolar disorder) that was disclosed and brought to the NBME's attention in his April 1st, 2014 APPEAL. NBME et al. cite *Lake v. Arnold 589 F.3d at 644*, and "requiring a plaintiff to show a judgment of incompetence or institutionalization. Mr. Katz has presented nothing like the extreme situation that existed in Lake." The attending psychiatrist at Pocono Medical stated in her March 9, 2013 note; **Richard Katz "has thoughts of worthlessness, hopelessness, <u>judgment is impaired.</u>" "<u>Insight is poor!</u>" (EXHIBIT 59).** Again, Dr. Katz asks; **"Who at the NBME is clinically LICENSED and qualified to determine the severity of his mental impairments?"**

(b) The disregard of Dr. Katz's mental disabilities by NBME together with their NEW 'six attempt limit rule' constitutes a NEW discriminatory act beginning April 17, 2014 because Dr. Katz is a person with disabilities and a member of a protected class under federal Civil Rights law.

(c) The defendants *misled* Katz in 2006 about the identity and actual credentials of

their so-called "EXPERT(S)" refusing to provide his disability application file when requested on January 17th, 2014, questionably the same so-called "EXPERT" was in receipt of his request.

(d) Applying a time bar in a case where the plaintiff had no opportunity to raise his claim within the time-period may be unfair and undermine the remedial purposes of the civil rights law.

(e) The "polestar of the discovery rule is not the plaintiff's actual knowledge of injury but rather whether the injury was known or through the exercise of reasonable diligence knowable to the plaintiff". Carrion, 2006 WL 3526748 at *2-3, quoting Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385-1386 (3rd Cir. 1994).   In Oshiver, a gender discrimination case, the Third Circuit stated; "allegations essentially charge that (1) the firm actively misled her (Oshiver) regarding the reason for her discharge, and (2) the critical fact that would have alerted a reasonable person to the alleged unlawful discrimination only became known to Oshiver on May 21, 1991. We find that these allegations, taken as true and giving Oshiver the benefit of all reasonable inferences, are sufficient to *activate the doctrine of equitable tolling.* See Reeb, 516 F.2d at 930."

Through discovery Dr. Katz determined what occurred at the NBME Disability Services in 2005 - 2006.  Prior to this Dr. Katz was shrouded by an internally regulated NBME that thrives on opacity.

**C. The Court Should Reject the Lower Court's Review of Dr. Katz's Argument that His Lawsuit Was NOT Timely Under the Continuing Violation Doctrine.**

The potency of the "continuing violations doctrine" is best observed in *Bodner v. Banque Paribas.*  Bodner sued in the late 1990s to recover property allegedly misappropriated by the Nazis and their accomplices during World War II.  The passage of several decades between these seizures and the institution of the plaintiffs' lawsuit seemed to dictate dismissal of the putative class' claims pursuant to the applicable statute of limitations. Much to the defendants' surprise and chagrin, **the Bodner court determined that if the plaintiffs' allegations were true, the statute of limitations had not yet even begun to run on their claims.  Instead, the defendants' allegedly ongoing refusal to return the plaintiffs' property would represent a "continuing violation" of international law that persisted up through the time of suit.  The continuing violations doctrine thus breathed new life into claims that otherwise might have accrued and expired more than a half-century earlier.[13]**

In some situations, continuing misconduct by a defendant will justify the aggregation or parsing of its misbehavior, with the effect of rescuing a plaintiff's claim or claims from the statute of limitations.   NBME's statement that "Mr. Katz's attempt to link the denial of his request for accommodations in 2006, and the denial of his so-called appeal in 2014 (to waive the six-attempt limit) under the rubric of a continuing

---

[13] Oct 1, 2015 - Kyle Graham, The Continuing. Violations Doctrinal, 43 GONZ. L. REV. 271, 302–03 (2008).

violation stretches that

concept beyond the breaking point" *is clearly wrong considering the half-century Bodner precedent.*

In West v. Philadelphia Electric Company, the Third Circuit adopted the Fifth Circuit's approach in Berry v. Board of Supervisors of Louisiana State University for ascertaining the existence of a continuing violation. 45 F.3d 744, 755 (3d Cir. 1995) (citing 715 F.2d 971, 981 (5th Cir. 1983)).

