No. 17-1329

_____

# United States Court of Appeals
# for the Third Circuit

_____

Richard Katz, MD,

Appellant,

v.

National Board of Medical Examiners,

Federation of State Medical Boards

_____

APPEAL FROM DECISION OF THE UNITED STATES

DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____

APPELLANTS' PETITION FOR PANEL REHEARING

AND REHEARING EN BANC


Richard Katz, MD

Redacted

Redacted

Redacted

*Pro se*

1

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................................3

LOCAL RULE 35.1 STATEMENT.........................................................................................................4

INTRODUCTION ..................................................................................................................................5

STATEMENT OF FACTS ......................................................................................................................7

ARGUMENT..........................................................................................................................................10

I. WHY CAN THE STATUTE OF LIMITATIONS BE TOLLED IN THE CIRCUIT COURTS FOR A STIGMATIZED PUBLIC EMPLOYEE AS IN KELLY V. BURNS BUT NOT FOR A STIGMATIZED PERSON WITH MENTAL DISABILITIES UNDER THE ADA SUBJECT TO DISCRIMINATION? SHOULD THERE NOT BE UNIFORMITY BETWEEN THE CIRCUIT COURTS?.......................................................................................................................................10 -15

II. THE PANEL ADOPTS THE DISTRICT COURTS' RESTRICTIVE ANALYSIS OF THE ADA THAT CANNOT BE RATIONALIZED AGAINST ANY PRINCIPLED MEANS OF STATUTORY INTERPRETATION……………………………………………………………………………….15-17

III. THE PANEL'S DECISION CUTS AGAINST THE REMEDIAL PURPOSE OF THE ADA AND MAKES THE THIRD CIRCUIT AN OUTLIER....................................................................... 18

CONCLUSION...................................................................................................................... 19

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

CERTIFICATE OF VIRUS CHECK

EXHIBIT A: PANEL OPINION

# TABLE OF AUTHORITIES

**Cases**

Bartlett v. New York State Board of Law Examiners, No.  97-9162 (2nd Cir. Sept 14, 1998)....... 4

Beck v. Univ. of Wisconsin Board of Regents, 75 F .3d 1130 (7th Cir. 1996) ............................ 10

Chakonas v. City of Chicago, 42 F. 3d 1132, 1135 (7th Cir. 1994);............................................. 11

Delaware State Coll. v. Ricks, 449 U.S. 250 (1980) ………………………………………………………………………………………………14

Disabled in Action of Pa. v. Southeastern Pa. Transp. Auth., 539 F.3d 199 (3rd Cir. 2008) .......6

Jenkins v. National Board of Medical Examiners, No. 08-5371 (6th Cir. Feb. 11, 2009), ............ 4

Kelly v. Burns, 415 F.3d 558, 561 (6th Cir. 2005) ....................................................................... 11

Kessler v. Board of Regents, 738 F.2d 751 (6th Cir. 1984), ........................................................ 13

Lake v. Arnold, 232 F.3d 360, 370 n.9 (3d Cir. 2000): .................................................................. 8

Pell v. E.I. DuPont de Nemours & Co., 539 F.3d 292, n305 (3d Cir. 2008). 15

Rush v. National Bd. of Medical Examiners, 268 F. Supp. 2d 673 (N.D. Tex. 2003) ................... 4

Sevier v. Turner 742 F.2d at 273 .................................................................................................... 12

Sutton v. United Air Lines, Inc., No. 97-1943 (S. Ct., June 22,1999)................................................16

West v. Phila. Elec. Co., 45 F.3d 744, 754–55 (3d Cir. 1995) ..................................................... 10

## Statutes

42 U.S.C. § 12181.............................................................................................................................5

42 U.S.C. § 12182(a) .......................................................................................................................14

42 U.S.C. § 1983.............................................................................................................................. 12

29 U.S.C. § 794................................................................................................................................. 5

## **LOCAL RULE 35.1 STATEMENT**

I express a belief, of the following:

1.      The panel decision is contrary to decisions of the United States Circuit Courts and the Supreme Court.  Consideration by the full Court is necessary to secure and maintain uniformity of decisions. The panel's decision is contrary to the decisions in these cases:

Rush v. National Bd. of Medical Examiners, 268 F. Supp. 2d 673 (N.D. Tex. 2003), Jenkins v. National Board of Medical Examiners, No. 08-5371 (6th Cir. Feb. 11, 2009), Bartlett v. New York State Board of Law Examiners, No.  97-9162 (2nd Cir. Sept 14, 1998), Doe v. Samuel Merritt University 921 F. Supp. 2d 958 (N.D. Cal. 2013), Ralph E. Kelly, v. Ishmon F. Burks, Jr. et al., 415 F.3d 558 (6th Cir. 2005).

2.      This appeal involves the following question of exceptional importance: what standard of proof must a plaintiff with a plausible Title III ADA claim satisfy to survive summary judgment when seeking to prove discrimination?


/s/ Richard Katz, MD

Richard Katz, MD

*Pro se*

## **INTRODUCTION**

En banc review is necessary because the panels' decision eviscerates the protections of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 and § 504 of The Rehabilitation Act of 1973, [AS AMENDED, 29 U.S.C. § 794]. The panel issues a restrictive summary judgment standard for plaintiffs with a documented history of disabilities that substantially limits major life activities, to prove discrimination against a high-stakes testing agencies like NBME and FSMB. The panel incorrectly issued a narrowed "more likely than not" standard to evaluate a preponderance of evidence at summary judgement. Under that standard, the plaintiff must prove it is "more likely than not" that the defendants discriminated against him because of mental illness while simultaneously arguing discrepancies in interpretations of the Equitable Principles and Continuing Violations Doctrine (Id.).