To allege a continuing violation, the plaintiff must show all acts which constitute the claim are part of the same unlawful practice and that at least one act falls within the applicable limitations period. See Morgan, 536 U.S. at 122; see also West v. Phila. Elec. Co., 45 F.3d 744, 754–55 (3d Cir. 1995).

## <u>CONCLUSION</u>

For the foregoing reasons, as well as those stated in the Opening Brief of Appellant, Dr. Richard Katz, respectfully requests that this Court reverse the judgment of the district court and direct the entry of judgment for Dr. Katz.

Respectfully submitted,

/s/ Richard Katz, MD
3364 Parker Lane
East Stroudsburg, Pennsylvania 18301
570.517.9314 (telephone)
*Pro se*

Dated:       September 7, 2017

**CERTIFICATE OF COMPLIANCE**
**WITH FED. R. APP. P. 32 AND 3D CIR. LAR 32.1(c)**

Dr. Richard Katz certifies as follows:

1. This brief complies with the page limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains e x a c t l y 6,500 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).



2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally-spaced typeface using Microsoft Word 2003 in 14-point Times New Roman font.

3. Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

 Date:  September 7, 2017

/s/ Richard Katz, MD

Richard Katz, MD

## **CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS**

Dr. Richard Katz certifies as follows:

1. The text of the electronic and hard copy forms of this brief are identical.

2. Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.


Date:  September 7, 2017

/s/ Richard Katz, M.D.
Richard Katz, M.D.

## CERTIFICATE OF VIRUS CHECK

Dr. Richard Katz certifies as follows:

1.     I caused the electronic version of this brief to be checked for computer viruses using Kaspersky Lab 2016.  No computer virus was found.

2.     Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.


Date:  September 7, 2017

/s/ Richard Katz, M.D.          
      Richard Katz, M.D.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on September 7, 2017, the foregoing Reply Brief of Appellant Dr. Richard Katz was sent electronically through to:

NEIL J. HAMBURG
MICHAEL E. SACKS
ID. Nos. 32175 and 39774
HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA 19103-1443
(215) 255-8590
hamburgnj@hamburg-golden.com
sacksme@hamburg-golden.com
Attorneys for the National Board of Medical
Examiners and The Federation of State
Medical Boards

On the same date, an electronic copy of the Reply Brief of Appellant Dr. Richard Katz was electronically transmitted to the Clerk of the United States Court of Appeals for the Third Circuit.

An additional four copies of the Reply Brief of Appellant Dr. Richard Katz was sent by United States Postal Service (USPS) Priority Mail to:

> Office of the Clerk
> United States Court of Appeals
> for the Third Circuit
> 21400 U.S. Courthouse
> 601 Market Street
> Philadelphia, Pennsylvania 19106-1790

> /s/ Richard Katz, M.D.
> Richard Katz, M.D.