As explained by the dissent, the panel adopted an approach that appears to shut the door on accepting a preponderance of evidence and "ramp[s] up a plaintiff's burden of proof." The panel justifies its stance by referencing Disabled in Action of Pa. (DIA) v Se. Pa. Trasp. Auth., 539 F .3d 199, 208 (3rd Cir. 2008). In doing so, the panel misconstrues that on August 19, 2008, the U.S. Court of Appeals for Third Circuit REVERSED the District Court and remanded the case. Disabled in Action of Pa. v. Southeastern Pa. Transp. Auth., 539 F.3d 199 (3rd Cir. 2008). THE THIRD CIRCUIT HELD THAT THE ACCRUAL DATE OF A DISCRIMINATION

CLAIM DEPENDS ON WHEN THE DISCRIMINATION OCCURRED. DIA's claims were therefore NOT barred by statute of limitations. On September 11, 2009, the U.S. District Court Eastern District of Pennsylvania. granted DIA's motion for Summary Judgment.

The panel's restrictive "more likely than not" standard contradicts the decisions in Rush v. National Bd. of Medical Examiners, 268 F. Supp. 2d 673 (N.D. Tex. 2003), Jenkins v. National Board of Medical Examiners, No. 08-5371 (6th Cir. Feb. 11, 2009), Bartlett v. New York State Board of Law Examiners, No. 97-9162 (2nd Cir. Sept 14, 1998), Doe v. Samuel Merritt University 921 F. Supp. 2d 958 (N.D. Cal. 2013), and Kelly, v. Burks, Jr. et al., 415 F.3d 558 (6th Cir. 2005). En banc review is therefore necessary to make the decisions of the Third Circuit in this area consistent with the decisions of the other Courts of Appeals and The Supreme Court.

## STATEMENT OF FACTS

This case involves as the panel phrases it, *"a sham"* (opinion pg. 2 #3) by NBME Disability Services, deception and false misleading statements regarding so-called "EXPERTS" in the *"fields of disability and mental disorders"* in the 2006 denial of Dr. Katz's request for accommodations of his USMLE exams. It also involves the NBME implementation of a *'six-attempt limit'* for taking USMLE exams, itself a violation, under Title III of the ADA for people with disabilities (see Bartlett v. New York State Board of Law Examiners, No. 97-9162 (2nd Cir. Sept 14, 1998) and Doe v. Samuel Merritt University 921 F. Supp. 2d 958 (N.D. Cal. 2013). Finally, this case involves the NBME denial of Dr. Katz's 2014 waiver of the *"six-attempt limit",* whereby the NBME ignored changes to Dr. Katz's medical diagnosis, derailing him to the Pennsylvania State Board of Medicine, who deemed his request "premature" in March of 2015.[1] In June of 2015, Dr. Katz filed a pro se action against the NBME and FSMB parallel to an ongoing investigation by the United States Department of Justice Civil Rights Division (Nabina Sinha, Trial Attorney). Section 504 of the Rehabilitation Act specifically prohibits discrimination against individuals with disabilities in programs receiving federal

---

[1] The Pennsylvania State Board of Medicine currently awaits the outcome of this appeal. Dr. Katz's request for a waiver of the six-attempt limit rule was never denied as the panel states in their dissent.

funds.[2] The NBME and FSMB are recipients of Federal Financial Assistance, yet they discriminate against people with mental disabilities.

In Summary Judgement all a plaintiff like Dr. Katz needs to prove under the direct method of proof is evidence which establishes that it was *'more likely than not'* that the defendants based their personnel decision upon improper discrimination.[3]

In January of 2014 Dr. Katz requested his 2005-2006 disability file from NBME Disability Services. The NBME refused, and the documentation remained shrouded in secrecy until the discovery phase of this lawsuit.[4] The panel does not address such substantive facts in their dissent. Moreover, the panel only tangentially addresses the fact that Dr. Katz was diagnosed with Bipolar Disorder in March of 2013 (Opinion pg. 9 No. 3; pg. 10 No. 1) while making no distinction between

---

[2] See 29 U.S.C. § 794 (2006) Section 504 of the Rehabilitation Act of 1973 going beyond physical access to provide that "[n]o otherwise qualified individual with a disability in the United States . . . shall . . . be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or . . . conducted by any Executive agency."

[3] Wright v. Southland Corp., 197 F.3d 1287, 1292-1293 (11th Cir. 1999).

[4] Dr. Katz sent a notarized request to NBME Disability Services on January 27, b2014 requesting his documentation from 2005-2006 per attorney recommendation. On February 4, 2014 Catherine Farmer the current NBME Director of Disability Services and ADA Compliance Officer for Testing Programs and the same NBME external evaluator "EXPERT" who reviewed Katz's disability application in 2005-2006 replied by mail stating; "The NBME does not copy or return the comments of an examinees' disability file or send copies to examinees or third parties (EXHIBIT 33)."

*mental illness* vs. *duress* as a legal precedent in their analysis of *Kach vs. Hose, 589 F .3d 626, 645 (3d Cir. 2009).*  The panel also does not address the March 9th, 2013 assessment of Dr. Katz's deteriorated mental condition due to NBME's negligence, by the attending psychiatrist at Pocono Medical Center when citing *Lake v. Arnold,* 232 F.3d 360, 370 n.9 (3d Cir. 2000):

 *"Richard Katz has thoughts of worthlessness, hopelessness, judgment is impaired."* *"Insight is poor!"* (EXHIBIT 59 - No 3-15-cv-01187).