33

| EXHIBIT NUMBER | PLAINTIFF'S LIST OF EXHIBITS DESCRIPTION AND NOTES |
|---|---|
| 1 | Proof of Ownership of USMLE Program |
| 2 | Medical Error- Third Leading Cause of Death in the U.S. |
| 3 | A Critical Review of Standardized Patient Examinations as Part of the USMLE |
| 4 | The Validity Argument About Using the USMLE |
| 5 | Plaintiffs' Personal Statement to Defendants dated June 27, 2005 |
| 6 | Plaintiffs' Psychological and Psychiatric Documentation and Reports 2005 - 2006 |
| 7 | SUNY Old Westbury Honor Student Pre-Med Letter dated June 9, 1997 |
| 8 | Letters #1 and #2 from William Lupardo to Defendants 06/24/2005 and 03/31/2014 |
| 9 | First Psychological Report St. John's Psych. Center dated Jan 12, 2003 |
| 10 | Ubaldo Leli, MD diagnosis of Adjustment Disorder w/ Depressed Mood 12/29/1999 |
| 11 | Proof of Accommodations Received in Medical School |
| 12 | Proof of Defendants Request for Excessive Documentation in 2005-2006 |
| 13 | Catherine Farmer's Resume |
| 14 | PA Department of State Proof of NO Licensure for Catherine Farmer 2006 to Current |
| 15 | Catherine Farmer Case Review Hours - Assigned 01/23/2006 |
| 16 | J. Abram Doane Denial of Accommodations Letter dated 03/13/2006 |
| 17 | Department of Justice & NBME Settlement DJ# 202-16-181 dated 02/23/2011 |
| 18 | Defendants Response to Amended Complaint Regarding 'Six Attempt Limit' |
| 19 | Plaintiff's Interrogatory Item #8 to Defendants |
| 20 | Affidavit of Richard Katz – An Experimental Field Trial – Material Fact 5/20/2016 |
| 21 | 12/18,/2013, Telephone Conversation - NBME Disability Services Representative |
| 22 | Plaintiff's First Appeal to Defendants regarding 'Six Attempt Limit' 04/01/2014 |
| 23 | Waiver of 'Six Attempt Limit' State Board of Medicine by Rep. David Parker |
| 24 | Catherine Farmer to J. Abram Doane Denial of Accommodations 2/2/2006 |
| 25 | Plaintiff's Financials from 2006 to 2011 an Attempt to Mitigate Discrimination |
| 26 | Plaintiff's Job Applications in an Attempt to Mitigate Discrimination |
| 27 | The Aaron Center Recent Psychological Report dated 07/21-10/27/2015 |
| 28 | Plaintiff's Medical Reports dating from 10/24- 11/11/2015 |
| 29 | Correspondence Senator Pat Toomey and Department of Justice 07/2014- 10/2015 |
| 30 | Amy Bueno Office of USMLE Secretariat Denial Letter Dated 04/17/2014 |
| 31 | Plaintiff's Second Appeal to Defendants Regarding 'Six Attempt Limit' 04/20/2014 |
| 32 | ADAAA Congressional Record 06/25/2008 |
| 33 | Catherine Farmer's 01/27/2014 Denial of Plaintiff's Request for His Records 2005-06 |

| EXHIBIT NUMBER | PLAINTIFF'S LIST OF EXHIBITS DESCRIPTION AND NOTES |
|---|---|
| 34 | The ADA and Professional Licensure |
| 35 | J. Abran Doane's Current LinkedIn Profile |
| 36 | The Compliance Officer and Misleading Conduct |
| 37 | Sabree v. United Brotherhood of Carpenters & Jonders of America, Local No. 33 |
| 38 | Plaintiff's Psychiatric Reports ReDCo |
| 39 | Defendants' Announcement 'Six Attempt Limit' |
| 40 | Plaintiff - Attorney's Contacted – Appoinment of Counsel |
| 41 | GAO Report to Congressional Requesters |
| 42 | Brian M. Matayoshi, Ph.D. Bio |
| 43 | ERRATA Corrections |
| 44 | Defendants' Admission Items #20-21 |
| 45 | Catherine Farmer No Publication History on PubMed Database |
| 46 | Rush v. NBME 268 F. Supp. 2D 673 (N.D. Tex 2003) |
| 47 | NBME Guideline for Test Accommodations – Defendants' Website |
| 48 | PA Department of State No License for J. Abram Doane or Gregory E. Baker |
| 49 | Cognitive Problems Associated With Epilepsy |
| 50 | Comorbidity of ADHD and Bipolar Disorder |
| 51 | Rawdin v. The American Board of Pediatrics  11/06/2013 |
| 52 | Attorney David Ferleger Resume |
| 53 | Plaintiff and Maria L. Fuentes' Communications 2005 |
| 54 | Gregory Baker's Communications with Plaintiff's Caregivers |
| 55 | Plaintiff Example of Compensation Visual Study Aid as a Medical Student |
| 56 | Plaintiffs' Publication - Accolades, Med School Preceptor Evaluations And Letters |
| 57 | Plaintiffs' Pre-Med Transcripts |
| 58 | Anxiety and Depression Can affect Attention and Cause Cognitive Deficits |
| 59 | Inpatient Psychiatric Hospitalization |