Dr. Katz provides a preponderance of evidence in the original District Court record, identifying false misleading statements generated by NBME that were seemingly ignored by the District and Appellate Courts alike.

*"We consulted 'EXPERTS' in the fields of Learning Disability and Mental Disorders to assist us in reviewing the documentation." (EXHIBIT 16)*

The disregard of Dr. Katz's history of seizures, speech impairment and mental disabilities (as opposed to only *duress* in *Kach*) together with the implementation of a faulty 'six-attempt limit rule' constitutes an ongoing discriminatory act to all people with documented mental disabilities trying to pass a high stakes licensing exam like the USMLE with *no accommodations* within six attempts.  Dr. Katz has a history of documented disabilities with problems sleeping, learning, reading, concentrating, and thinking, and is a member of a protected class under Title III of the ADA.  Yet, despite his request, Dr. Katz to date, has never received a single accommodation for

his disabilities on any of his USMLE exams by NBME Disability Services. Therefore, his previous attempts at any iteration of the USMLE, no matter how many in number, is moot if one does not consider the necessity of accommodations for success in the disabled.

## ARGUMENT

I.    **WHY CAN THE STATUTE OF LIMITATIONS BE TOLLED IN THE CIRCUIT COURTS FOR A STIGMATIZED PUBLIC EMPLOYEE AS IN KELLY V. BURNS BUT NOT FOR A STIGMATIZED PERSON WITH MENTAL DISABILITIES UNDER THE ADA SUBJECT TO DISCRIMINATION?  SHOULD THERE NOT BE UNIFORMITY BETWEEN THE CIRCUIT COURTS?**

Pursuant to the ADAAA and its regulatory guidance, NBME are mandated to give deference to Dr. Katz's LICENSED evaluating psychiatrists and psychologists and their recommendations to provide accommodations. The guidelines to the regulations by the ADAAA, provide that testing entities should accept without further inquiry, "documentation provided by a qualified professional who has made an individualized assessment of an applicant, that supports the need for modifications, accommodations or aid requested." (EXHIBIT 34 and 28 C.F.R. pg. 36, App A, at 795).

The panel's decision warrants *en banc* review because it misconstrues, *continuing violation*, where all acts which constitute Dr. Katz's claim are part of the same

NBME unlawful practices, with at least one act falling within the applicable limitations period of April 17, 2014 (see Morgan, 536 U.S. at 122; see also West v. Phila. Elec. Co., 45 F.3d 744, 754–55 (3d Cir. 1995)).[5]  Moreover, in Beck v. Univ. of Wisconsin Board of Regents, 75 F .3d 1130 (7th Cir. 1996), the court ruled that the responsibility for requesting an accommodation rests with an ADA plaintiff, but that an *"interactive process"* is necessary to determine what if any accommodations are reasonable and will be provided. Id at 1135-37.

Equitable tolling applies when a plaintiff, despite the exercise of due diligence and through no fault of his own, cannot determine information essential to bringing a complaint.  Thelen, 64 F. 3d at 268 (citing Chakonas v. City of Chicago, 42 F. 3d 1132, 1135 (7th Cir. 1994); Cada, 920 F .2d at 451).

Dr. Katz asserts that the NBME denial of his appeal where he discloses the March 2013 diagnosis of Bipolar Disorder resulted in an injury on April 17, 2014.   Dr. Katz cites Kelly v. Burns, 415 F.3d 558, 561 (6th Cir. 2005) in his September 7th, 2017 Reply Brief to the Third Circuit as a legal precedent.  The Kelly precedent went unnoticed by the panel as they adopted the Middle District Courts faulty logic for a

---

[5] In NATIONAL RAILROAD PASSENGER CORPORATION v. MORGAN. The Ninth Circuit reversed, holding that a plaintiff may sue on claims that would ordinarily be time barred so long as they either are "sufficiently related" to incidents that fall within the statutory period or are part of a systematic policy or practice of discrimination that took place, at least in part, within the period.

quick disposal of this case albeit with a stipulation that the panel's opinion does *"not constitute binding precedent."* (17-1329 pg. 1 disposition 9/25/2018).

In Kelly v. Burns, 415 F.3d 558, 561 (6th Cir. 2005) the Sixth Circuit determined that the district court erred in concluding that Kelly's claim was time-barred by the one-year statute of limitations *"the alleged constitutional injury occurred on the date that the name-clearing hearing was denied. Only as of that date did Kelly "know [] or ha[ve] reason to know of the injury which is the basis of his action."* SEVIER v. TURNER 742 F.2d at 273."[6]

Dr. Ralph E. Kelly, after being forced to resign as Commissioner of the Kentucky Juvenile Justice Cabinet, sued pursuant to 42 U.S.C. § 1983, claiming that his due process rights were violated when the Kentucky Personnel Board denied him a hearing to clear his name.  Kelly was hired as the Commissioner of the Kentucky Juvenile Justice Cabinet in 1996. In September of 2002, Kelly took an unrelated trip to New York City accompanied by two 21-year old men.  During the trip, one of the men called the local police and told them that Kelly had reached into the man's underpants and groped him. Kelly was arrested later that day and charged with two misdemeanor counts of unwanted contact of a sexual nature.

---

[6] "The statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action. A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence.")

The Sixth Circuit concluded:

> Kelly was terminated on September 25, 2002, but his request for a name-clearing hearing was not denied until April 14, 2003…………..The ruling that the statute of limitations on Kelly's claim began to run on September 25, 2002 is therefore erroneous…………. The defendants, however, argue that "claims concerning termination of employees all accrue from the date of such termination," thus making September 25, 2002 the appropriate date for statute of-limitations purposes. **But this argument overlooks the thrust of Kelly's contention, which is not that he was terminated wrongfully, but that the denial of the name-clearing hearing violated his constitutional rights.** The district court's reliance on Kessler v. Board of Regents, 738 F.2d 751 (6th Cir. 1984), is therefore misplaced. In Kessler, this court held that "[w]hen allegations of discrimination involve a termination from employment, the critical date is the date of termination; the existence of a grievance procedure does not change the importance of this date." 738 F.2d at 754. The court, however, applied that principle solely as to the claim of discriminatory discharge. Id. at 755**. As to the claim of denial of postdeprivation process, the court calculated the limitations period not from the time of termination, but from the time of the deprivation of process. Id. Kessler, therefore, actually supports Kelly's argument.**

In the instance of Kelly where an employer elected to impose discipline on an employee, the employee was entitled to a post-disciplinary **appeal** process. An employee who is discharged for a reason implicating his or her liberty interests is entitled to a publicly-held "liberty interest hearing" or, as it's sometimes called, a "name-clearing hearing" by his or her employer.

Therefore, Dr. Katz's April 17, 2014 Appeal requesting revision of NBME's faulty *'six-attempt limit'* to persons with documented disabilities is *homologous* in context to the denial of Kelly's 'name-clearing hearing'/ 'liberty interest hearing" appeal. The NBME replied to Dr. Katz's appeal with a denial on April 17, 2014 never acknowledging Katz's recent caregiver reports, or the implemented changes to his diagnosis and treatment. The defendants even refused to acknowledge that Katz submitted an appeal referring to it as "your letter and supporting documents." (EXHIBIT 22 and 30).   Consequently, by not acknowledging Dr. Katz's disclosure of his March 2013 diagnosis of Bipolar Disorder and not engaging in an ADA *"interactive process"* there was in the "Kelly context" a *'postdeprivation'*.

Dr. Katz received no formal warning or notification regarding the consequence of the 'six-attempt limit' from defendants. The only correspondence received from defendants was an April 17, 2014 response to his April 1st, 2014 appeal. The appeal was in response to plaintiff being blocked from registering for the USMLE Step I Exam on the defendants' affiliate website and to inform defendants of changes to his psychiatric diagnosis.  In Delaware State College v. Ricks, 449 U.S. 250 (1980), the plaintiff a black teacher charged that the College's denial of tenure was the product of discrimination based on national origin, forbidden by 42 U.S.C. § 1981 and Title VII. The Supreme Court determined that his claims accrued when he was informed of the denial of his tenure, not when his employment was terminated at the end of

the one-year terminal contract he was given after the denial of tenure. Katz can't be compared to Ricks because there was never any direct informational on the part of the NBME to Katz regarding termination of registering for future USMLE Step 1 Exams.

Title III of the ADA sets forth the obligations of places of "public accommodation" to disabled persons. *Why can the statute of limitations be tolled in the circuit courts for a stigmatized public employee as in Kelly but not for a stigmatized person with mental illness subject to discrimination?* Title III of the ADA provides in part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to) or operates a place of public accommodation." 42 U.S.C. § 12182(a). Discrimination under the ADA encompasses the denial of the opportunity, by the disabled, to participate in programs or services, and providing the disabled with separate, but unequal, goods or services. and its guidance.

Hence, this is where material fact comes to play, a genuine issue of material fact that precludes summary judgment in this case. The panels dissent as it stands violates Dr. Katz's constitutional rights under the ADA.

## II.    THE PANEL ADOPTS THE DISTRICT COURTS' RESTRICTIVE ANALYSIS OF THE ADA THAT CANNOT BE RATIONALIZED AGAINST ANY PRINCIPLED MEANS OF STATUTORY INTERPRETATION.

Statutory interpretation presents a question of law over which this Court exercises a de novo review. Pell v. E.I. DuPont de Nemours & Co., 539 F.3d 292, n305 (3d Cir. 2008). Under the de novo standard of review, this Court owes no deference to the District Court's restrictive statutory interpretation analysis. Id. at 305.   Yet the Magistrates' defective *Report and Recommendation* analysis has been adopted verbatim by the panel.

In the case of mental disorder, the panel interprets it to severely limit who is covered by the ADA — seeming to totally disregard the spirit and intent of the ADA and scientific evidence pointing to the absolute need for the accommodation of extra time for people with mental disabilities on high-stakes licensing exams.

The panel states;

*"As the District Court observed, Katz was able to complete medical school, register for the USMLE, and apply for jobs during the issue in this case."*

Yet the District Court and the Panel are not psychiatrists and do not understand the pathophysiology of Bipolar Disorder which includes extreme changes in mood, thought, energy, and behavior. A person with bipolar disorder has moods that usually alternate between mania, or extremely "up" mood, and depression, or extremely "down" mood. This change or "mood swing" can last for hours, days, weeks, or even

months.[7]  Seemingly, because of the manic phase of Bipolar Disorder, it can appear as if an individual is highly productive, however this is deceiving and actually a very 'slippery slope'.  A person with Bipolar can go from feeling good, to OK, to sad, to suicidal in the blink of an eye.

The Supreme Court determined in *Sutton v. United Air Lines, Inc.,* No. 97-1943 (S.Ct., June 22, 1999). that "if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures – both positive and negative – must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the ADA." 119 S. Ct. at 2146.  In so holding, the Court relied in part upon the fact that the ADA requires an individualized inquiry into the question whether an individual has a disability. Id. At 2147.

In its September 14, 1998, decision, the United States Court of Appeals for the Second Circuit held that plaintiff Marilyn Bartlett is an individual with a disability protected by Title II of the ADA of 1990, 42 U.S.C. 12131, et seg.  *Bartlett v. New York State Bd. Of Law Exam'rs*, 156 F. 3d 321 (2d. Cir. 1998).[8]  In reaching

---

[7]https://secure2.convio.net/dabsa/site/SPageServer/?pagename=education_brochures_bipolar_disorder_rapid_cycling

[8] A district court in Bartlett v. NYSBLE, on remand from the Second Circuit Court of Appeals, ruled in favor of a bar exam applicant by holding that she was entitled to extended time, the use of a computer, large print, and permission to circle her multiple-choice answers in the exam booklet.95 The court held that the NYSBLE

that conclusion, the Court stated that a disability should be assessed without regard to availability of mitigating measures.  Id at 329.  As a result, the Supreme Court granted the Board's petition, vacated the Court's decision and remanded the case to the Court for reconsideration under the legal standard announced in *Sutton, Murphy, and Albertsons.*

Although in reaching its decision in Bartlett, the Court endorsed a principle that has subsequently been rejected by the Supreme Court, the Court's conclusion that Bartlett is an individual with a disability remains correct.  Following *Sutton* and the related cases, the appropriate inquiry in determining whether an individual has a disability within the meaning of the ADA is whether, notwithstanding the use of corrective device or mitigating measures, the "limitations an individual with an impairment actually faces are in fact substantially limited."  119 S. Ct, at 2149. Dr. Katz employed similar mitigating compensatory tools while a medical student and in other facets of his life to get around deficits of his mental afflictions (see EXHIBIT 55 Plaintiff Example of Compensation Visual Study Aid as a Medical Student.

---

illegally discriminated against Bartlett when it failed to accommodate her dyslexia on five separate and unsuccessful exam attempts. The court found that the plaintiff was substantially limited in the major life activities of reading and working, even though she had employed coping strategies to overcome some of her reading and processing problems (finding test-taking to be a major life activity).

## III. THE PANEL'S DECISION CUTS AGAINST THE REMEDIAL PURPOSE OF THE ADA AND MAKES THE THIRD CIRCUIT AN OUTLIER.

En banc review is also necessary because the panel's opinion contradicts the ADA and persuasive cases from its sister circuits. By creating this "high bar" for plaintiffs in lawsuits involving discrimination the majority's opinion produces the absurd result that, in situations where the equitable principles and continuing violation can be deployed to save a meritorious claim due to factors out of a plaintiffs control. This undercuts the purpose of such principles that is supposed to protect plaintiffs by preventing discrimination to people with disabilities in society. The majority's opinion also makes the Third Circuit an outlier among its peers.

By requiring Dr. Katz to provide direct evidence and meet a restrictive "more likely than not" standard—the majority separated the Third Circuit from its sister courts and incorrectly imposed a trial standard of proof at the summary judgment stage.

## <u>CONCLUSION</u>

The panel's decision should not stand because it is contrary to the decisions in Kelly, v. Burks, Jr. et al., 415 F.3d 558 (6th Cir. 2005) and Bartlett v. New York State Board of Law Examiners, No. 97-9162 (2nd Cir. Sept 14, 1998) and the other precedent cases in this petition, eviscerating the protections of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 and § 504 of The Rehabilitation Act of 1973, [AS AMENDED, 29 U.S.C. § 794].

The panel's decision also should not stand because (a) it improperly interprets Accrual, the Continuing Violation Doctrine and Equitable Tolling and (b) it incorrectly ignores the plausibility of mitigating measures and ADA principles as determined by the Circuit Courts and the Supreme Court.

End banc review is necessary to bring the majority opinion into compliance with the other Circuit Courts and the Supreme Court.

Respectfully Submitted,

Date: October 9 , 2018

/s/ Richard Katz, M.D.

Richard Katz, M.D.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on October 9, 2018, the foregoing petition for rehearing of Appellant Dr. Richard Katz was sent electronically through to:

NEIL J. HAMBURG
MICHAEL E. SACKS
ID. Nos. 32175 and 39774
HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA 19103-1443
(215) 255-8590
hamburgnj@hamburg-golden.com
sacksme@hamburg-golden.com

Attorneys for the

National Board of Medical Examiners and The Federation of State Medical Boards

<u>/s/ Richard Katz, M.D.</u>

Richard Katz, M.D.

*Pro se*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

This brief contains 3896 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using MS Word 2013 in 14 pt. with Times New Roman.


Date: October 9, 2018


/s/ Richard Katz, M.D

Richard Katz, M.D.

Pro se

# CERTIFICATE OF VIRUS CHECK

I hereby certify that a virus check was performed on the E-Brief using Kaspersky Lab 2016 and that no viruses were found.

Date: October 9, 2018

/s/ Richard Katz, M.D.

Richard Katz, M.D.

Pro se

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-1329

_____

RICHARD KATZ,
Appellant

v.

NATIONAL BOARD OF MEDICAL EXAMINERS;
FEDERATION OF STATE MEDICAL BOARDS OF THE UNITED STATES INC

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3-15-cv-01187)
District Judge: Honorable Robert D. Mariani

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 5, 2018

Before:  GREENAWAY, JR., BIBAS and ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: September 25, 2018)

_____

OPINION[*]

_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Case: 17-1329    Document: 003113054342    Page: 25    Date Filed: 09/25/2018

Richard Katz appeals pro se from the District Court's grant of summary judgment in favor of the National Board of Medical Examiners ("NBME") and the Federation of State Medical Boards of the United States ("FSMB").  We will affirm.

Katz brought suit in the District Court in June 2015 against defendants NBME and FSMB arising out of his several unsuccessful attempts to pass a medical certification test, the United States Medical Licensing Examination ("USMLE").  Katz's second amended complaint brought federal claims under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12189, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. The complaint also sought to plead a cause of action for obstruction of justice by "misleading conduct" as defined at 18 U.S.C. § 1515(a)(3), and alleged various state-law causes of action.

The complaint alleged three main potential acts of discrimination.  First, Katz alleged that NBME Disability Services discriminated against him in 2006 when it denied his request for accommodations to take two USMLE "Step 2" examinations.  Katz had already failed the USMLE "Step 1" test four times, and had already failed one version of a USMLE "Step 2" test.  Katz alleged that he provided documentation of his attention deficit hyperactivity disorder (ADHD), anxiety, and depression in order to justify extended testing time as a reasonable accommodation under the ADA.  Katz alleged that the NBME's review of his request was a sham and that NBME had deceived him when it told him that "experts" in the field had been consulted to review his documentation.  Katz later learned that a single psychologist had reviewed his file.

2

Second, Katz alleged that the adoption of a six-attempt limit for taking the USMLE "Step 1" exam discriminated against him.  That policy was announced in 2011 and went into effect on January 1, 2013, for registrants, like Katz, who had already taken the USMLE "Step 1" exam at least once.

Third, Katz alleged that the denial of a 2014 request that the defendants waive the six-attempt limit for the USMLE "Step 1" exam discriminated against him.  Katz failed the USMLE "Step 1" exam a seventh and eighth time in February 2012 and November 2012, respectively.  He then registered for the exam a final time in December 2012, before the six-attempt limit took effect for previous test-takers like him.  In March 2013, Katz was diagnosed with bipolar disorder.  Katz then failed his ninth and final attempt at the USMLE "Step 1" exam in November 2013.  He had not requested accommodations for that exam administration based on bipolar disorder or any other disability.  Then, in April 2014, Katz wrote a letter requesting that the six-attempt limit be waived and that he be allowed to sit for the USMLE "Step 1" exam a tenth time with accommodations for his bipolar disorder.  A USMLE official denied that request, informing Katz that only the state medical board could approve an additional attempt for an examinee.[1]

Following discovery and some motions practice, the defendants moved for summary judgment and the Magistrate Judge issued a report and recommendation on that motion.  The Magistrate Judge first concluded that the attempt to bring criminal charges

---

[1] In March 2015, Katz wrote the Pennsylvania State Board of Medicine seeking such a waiver.  The Board denied that request in a public hearing in May 2015.  No discrimination arising out of the Board's action was alleged in this case.

Case: 17-1329    Document: 003113045342    Page: 27    Date Filed: 09/25/2018

was legally frivolous, and that a state-law breach of contract claim failed to state a claim upon which relief could be granted because there was no contract between the parties. The Magistrate Judge thus recommended dismissing those claims sua sponte. As for the remaining claims, the Magistrate Judge agreed with the defendants' argument that those claims were time-barred, and recommended that the District Court grant the defendants' summary judgment motion on that ground.

After briefing on Katz's objections to the Magistrate Judge's report and recommendation, the District Court dismissed the obstruction of justice and contract claims sua sponte, and granted summary judgment in favor of the defendants on the other claims due to Katz's failure to file those claims before the statute of limitations expired. As part of its analysis, the District Court also considered and rejected Katz's arguments in favor of equitable tolling.

This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1291. "We review a district court's grant of summary judgment de novo, applying the same standard as the district court." S.H. ex rel. Durrell v. Lower Merion Sch. Dist., 729 F.3d 248, 256 (3d Cir. 2013). Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

On appeal, Katz challenges the District Court's grant of summary judgment in favor of the defendants on his ADA and Section 504 claims, which are subject to Pennsylvania's two-year statute of limitations on personal injury actions. See Disabled in

4

Action of Pa. v. Se. Pa. Transp. Auth., 539 F.3d 199, 208 (3d Cir. 2008); cf. also Soignier

v. Am. Bd. of Plastic Surgery, 92 F.3d 547, 551 n.3 (7th Cir. 1996) (same statute of

limitations applies to claims brought under Title II or Title III of the ADA). The District

Court concluded that, for all of the acts of discrimination that Katz alleged, the statute of

limitations had accrued, and then ran for at least two years, before he filed his suit in June

2015. The District Court also concluded that there was no basis for tolling the statute of

limitations. We agree, substantially for the reasons set out in the District Court's

dismissal order and in the Magistrate Judge's report and recommendation.

We may readily dispense with the discrimination claim based on events that

occurred in 2006. Katz received notice on March 13, 2006, that his request for

accommodations on a USMLE "Step 2" exam was denied. Katz took that exam on

September 29, 2006, without the accommodations he had requested. Any cause of action

based on that alleged discrimination accrued when the request for accommodations was

denied or, at the latest, when Katz took the exam absent those accommodations—not

later, when Katz says he learned additional information about the process the USMLE

administrators used to consider his request and the identity of the evaluator of his request.

See Oshiver v. Levin, Fishbein, Sedran and Berman, 38 F.3d 1380, 1385-86, 1390-91 (3d

Cir. 1994) (cause of action accrues when plaintiff knows or should know of the injury,

but not necessarily when the plaintiff learns the legal cause of the injury). The statute of

limitations on any claim based on those circumstances expired in 2008, long before Katz

filed suit in June 2015.

5

Equitable tolling could not save this claim.  Relevant to this case, equitable tolling may arise: "(1) where a defendant actively misleads a plaintiff with respect to her cause of action; [or] (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances[.]"  Lake v. Arnold, 232 F.3d 360, 370 n.9 (3d Cir. 2000).  Katz first argued that the statute of limitations should have been equitably tolled because he was mentally incapacitated and therefore unable to submit his suit on time.  But although Katz was briefly hospitalized in 2013, that does not show that he was unable to attend to his claims in this case.  See Kach v. Hose, 589 F.3d 626, 645 (3d Cir. 2009) (only extreme mental incapacity, such as when a plaintiff was adjudicated incompetent or institutionalized, could equitably toll the statute of limitations).  As the District Court observed, Katz was able to complete medical school, register for the USMLE, and apply for jobs during the time period at issue in this case.  Katz did not point to facts sufficient to undermine the District Court's conclusion.

This is also not a case "where a defendant actively [misled] a plaintiff with respect to [his] cause of action."  Lake, 232 F.3d at 370 n.9.  Katz contended that the statute of limitations concerning the denial of his request for accommodations in 2006 was fraudulently concealed because of the allegedly deceptive statement that "experts" had reviewed his request, rather than a single outside evaluator.  As the District Court observed, however, even if that statement about expert review could have been considered deceptive—which is doubtful—Katz was on notice that he could have a potential discrimination suit as soon as his 2006 request for accommodations was denied,

6

Case: 17-1329    Document: 003113043242    Page: 30    Date Filed: 09/25/2018

or at least as soon as he took the USMLE "Step 2" exam without those accommodations. Katz could, and should, have sued within two years of that act of discrimination to preserve any discrimination claim arising out of the administration of the USMLE "Step 2" exam in 2006.

Katz's claims concerning events several years later, when the six-attempt limit for the USMLE "Step 1" exam began to apply to him on January 1, 2013, present a closer question. But ultimately, there was no error in the District Court's analysis of the statute of limitations for any discrimination claims arising out of that policy.

The record shows that Katz was aware of the six-attempt limit as of August 2011, when USMLE announced the new policy. That six-attempt limit became effective for test-takers in Katz's circumstances—i.e., those who had previously taken at least one USMLE step—on January 1, 2013. Katz was able to register for the USMLE "Step 1" exam three additional times between when the policy was adopted and when it went into effect; he failed each attempt to pass the test, however. Then, as of January 1, 2013, the defendants' policy barred Katz from registering again (that is, for a tenth time) for the USMLE "Step 1" exam. The statute of limitations for Katz to challenge that policy thus began to run no later than January 1, 2013, as it was at that point that the policy would have injured him. When Katz brought this action in June 2015, more than six months had already elapsed since the expiration of the two-year statute of limitations for any federal disability discrimination claims arising out of the six-attempt limit.

Katz appears to concede that point, but argues further that the April 2014 denial of his request for a waiver from that six-attempt limit—purportedly on the basis of a new medical diagnosis he received in March 2013—constituted a new act of discrimination. That argument fails, however.  Under the circumstances of this case, the later denial of Katz's request to waive the six-attempt limit was an implementation of the earlier act of adopting the six-attempt-limit policy—i.e., merely an effect of that prior act—not a new act of discrimination on the basis of disability.  See Del. State Coll. v. Ricks, 449 U.S. 250, 260-61 (1980); see also Soignier, 92 F.3d at 551 ("[D]iscovery of the original act of discrimination, *not* future confirmation of the injury or determination that the injury is unlawful, is when the statute of limitations begins to run.") (citing Ricks at 258).  Nor was the enforcement of the six-attempt limit beginning on January 1, 2013, the kind of provisional or tentative decision that had not yet injured a potential plaintiff; it was itself the relevant act of discrimination.  Cf. Colgan v. Fisher Sci. Co., 935 F.2d 1407, 1420 (3d Cir. 1991) (applying Ricks in the employment context to a tentative evaluation that led to a later dismissal; only the later dismissal triggered the accrual of the statute of limitations because the evaluation was not a final employment decision).  Katz was injured as soon as he was precluded from further USMLE "Step 1" exam registrations.  At that point, he had two years to sue to remedy the alleged harm against him.[2]

---

[2] Furthermore, under the new six-attempt-limit policy, if Katz wanted to register for the exam in excess of the limits imposed on him after December 2012, he could seek authorization from the state medical board for an exception from the six-attempt limit. Katz indeed sought such authorization but did not receive it.  The existence of that

Katz also argues that even if he was injured as of January 1, 2013, his request for a waiver allowing him to register for a tenth attempt to take the USMLE "Step 1" exam presented a new set of circumstances to the USMLE administrators, and the denial of that waiver was an independent act of discrimination.  But that argument disregards a point made persuasively by Seventh Circuit's reasoning in Soignier:

> [T]he denial of the surgeon's appeal merely confirmed the Board's earlier decisions that sufficient accommodations had already been made for his disabilities and that he would not be retested.  Soignier engaged the Board's internal appeals process in an attempt to reverse the Board's decisions to offer limited accommodations at the November 1992 test and not to offer a sixth test.  But "an employer's refusal to undo a discriminatory decision is not a fresh act of discrimination."

Soignier, 92 F.3d at 553 (quoting Graehling v. Village of Lombard, Ill., 58 F.3d 295, 297 (7th Cir. 1995)); see also Ricks, 449 U.S. at 261 (stating that an appeal "is a *remedy* for a prior decision, not an opportunity to *influence* that decision before it is made.").  Here, too, in their denial of Katz's request for a waiver of the already-in-force six-attempt limit, the defendants refused to undo a previous decision that was alleged to be discriminatory, and did not commit a fresh act of discrimination.

One further point bears discussion: Katz does not quite put it this way, but one potential counterargument is that he had no reason to request a waiver of the six-attempt limit until he received his new medical diagnosis in March 2013.  Notwithstanding Katz's earlier test-taking difficulties, one might reason, at that point he was a newly disabled

---

alternative waiver mechanism further belies Katz's contention that the defendants committed additional acts of discrimination after January 1, 2013.

person, and the six-attempt limit began to affect him adversely only then.  But even if that were the best way to characterize the significance of the new diagnosis, Katz still sued too late.  When Katz learned of his new medical diagnosis and its potential to exacerbate his difficulties with standardized tests like the USMLE "Step 1" exam, the enforcement of the six-attempt limit was injuring him, and he was necessarily aware of that injury.  On this theory, the statute of limitations for Katz's federal disability discrimination claim would have expired two years later, in March 2015, which is still before Katz brought this action in federal court.

Overall, then, the District Court did not err when it granted summary judgment in favor of the defendants on the ground that Katz's claims were time-barred.

Moreover, the merits present a problem for Katz, too.  The defendants argued to the District Court, and again on appeal, that even if Katz had filed a timely claim under the ADA and the Rehabilitation Act with regard to the denial of his April 2014 appeal letter, he did not create a triable issue of fact as to whether, on the merits, the ADA or the Rehabilitation Act required them to waive the six-attempt limit as an accommodation of Katz's disability.  That argument is also persuasive and provides an additional basis to affirm the District Court's judgment.

Section 309 of Title III of the ADA provides that "[a]ny person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with

10

disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C.

§ 12189; see also Doe v. Nat'l Bd. of Med. Examiners, 199 F.3d 146, 155 (3d Cir. 1999).

We apply the same substantive standard to claims brought under the Rehabilitation Act

and Title III of the ADA. Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of

Educ., 587 F.3d 176, 189 (3d Cir. 2009). Under regulations implementing § 12189, the

USMLE "Step 1" exam must be administered in a way that "best ensures" that its results

will accurately reflect a disabled examinee's aptitude rather than his disability. See 28

C.F.R. § 36.309(b)(1)(i). We defer to such regulations as reasonable interpretations of

the statute. See Helen L. v. DiDario, 46 F.3d 325, 331-32 (3d Cir. 1995).

In another, unrelated suit against the NBME, we held as follows when considering

how to apply the relevant regulations:

> The term "accessible" is not best understood to mean "exactly comparable."
> The notion of accessibility, or best ensuring that examination results
> accurately reflect "aptitude or achievement level," see 28 C.F.R.
> § 36.309(b)(1)(i), does not mandate that the NBME provide examinations
> to the disabled that yield technically equal results; it mandates changes to
> examinations—"alternative accessible arrangements," 42 U.S.C. § 12189—
> so that disabled people who are disadvantaged by certain features of
> standardized examinations may take the examinations without those
> features that disadvantage them.

Doe, 199 F.3d at 156. Here, Katz did not create a triable issue of fact on the question

whether authorizing further attempts to take the USMLE "Step 1" exam—in addition to

otherwise allowing accommodations on how the test was administered—was necessary to

"best ensure" that the exam results reflected aptitude and not disability. Cf. Doe, 199

F.3d at 156 ("Department of Justice regulations interpreting section 309 . . . make no

11

explicit mention of the [challenged practice].").  For their part, the defendants produced

detailed, uncontroverted evidence describing the basis for the six-attempt limit for the

USMLE "Step 1" exam, and explaining why that new requirement was a reasonable

policy.  In particular, the six-attempt limit followed from a concern that allowing

additional test attempts could enable a test-taker to pass the exam by chance even when

otherwise lacking the aptitude to achieve a passing score.  That justification is consistent

with the requirement that a testing entity "best ensure" that exam results reflect aptitude

and not disability.  See Doe, 199 F.3d at 156.

Moreover, on any given attempt within that six-attempt limit, a test-taker was

entitled to apply for reasonable accommodations concerning how that testing opportunity

was administered and presented.  That shows that the defendants' policies allowed for

"changes to examinations … so that disabled people who are disadvantaged by certain

features of standardized examinations may take the examinations without those features

that disadvantage them"—as our interpretation of 28 C.F.R. § 36.309(b)(1)(i) and 42

U.S.C. § 12189 requires.  See id.  Katz did not request accommodations between when he

learned of his diagnosis of bipolar disorder in March 2013, and when he took his final

USMLE "Step 1" exam in November 2013.  In addition, Katz did not show how the

standard procedures for requesting accommodations were inadequate to address his

disability, especially when he did not even avail himself of those procedures.  Cf. Powell

v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 88-89 (2d Cir. 2004) (holding that the NCBE

did not violate ADA or Rehabilitation Act when it followed its standard procedures for

12

considering accommodations and there was no evidence that those standard procedures were unreasonable or discriminatory), opinion corrected, 511 F.3d 238 (2d Cir. 2004). Thus, any of Katz's ADA and Rehabilitation Act claims based on enforcement of the six-attempt limit after January 2013 lacked merit.

*    *    *

For the foregoing reasons, we will affirm the District Court's judgment. Katz's motion to compel the District Court to seal the record is denied. Appellees' motion to file Volume II of the Supplemental Appendix under seal is granted.